Jason D. Boren (#7816)
BALLARD SPAHR LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221
Telephone: (801) 531-3000
Facsimile: (801) 531-3001
borenj@ballardspahr.com

Lisa M. Ghannoum (*pro hac vice*)
Cory N. Barnes (*pro hac vice*)
BAKER & HOSTETLER LLP
127 Public Square, Ste. 2000
Cleveland, OH 44114
Telephone: (216) 861-7872
Facsimile: (216) 696-0740
lghannoum@bakerlaw.com

*Attorneys for Defendant Prog Leasing, LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| ***In re Progressive Leasing Breach Litigation*** | **PROGRESSIVE LEASING, LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**<br><br>**Case No.:  2:23-CV-00783**<br><br>**Judge David Barlow**<br>**Mag. Judge Cecilia M. Romero** |

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant

Progressive Leasing, LLC ("Defendant or "Prog") hereby moves to dismiss Plaintiffs'

Consolidated Class Action Complaint (Dkt. #39) filed on April 29, 2024.

As set forth in the accompanying memorandum in support of this motion, dismissal is

warranted under Rule 12(b)(1) because none of the named plaintiffs have Article III standing to assert claims in federal court – either because they have not alleged any concrete injury in fact, and/or because their claimed injuries are not fairly traceable to Prog's alleged conduct. As such, the Court lacks subject matter jurisdiction over Plaintiffs' claims.

Even if the Court does possess subject matter jurisdiction, dismissal is still warranted under Rule 12(b)(6) because Plaintiffs have failed to state any plausible claims for relief. Specifically, Plaintiffs do not have a claim for breach of an *implied* contract (Count II) because they entered into *express* contracts with Prog that govern the very issues in this case – *i.e.*, the use and privacy of Plaintiffs' data. Plaintiffs also do not state a claim for negligence (Count I) because (i) the economic loss rule bars tort claims based on the same duties covered by a contract, and (ii) because Plaintiffs have not alleged enough facts to show a cognizable injury. Nor can Plaintiff Dawn Davis assert a claim under the California Consumer Privacy Act (CCPA), Cal. Civ. Code § 1798.150 (Count IV), because she failed to provide Prog with written notice of her claims before filing suit, as is required by the statute, and because she has no monetary damages. Finally, Plaintiffs demands for forward looking injunctive relief under the Declaratory Judgment Act (Count III) fail because the claim is unnecessarily duplicative, and Plaintiffs have not plausibly shown any "imminent and substantial" risk of future harm.

Accordingly, for the reasons stated above and those in the accompanying memorandum in support, Prog respectfully moves the Court to grant its motion, and dismiss Plaintiffs' consolidated complaint in its entirety with prejudice.

Dated: June 24, 2024                                    Respectfully submitted,


                                                       */s/ Lisa M. Ghannoum*_____

Lisa M. Ghannoum (*pro hac vice*)
Cory N. Barnes (*pro hac vice*)
**BAKER & HOSTETLER LLP**
127 Public Square, Ste. 2000
Cleveland, OH 44114
Telephone: (216) 861-7872
*lghannoum@bakerlaw.com*

Jason D. Boren (#7816)
BALLARD SPAHR LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221
Telephone: (801) 531-3000
Facsimile: (801) 531-3001
borenj@ballardspahr.co

*Counsel for Defendant PROG Leasing, LLC*

Jason D. Boren (#7816)
BALLARD SPAHR LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221
Telephone: (801) 531-3000
Facsimile: (801) 531-3001
borenj@ballardspahr.com

Lisa M. Ghannoum (*pro hac vice*)
Cory N. Barnes (*pro hac vice*)
BAKER & HOSTETLER LLP
127 Public Square, Ste. 2000
Cleveland, OH 44114
Telephone: (216) 861-7872
Facsimile: (216) 696-0740
lghannoum@bakerlaw.com

*Attorneys for Defendant Prog Leasing, LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| ***In re Progressive Leasing Breach Litigation*** | **PROGRESSIVE LEASING, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**<br><br>**Case No.:  2:23-CV-00783**<br><br>**Judge David Barlow**<br>**Mag. Judge Cecilia M. Romero** |

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    RELEVANT FACTS ............................................................................................. 2

III.   LEGAL STANDARD ........................................................................................... 5

IV.    ARGUMENT ......................................................................................................... 6

A.    Plaintiffs Lack Standing Under Rule 12(b)(1) ............................................ 6

    1.    The Non-Misuse Plaintiffs Lack a Concrete Injury-in-Fact ...................... 7

        i.     Increased Risk of Identify Theft or Fraud Alone is Not a
            Concrete Injury ............................................................................. 8

        ii.    Lost or Diminished Value of PII is Not a Concrete Injury ........... 11

        iii.   Lost Benefit of the Bargain is Not a Concrete Injury ................... 12

        iv.    Lost Time and Expenses for Mitigation Efforts is Not a
            Concrete Injury ............................................................................. 13

        v.     Increased Spam, or Annoyance, is Not a Concrete Injury ........... 14

        vi.    Emotional Distress for Perceived Future Risk is Not a
            Concrete Injury ............................................................................. 15

    2.    The Alleged-Misuse Plaintiffs also Lack "Concrete" and "Fairly
        Traceable" Injuries ................................................................................... 17

        i.     Plaintiff Chad Boyd .................................................................... 17

        ii.    Plaintiff Allison Ryan ................................................................. 19

        iii.   Plaintiff Laura Robinson ............................................................. 20

        iv.    Plaintiff Marty Alexander ........................................................... 21

    3.    Plaintiffs Cannot Allege Imminent and Substantial Pending Harm
        to Support Injunctive Relief ..................................................................... 22

B.    Plaintiffs Have Failed to State a Claim for Relief Under Rule 12(b)(6) ............. 24

    1.    Plaintiffs Cannot Assert Implied Contract Claims (Count II) Where
        an Applicable Express Contract Exists ..................................................... 24

        i.     Relevant Application Agreements ............................................... 25

        ii.    Express Contracts Bar Implied, Quasi-Contract Claims.............. 28

        iii.   Prog Has Not Been Unjustly Enriched ........................................ 29

    2.    Plaintiffs Cannot State a Valid Claim for Negligence (Count I) .............. 31

        i.     The Economic Loss Rule Bars Plaintiffs' Negligence Claim....... 31

        ii.    Plaintiffs Have Not Alleged Actual Damages ............................. 35

3.    Plaintiff Davis's CCPA Claim Fails Because She Did Not Provide the Requisite Pre-Suit Notice and Has No Actual Damages ................... 38

i.    Ms. Davis Did Not Provide the Requisite Pre-Suit Notice .......... 38

ii.    Ms. Davis Has No Actual Damages .............................................. 40

4.    Plaintiffs' Do Not Have an Independent Claim for Declaratory Judgement Relief (Count III) .................................................................. 41

**V.    CONCLUSION ............................................................................................... 43**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
  380 F. Supp. 3d 1243 (M.D. Fla. 2019)...............................................................37

*Aclys Int'l v. Equifax*,
  438 F. App'x 689 (10th Cir. 2011)..............................................................31, 35

*Allgood v. PaperlessPay Corp.*,
  2022 WL 846070 (M.D. Fla. Mar. 22, 2022) ................................................18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................18, 20, 24, 37

*Attias v. CareFirst, Inc.*,
  365 F. Supp. 3d 1 (D.D.C. 2019) .........................................................................36

*Baker v. Akumin Corp.*,
  2024 WL 1931480, (S.D. Fla. Apr. 16, 2024) ...................................12, 15, 16, 22

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017) .........................................................................16, 24

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................5, 35, 40, 42

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
  353 F. Supp. 3d 1070 (D. Colo. 2018) .................................................................34

*Billy v. Edge Homes*,
  2020 WL 2572522 (D. Utah May 21, 2020) (unpublished) .................................36

*Blahous v. Sarrell Reg'l Dental Ctr. for Pub. Health, Inc.*,
  2020 WL 4016246 (M.D. Ala. July 16, 2020) (unpublished)...............................37

*Blood v. Labette Cnty. Med. Ctr.*,
  2022 WL 11745549 (D. Kan. Oct. 20, 2022) (unpulished) ........................... *passim*

*BMF Advance, LLC v. Litiscape, LLC*,
  637 F. Supp. 3d 1272 (D. Utah 2022) (Barlow, J.)....................................31, 34, 35

*In re Boeing 737 MAX Pilots Litig.*,
  638 F. Supp. 3d 838 (N.D. Ill. 2022) ...................................................................33

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
    861 F.3d 1081 (10th Cir. 2017) ......................................................................3

*Brumbelow v. L. Offs. of Bennett & Deloney, P.C.*,
    372 F. Supp. 2d 615 (D. Utah 2005) ............................................................29

*Burger v. Healthcare Mgmt. Sols. LLC*,
    2024 WL 473735 (D. Md. Feb. 7, 2024) (unpublished) ..............................42

*C.C. v. Med-Data Inc.*,
    2022 WL 970862 (D. Kan. Mar. 31, 2022) (unpublished) ...................... *passim*

*In re Canon U.S.A. Data Breach Litig.*,
    2022 WL 22248656 (E.D.N.Y. Mar. 15, 2022) (unpublished) ..............21, 39, 40

*Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*,
    113 F. Supp. 3d 807 (D. Md. 2015) ..............................................................41

*Clapper v. Amnesty Intern., Inc.*,
    568 U.S. 398 (2013) ................................................................................ *passim*

*Cooper v. Bonobos, Inc.*,
    2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ..........................................12, 15

*Corona v. Sony Pictures Ent., Inc.*,
    2015 WL 3916744 (C.D. Cal. June 15, 2015) (unpublished) ......................37

*Davies v. Olson*,
    746 P.2d 264 (Utah Ct. App. 1987) ........................................................28, 29

*Debernardis v. IQ Formulations*, *LLC*,
    942 F.3d 1076 (11th Cir. 2019) ...................................................................36

*Deevers Stoichev v. Wing Fin. Servs., LLC*,
    2023 WL 6133181 (N.D. Okla. Sept. 19, 2023) (unpublished) ........10, 11, 15, 16

*DeLisi v. Lam*,
    39 Cal. App. 5th 663 (2019) .........................................................................40

*Digecor, Inc. v. E. Dig. Corp.*,
    2007 WL 185477 (D. Utah Jan. 19, 2007) (unpublished) ......................24, 28

*Doak v. Capital One*,
    2019 WL 4645162 (N.D. Cal. Sept. 24, 2019) (unpublished) ................18, 19

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
    2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) (unpublished) ........................32

*Electra v. Dreamers Cabaret, LLC*,
  2019 WL 3238504 (N.D. Ohio July 18, 2019) (unpublished) ................................33

*Enslin v. Coca-Cola Co.*,
  136 F. Supp. 3d 654 (E.D. Pa. 2015) ....................................................................33

*Everhart v. Colonial Pipeline Co.*,
  2022 WL 3699967 (N.D. Ga. July 22, 2022) (unpublished) ................................36

*F.S. v. Captify Health*,
  2024 WL 1282437 (D. Kan. Mar. 26, 2024) (unpublished) ......................10, 11, 12

*Fox v. Iowa Health Sys.*,
  399 F. Supp. 3d 780 (W.D. Wis. 2019) ................................................................32

*Galaria v. Nationwide Mut. Ins. Co.*,
  2017 WL 4987663 (S.D. Ohio Aug. 16, 2017) (unpublished) ..............................37

*Garcia-Rodriguez v. Gomm*,
  169 F. Supp. 3d 1221 (D. Utah 2016)......................................................................3

*Gibbons v. Hidden Meadow, LLC*,
  524 F. App'x 451 (10th Cir. 2013) ........................................................................35

*Goodnight v. Shalala*,
  837 F. Supp. 1564 (D. Utah 1993)............................................................................5

*Gordon v. Chipotle Mexican Grill, Inc.*,
  344 F. Supp. 3d 1231 (D. Colo. 2018)...................................................................30

*Greenstein v. Noblr Reciprocal Exch.*,
  585 F. Supp. 3d 1220 (N.D. Cal. 2022) ................................................................38

*Griffey v. Magellan Health Inc.*,
  2022 WL 1811165 (D. Ariz. June 2, 2022) (unpublished) ..............................39, 40

*Griffey v. Magellan Health Inc.*,
  562 F. Supp. 3d 34 (D. Ariz. 2021) ..........................................................21, 36, 41

*Gubala v. Time Warner Cable, Inc.*,
  846 F.3d 909 (7th Cir. 2017) ................................................................................11

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................28

*HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*,
  435 P.3d 193 (Utah 2018)................................................................................33, 35

*Holly v. Alta Newport Hosp., Inc.*,
   612 F. Supp. 3d 1017 (C.D. Cal. 2020) ...................................................................41

*Holmes v. Elephant Ins. Co.*,
   2023 WL 4183380 (E.D. Va. Jun. 26, 2023) (unpublished) .....................................24

*Hope Int'l Hospice, Inc. v. Net Health Sys.*,
   2023 WL 2433642 (D. Utah Mar. 9, 2023) ........................................................34, 35

*In re Illuminate Educ. Data Sec. Incident Litig.*,
   2023 WL 3158954 (C.D. Cal. Apr. 19, 2023) (unpublished) ...........................12, 23

*Initiative & Referendum Inst. v. Walker*,
   450 F.3d 1082 (10th Cir. 2006) ..................................................................................7

*Irwin v. Jimmy John's Franchise, LLC*,
   175 F. Supp. 3d 1064 (C.D. Ill. 2016) ......................................................................30

*Jones v. Mackey Price Thompson & Ostler*,
   355 P.3d 1000 (Utah 2015) ......................................................................................28

*Kim v. McDonald's USA, LLC*,
   2022 WL 4482826 (N.D. Ill. Sept. 27, 2022) (unpublished) ...................................16

*Krottner v. Starbucks Corp.*,
   406 F. App'x 129 (9th Cir. 2010) .............................................................................36

*Kuhns v. Scottrade, Inc.*,
   868 F.3d 711 (8th Cir. 2017) ....................................................................................28

*Larson v. U.S. Dep't of the Interior*,
   2016 WL 11796310 (D. Utah July 19, 2016) (unpublished) ......................................5

*Legg v. Leaders Life Ins. Co.*,
   574 F. Supp. 3d 985 (W.D. Okla. 2021) ........................................................ *passim*

*Lupia v. Medicredit, Inc.*,
   8 F.4th 1184 (10th Cir. 2021) ...................................................................................10

*Lysenko v. Sawaya*,
   973 P.2d 445 (Utah Ct. App. 1999) .........................................................................28

*Masterson v. IMA Fin. Grp., Inc.*,
   2023 WL 8647157 (D. Kan. Dec. 14, 2023) (unpublished) ......................10, 11, 15

*Matney v. Barrick Gold of N. Am.*,
   80 F.4th 1136 (10th Cir. 2023) ...................................................................................3

*McCombs v. Delta Grp. Elecs.*,
676 F. Supp. 3d 1064 (D.N.M. 2023) ....................................................9, 11, 14, 15

*Mohsen v. Veridian Credit Union*,
-- F. Supp. 3d --, 2024 WL 2080177 (N.D. Iowa May 9, 2024)........................32, 33

*Needham v. Fannie Mae*,
854 F. Supp. 2d 1145 (D. Utah 2012)....................................................................3

*Nero v. Oklahoma*,
2022 WL 14423872 (10th Cir. Oct. 25, 2022).......................................................43

*Oneal v. First Tenn. Bank*,
2018 WL 1352519 (E.D. Tenn. Mar. 15, 2018) (unpublished) .............................19

*Poe v. State of Utah*,
2024 WL 2093623 (D. Utah May 9, 2024) (Barlow, J.) (unpublished) ...................6

*Port City Props. v. Union Pac. R.R. Co.*,
518 F.3d 1186 (10th Cir. 2008) ..............................................................................5

*Quinalty v. FocusIT LLC*,
2024 WL 342454 (D. Ariz. Jan. 30, 2024) (unpublished) .....................................36

*Ramos v. Wells Fargo Bank, N.A.*,
2023 WL 5310540 (S.D. Cal. Aug. 17, 2023) (unpublished)................................32

*Randolph v. ING Life Ins. & Annuity Co.*,
486 F. Supp. 2d 1 (D.D.C. 2007) ..........................................................................14

*Reilly v. Ceridian Corp.*,
664 F.3d 38 (3d Cir. 2011).....................................................................................14

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) ........................................................................18, 22

*Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, New Mexico*,
993 F.3d 802 (10th Cir. 2021) ...............................................................................17

*Scarlett v. Air Methods Corp.*,
922 F.3d 1053 (10th Cir. 2019) .............................................................................28

*Scott v. Conley*,
2016 WL 4257507 (D. Utah July 18, 2016) (unpublished) ...................................41

*Seale v. Gowans*,
923 P.2d 1361 (Utah 1996).....................................................................................36

*Sims v. Kahrs Law Offs.*,
  2023 WL 2734317 (D. Kan. Mar. 31, 2023) (unpublished) ..................................16

*Skelly Oil Co. v. Phillips Petroleum Co.*,
  339 U.S. 667 (1950)...........................................................................................42

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................................. *passim*

*In re SuperValu, Inc.*,
  925 F.3d 955 (8th Cir. 2019) ............................................................................30

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
  2018 WL 1189327(D. Minn. Mar. 7, 2018) (unpublished) ..................................30

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)................................................................................. *passim*

*Universal Health Serv., Inc.*, 539 F. Supp. 3d 481 (E.D. Pa. 2021) ..........................23

*Utah Hous. Corp. v. Country Pines, Ltd.*,
  541 F. Supp. 3d 1288 (D. Utah 2021)..................................................................43

*Wadsworth v. Kross, Lieberman & Stone, Inc.*,
  12 F.4th 665 (7th Cir. 2021) ...........................................................................16

*Warnick v. Briggs*,
  2005 WL 1566669 (D. Utah July 1, 2005) (unpublished) ....................................41

*In re Waste Mgmt. Data Breach Litig.*,
  2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) (unpublished)...................................39

*Whalen v. Michael's Stores, Inc.*,
  689 F. App'x. 89 (2d Cir. 2017) .......................................................................21

**Statutes**

Cal. Civ. Code § 1798.150(a) .............................................................................38, 39

Cal. Civ. Code § 1798.150(b) .........................................................................38, 39, 40

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Progressive Leasing, LLC ("Defendant or "Prog") respectfully submits the following memorandum in support of its motion to dismiss Plaintiffs' Consolidated Class Action Complaint (Dkt. # 39, hereinafter "Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.    INTRODUCTION

This putative class action arises from a criminal ransomware attack on Prog by a sophisticated threat actor (ALPHV/Blackcat)[1] that, as Plaintiffs acknowledge, routinely extorts companies like Prog for millions of dollars. Within days of Prog providing notice of the cyberattack, plaintiffs in eleven different actions ran to the courthouse seeking monetary compensation for their alleged injuries. But, as courts around the country have held, just because Prog was a victim to this crime does not entitle Plaintiffs to the sweeping relief demanded in their consolidated complaint.

First, at the pleading stage, Plaintiffs bear the burden of alleging facts demonstrating Article III standing. But most of the Plaintiffs do not claim the cyberattack resulted in any actual misuse of their information. Instead, these Plaintiffs claim standing based on a perceived fear of possible future harm, and on steps they allegedly took to mitigate that risk of future harm. They did not plead facts showing any harm is likely, let alone certain to occur, as required by the United States Supreme Court. And the few Plaintiffs who do claim misuse of their information

---

[1] The U.S. Department of Justice and FBI has labeled ALPHV/Blackcat as a "Transnational Organized Crime" group. *See* https://www.state.gov/reward-for-information-alphv-blackcat-ransomware-as-a-service/. As of December 19, 2023, DOJ and the FBI have launched an international law enforcement initiative with several countries to combat this group, which has already "compromised over 1,000 victim entities in the United States and elsewhere, including prominent government entities" with sophisticated ransomware attacks. (*Id.*)

similarly fail to allege facts showing a materialized, concrete harm occurred, or that their alleged harms are plausibly connected to the cyberattack. Without pleading such harms, Plaintiffs fail to satisfy the well-established requirements for standing.

Second, even if Plaintiffs had standing to bring claims against Prog, their consolidated complaint does not plausibly state viable claims for relief.  By applying for and using Prog's services, Plaintiffs agreed to Prog's standard terms of use, privacy policy, and lease agreements that all contain relevant, controlling provisions applicable to this case – and yet these agreements are ignored by Plaintiffs who instead rushed to court to assert claims that are barred as a matter of law. Moreover, in their haste, Plaintiffs failed to marshal sufficient, if any, plausible facts supporting such claims.

For these reasons—as set forth more fully below—the Court should dismiss the consolidated complaint in its entirety and with prejudice.

## II.    RELEVANT FACTS

<u>Prog's Services and its Lease Application Process</u>

Prog is a national provider of lease-to-own services for consumer goods and electronics. (*See* Compl. ¶ 2.) Its headquarters are in Draper, Utah. (*Id*. ¶ 32.)

Consumers apply to use Prog's services by providing various financial and personal data typically required in any lease application – *e.g.*, contact information, social security number for credit checks, bank account information, and payment card information. (Compl. ¶ 5; *see also* https://progleasing.com/how-it-works.). During the lease application process, applicants are provided with, and agree to, several disclosures and agreements pertaining to their use of Prog's services. (**Exhibit A**, Stout Decl., ¶¶ 6-11; *see also, e.g.*, Compl. ¶¶ 3-4.) These disclosures include Prog's Application Disclosure Terms, Terms of Use, Arbitration Provision, and Privacy Policy (collectively, the "Application Agreements"). (Ex. A, Stout Decl. ¶ 6.) The Application

Agreements state that they are agreements between the user and Prog that apply to the use of Prog's services and its platforms, and that applicants should review them carefully before agreeing to proceed. (*See id*. ¶¶ 8-11.) Applicants must affirm that they have read, and accept, the Application Agreements to apply for a lease. (*Id*. ¶ 7.) Indeed, user cannot submit their application unless they affirmatively agree to the Application Agreements[2]. (*Id*.)

After accepting the Application Agreements, and if approved for a lease, customers then enter into a lease agreement with Prog. (Ex. A, Stout Decl. ¶ 12; *see also, e.g.*, Compl. ¶¶ 116, 129.) The lease agreements set forth the terms and conditions that apply specifically to the lease, in addition to the terms and conditions spelled out in the Application Agreements. (Ex. A, Stout Decl. ¶ 12.) The lease agreements specify which state's laws govern the lease. (*Id*. ¶ 13.)

<u>The September 11, 2023 Cyberattack</u>

On or about September 11, 2023, Prog was the victim of a cyberattack when its network was accessed by an unauthorized threat actor ("the Incident"). (Compl. ¶¶ 7-8.) In response to this Incident, Prog promptly engaged leading cybersecurity experts and took immediate steps to

---

[2] The Court may properly consider Plaintiffs' lease agreements and the Application Agreements for purposes of this motion to dismiss. *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1150 n.11 (10th Cir. 2023) (courts may consider (1) "documents that the complaint incorporates by reference" and (2) "documents referred to in the complaint if [they] are central to the plaintiff's claim[s]" and authentic). Plaintiffs expressly refer to their leases and Prog's privacy policy in the consolidated complaint. (*See, e.g.*, ¶¶ 2-3, 116, 129, 258.) They also attached a version of Prog's privacy policy as Exhibit 1, which itself expressly incorporates by reference Prog's "Application Disclosure" and "Terms of Use" and "Arbitration Provision" that govern use of Prog's services. (Dkt. #39-1, PageID. 282.) Plaintiffs are thus "on notice" of these agreements and their contents. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (citation omitted). Moreover, these agreements are central to the consolidated complaint because—as explained below—they "bear[] directly upon the disposition of Plaintiffs' claims." *Garcia-Rodriguez v. Gomm*, 169 F. Supp. 3d 1221, 1227 (D. Utah 2016); *see also Needham v. Fannie Mae*, 854 F. Supp. 2d 1145, 1148 (D. Utah 2012) (considering documents attached to motion). Ultimately, in a Rule 12 motion, the Court has "broad discretion" in determining whether to consider evidence outside the complaint. *Broker's Choice*, 861 F.3d at 1103.

respond to, remediate, and investigate the Incident – including contacting law enforcement personnel. (*Id.* ¶ 9.) After its initial investigation, Prog announced on September 21, 2023 that personally identifiable information, including social security numbers, of certain customers and other individuals was involved in the Incident. (*Id.*) On October 23, 2023, Prog began notifying individuals about the Incident. (*Id.* ¶¶ 13, 42.) Prog also offered affected individuals free credit monitoring, identity restoration, and identity theft protection services through Experian. (*Id.* ¶ 42.)

On October 27, 2023, within days of Prog announcing that it had been the victim of a cyberattack, Plaintiffs filed suit. (*See* Dkt. #1.) Ten related lawsuits in this District, and one in the Central District of California, were eventually consolidated into this action pursuant to Federal Rule of Civil Procedure 42. (*See* Dkt. #22, 34.)

<u>Plaintiffs and their Claims</u>

Eleven named plaintiffs allege they were harmed in the consolidated complaint. (Compl. ¶¶ 21-31.) All claim to be Prog customers or lease applicants whose information was involved in the Incident. (*Id.* ¶¶ 1, 8, 83, 94, 104, 116, 129, 139, 148, 160, 174, 186, 203.) Plaintiffs Ralph Maddox and Tyler Whitmore applied for Prog's services, but never leased any products with Prog. (*Id.* ¶ 139; Ex. A, Stout Decl. ¶ 14.) Despite the consolidated complaint's references to employees whose PII was involved in the incident, none of the named Plaintiffs are current or former Prog employees. (Ex. A, Stout Decl. ¶ 15.)

On April 19, 2024, Plaintiffs jointly filed their consolidated complaint against Prog (Dkt. #39) bringing claims for negligence, breach of implied contract, and violation of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150 *et seq,* and seeking injunctive

relief under the Declaratory Judgement Act on behalf of a putative nationwide class and two subclasses. (Compl. ¶¶ 229-283.)

Of the eleven named plaintiffs, only four (Chad Boyd, Laura Robinson, Allison Ryan, and Marty Alexander) allege any instances of unauthorized activity or fraud purportedly connected to the Incident, such as unauthorized transactions on bank accounts or new loan applications. (*See* Compl. ¶¶ 96, 163, 178, 193-197.)[3] The other seven plaintiffs (Raymond Dreger, Ralph Maddox, Dawn Davis, Richard Guzman, Tyler Whitmore, Melanie Williams, and Stephen Hawes) allege only that they have an increased risk of future harm, have lost time, or experienced emotional distress, in response to the Incident. (*See, e.g., id.* ¶¶ 15, 19, 88, 90, 101, 113-114, 124-125.)

## III.    LEGAL STANDARD

Dismissal pursuant to Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008); *see also Larson v. U.S. Dep't of the Interior*, 2016 WL 11796310, at *1 (D. Utah July 19, 2016) (unpublished) ("Since federal courts are courts of limited jurisdiction, [the court] presume[s] no jurisdiction exists absent a showing of proof"). "A court lacking jurisdiction cannot render judgment but must dismiss the cause [when] it becomes apparent that jurisdiction is lacking." *Goodnight v. Shalala*, 837 F. Supp. 1564, 1570 (D. Utah 1993) (citation, quotes omitted).

Under Rule 12(b)(6), dismissal is appropriate when--though the facts are viewed in the plaintiff's favor--they have not posed a "plausible" right to relief. *Bell Atlantic Corp. v. Twombly*,

---

[3] As explained in Part IV(A)(2) below, these Plaintiffs fail to connect their alleged instances of fraud or unauthorized activity to the Incident.

550 U.S. 544, 570 (2007); *Poe v. State of Utah*, 2024 WL 2093623, at *2 (D. Utah May 9, 2024)

(Barlow, J.) (unpublished). "The burden is on the plaintiff to frame a complaint with enough

factual matter (taken as true) to suggest that he or she is entitled to relief." *Poe*, 2024 WL

2093623, at *2 (quotes, citations omitted). "[T]he mere metaphysical possibility that *some*

plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the

complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of

mustering factual support for *these* claims." *Id.* (quoting *Ridge at Red Hawk L.L.C. v. Schneider*,

493 F.3d 1174, 1177 (10th Cir. 2007)). Ultimately, "[f]acts, not conclusions, must be pleaded"

and courts do not accept as true "legal conclusions [] couched as factual allegation[.]" *Id.*

## IV.    ARGUMENT

### A.  Plaintiffs Lack Standing Under Rule 12(b)(1)

Plaintiffs consolidated complaint must be dismissed because they have not plead facts

demonstrating they have Article III standing. Constitutional standing requires a plaintiff to show

that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v.

Robi*ns, 578 U.S. 330, 338 (2016). Plaintiffs, as the party invoking federal jurisdiction, bear the

burden of establishing standing. *Id.* Even at the pleading stage, Plaintiffs must "clearly … allege

facts demonstrating each element." *Id.* (citation, quotes omitted). "Further, in a putative class

action, the named representative[s] must personally allege that [they have] standing to sue." *Legg

v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 989 (W.D. Okla. 2021). "[S]tanding is not

dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and

for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion

LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

There are two types of Plaintiffs named in the consolidated complaint – those who allege misuse of their information and those who do not. Seven of the eleven Plaintiffs (Dreger, Maddox, Davis, Guzman, Whitmore, Williams, and Hawes) do not allege any instances of unauthorized use, or misuse, of the PII that was involved in the Incident (the "Non-Misuse" Plaintiffs). The remaining four Plaintiffs (Boyd, Robinson, Ryan, Alexander) allege misuse of their PII, but fail to allege it is traceable to the Incident (the "Alleged-Misuse" Plaintiffs).

As explained below, neither the Non-Misuse nor the Alleged-Misuse Plaintiffs meet their burden of demonstrating standing under the test articulated in *Spokeo*. Accordingly, the Court lacks subject matter jurisdiction and must dismiss Plaintiffs' claims. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) ("for a federal court to exercise jurisdiction under Article III, plaintiffs must allege (and ultimately prove) that they have" standing).

### 1.  The Non-Misuse Plaintiffs Lack a Concrete Injury-in-Fact

The Non-Misuse Plaintiffs (Dreger, Maddox, Davis, Guzman, Whitmore, Williams, and Hawes) do not have Article III standing because they have not alleged any concrete injury-in-fact. Rather, these Plaintiffs only allege some combination of the following purported injuries: (i) their PII *might* be placed or sold on the dark web which creates heightened future risk of identity theft or fraud; (ii) lost or diminished value of their PII; (iii) lost time and expenses responding to Prog's notices of the cyberattack; (iv) lost benefit of the bargain with Prog; (v) inconvenience via spam calls, texts, and emails; (vi) emotional distress such as anxiety, and stress, and/or (vii) their PII was compromised or taken during the Incident. (*See, e.g.*, Compl. ¶¶ 15, 17, 19, 47, 79, 88-92, 109-114, 121-125, 131-136, 143-146, 152-158, 205-209, 253-255 .) These alleged harms are insufficient to plead a concrete injury.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. at 340; *see also Legg*, 574 F. Supp. 3d at 989 ("concrete" injuries must "actually exist" and be "real" and not "abstract"). Similarly, a "particularized" injury is one that "affect[s] the plaintiffs in a personal and individual way" and is not "undifferentiated." *Spokeo*, 578 U.S. at 339. A real, existing injury is a prerequisite to federal jurisdiction because "federal courts do not adjudicate hypothetical or abstract disputes" nor do they "possess a roving commission to publicly opine on every legal question." *TransUnion*, 594 U.S. at 423. Simply put, "[n]o concrete harm, no standing." *Id*. at 417.

### i.  Increased Risk of Identify Theft or Fraud Alone is Not a Concrete Injury

The Non-Misuse Plaintiffs cannot establish standing just by alleging their PII was compromised during the Incident or that they have an increased future risk of financial fraud. In *TransUnion*, the Supreme Court held that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm." 594 U.S. at 436. In so doing, the Court rejected plaintiffs' argument that they had standing because there was a "material risk that [their financial] information would be disseminated in the future to third parties and thereby cause them harm." *Id*. at 435. That argument was insufficient to establish standing because plaintiffs could not "demonstrate that the risk of future harm materialized[,]" nor could they "present evidence that the class members were independently harmed by their exposure to the risk itself[.]" *Id*. at 437. Accordingly, plaintiffs' claimed risk of future harm was "too speculative to support Article III standing." *Id*. at 438.

Following *TransUnion*, district courts within the Tenth Circuit reject standing arguments based on allegations of future harm – especially in data breach cases like this where Plaintiffs claim injury based on an alleged increased risk of future identity theft or financial fraud. For

example, in *Legg v. Leaders Life Insurance Co.*, the court held that "[g]iven the holding in *TransUnion*," plaintiff did not have standing for damages where his claim was not premised on "any actual fraud or identity theft that occurred as a result of the data breach, but on the risk that fraud or identity theft may occur in the future." 574 F. Supp. 3d at 993. The *Legg* court stated that "[e]ven accepting as true Plaintiff's allegations about the nature of the breach – that it was an intentional attack by cybercriminals – Plaintiff only pleads facts showing that there is a non-imminent risk of possible future injury following the data breach. This is not sufficient to confer standing." *Id.* at 994.

Similarly, in *McCombs v. Delta Group Electronics*, plaintiff "ask[ed] [the] Court to credit the possibility that [his] PII will be used by an unknown cybercriminal to potentially commit fraud or identity theft." 676 F. Supp. 3d 1064, 1072 (D.N.M. 2023). Declining to do so, the court stated such allegations "lie almost entirely in the future, and they are premised on potential illegal activity yet to be committed (and which may never be committed) by an unknown third party." *Id.* Accordingly, the court found that plaintiffs injuries were too speculative to meet the Article III standing requirement. *Id.*

And again, in *C.C. v. Med-Data Inc.*, the court dismissed data breach claims for lack of standing where "plaintiff [did not] allege any misuse of any of the [implicated] data." 2022 WL 970862, at *7 (D. Kan. Mar. 31, 2022) (unpublished). Instead, arguing risk of future harm, plaintiff "trie[d] to foil this factual gap … by relying on research and reports about identity theft crimes" and "assumption[s]" about what "the criminals and/or their customers" will do with the data. *Id.* at *7-8. But, as the court correctly noted, "[t]he problem with [that] approach is that Supreme Court rejected it in *TransUnion*." *Id.* at *7.

9

Here too, Plaintiffs cannot rely on "generalized, [non]specific, vague allegations" or "speculation about the decisions of independent actors" to demonstrate a concrete injury-in-fact. *Id*. at *7-8 (citing cases); *see also e.g.*, *F.S. v. Captify Health*, 2024 WL 1282437, at *4 (D. Kan. Mar. 26, 2024) (unpublished) (no standing where plaintiff did not "allege[] any misuse of his own data."); *Masterson v. IMA Fin. Grp., Inc.*, 2023 WL 8647157, at *8 (D. Kan. Dec. 14, 2023) (unpublished) ("Without any misuse [of data taken during cyberattack] to date, the Court finds that the risk of future injury and any related future costs of mitigation are too attenuated to establish standing."); *Deevers Stoichev v. Wing Fin. Servs., LLC*, 2023 WL 6133181, at *4-6 (N.D. Okla. Sept. 19, 2023) (unpublished) ("When a concrete harm from a data breach has yet to actualize, standing cannot be predicated on a speculative chain of inferences"; dismissing complaint for lack of standing) (citing cases holding same).

As this authority makes abundantly clear, the Non-Misuse Plaintiffs do not show a concrete injury-in-fact that confers standing just by alleging (i) their PII was compromised during the Incident and (ii) they may now be at increased future risk of identity theft or financial fraud. Plaintiffs themselves recognize that "fraudulent activity resulting from the Data Breach may not come to light for years" (Compl. ¶ 76) — if ever. And in the seven or eight months since the Non-Misuse Plaintiffs filed their original complaints, no instances of fraud involving the Non-Misuse Plaintiffs' information have materialized. Their generalized citations to online reports, and ransomware statistics (*see, e.g.*, Compl. ¶¶ 10-11, 52-54) to try and "foil this factual gap" by speculating as to what may happen with their data down the road is unavailing. *Med-Data Inc.*, 2022 WL 970862, at *7; *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1193 n.3 (10th Cir. 2021) (recognizing, post *TransUnion*, "the difficulties in bringing a claim for damages based on a theory of future risk of harm."). In accordance with *TransUnion* and its progeny, standing to

seek damages against Prog requires evidence of actual, materialized misuse — which the Non-Misuse Plaintiffs do not allege.[4]

Nor do the Non-Misuse Plaintiffs sufficiently demonstrate injury-in-fact through their other claimed "injuries" – *e.g.*, diminished value of their PII, lost time and expenses associated with mitigating perceived harm, inconvenience through spam messages, and emotional distress. As many courts have held, these allegations also do not demonstrate a concrete injury-in-fact that confers Article III standing.

### ii.  Lost or Diminished Value of PII is Not a Concrete Injury

Most Non-Misuse Plaintiffs claim the value of their PII has been lost or diminished because of the Incident. (*See, e.g.*, Compl. ¶¶ 19(i), 110, 122, 136, 153, 205.) But as Judge Posner stated in affirming dismissal of a data breach claim for lack of standing, such allegations are "gibberish." *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 913 (7th Cir. 2017). Prog did not "take the [P]laintiff's personal information away from [them]; [they] still [have] it" and they have not "been deprived of anything[.]" *Id.* Courts in the Tenth Circuit are in accord. *See, e.g., Masterson*, 2023 WL 8647157, at *7 ("Diminution in the value of Plaintiffs' PII [] is not a concrete and particularized injury sufficient to confer standing."); *Blood v. Labette Cnty. Med. Ctr.*, 2022 WL 11745549, at *6 (D. Kan. Oct. 20, 2022) (unpublished) (same).

---

[4] The Tenth Circuit has not addressed whether "the mere fact that a data breach occurred necessarily mean[s] that a customer has suffered a concrete injury, or [whether] something more [is] required[.]" *Legg*, 574 F. Supp. 3d at 989; *Captify Health, Inc.*, 2024 WL 1282437, at *3. But other circuit courts have reached this issue, and most conclude "that data breach victims don't sustain an injury in fact merely because of a data breach." *Med-Data Inc.*, 2022 WL 970862, at *3 (citing cases); *Captify Health*, 2024 WL 1282437, at *3 (noting same). Adopting this line of cases, many district courts in the Tenth Circuit "have followed the majority view concluding that a plaintiff does not suffer an injury in fact where their PII is accessed through a data breach but no direct harm results." *McCombs*, 676 F. Supp. 3d at 1071 (citing cases); *see also Deevers*, 2023 WL 6133181, at *6 ("the majority of courts, including district courts in this circuit, have concluded that plaintiffs must allege actual misuse [] to demonstrate they face an imminent risk of fraud.").

Further, "[a]ssuming personal identifying information [even] has a monetary value," there is no injury where Plaintiffs "fail to allege that [they] attempted to sell [their] personal information and [were] forced to accept a decreased price." *Legg.*, 574 F. Supp. 3d at 994 (rejecting this argument as a concrete injury); *Cooper v. Bonobos, Inc.*, 2022 WL 170622, at *5 (S.D.N.Y. Jan. 19, 2022) ("courts have consistently rejected allegations that the diminution in value of personal information can support standing … particularly where the plaintiffs have not alleged that they attempted to sell their personal information or that, if they have, the data breach forced them to accept a decreased price for that information") (cleaned up). The Non-Misuse Plaintiffs' allegation (Compl. ¶¶ 72-75) that a black market generally exists for their PII is also insufficient because they do not allege that they "ever intended to sell their personal information on the black market." *Baker v. Akumin Corp.*, 2024 WL 1931480, at *6. (S.D. Fla. Apr. 16, 2024).

Simply put, even if the law did recognize diminution of value as a concrete harm, the Non-Misuse Plaintiffs have alleged no facts here to plausibly support it. *In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 3158954, at *5 (C.D. Cal. Apr. 19, 2023) (unpublished) (rejecting diminution of value arguments as "entirely conclusory" because *inter alia* plaintiffs did not "allege a market for Personal Information … nor their inability to participate in such a market.").

### iii.  Lost Benefit of the Bargain is Not a Concrete Injury

Similarly, Non-Misuse Plaintiffs Maddox and Davis allege they've lost the benefit of their bargain with Prog. (Compl. ¶¶ 110(v), 122(v).) This argument is also meritless because these Plaintiffs do not allege they paid Prog "any sort of premium in exchange for data security[.]" *Legg*, 574 F. Supp. 3d. at 995 (rejecting argument, citing cases); *see also Captify Health*, 2024 WL 1282437, at *4 ("Our court already has rejected this exact theory of

standing."). Plaintiffs also do not allege they overpaid for Prog's services. (*See generally* Compl.) But even if they had, that theory too has been soundly rejected by courts in the Tenth Circuit, insofar as there are no facts alleged that both Plaintiffs and Prog "understood" that "some particular sum" of Plaintiff's payments were to be "allocated towards the protection of customer data[.]" *Blood*, 2022 WL 11745549, at *6 (citation omitted). Indeed, in *Med-Data Inc.*, the court noted "[s]everal cases have rejected this [overpayment] theory" and the court "predict[ed] that our Circuit would join those results because plaintiff's allegations are simply too thin to confer standing." 2022 WL 970862, at *9.

### iv.  Lost Time and Expenses for Mitigation Efforts is Not a Concrete Injury

The Non-Misuse Plaintiffs also claim that in response to Prog's notices about the Incident, they have lost time and have incurred expenses in taking precautionary steps, such as changing passwords, monitoring their accounts, and/or placing freezes on their credit reports. (*See, e.g.*, Compl. ¶¶ 19(iii), 88, 98, 109, 121, 138, 145, 208.) They do not allege how much time they have lost, or an actual dollar amount expended, on any such "mitigation" costs. *(See generally id*.)  Courts are clear that these allegations do not show any concrete harms.

The Supreme Court instructs that plaintiffs cannot "manufacture standing" simply by incurring costs even if those costs are "a reasonable reaction to a risk of harm[.]" *Clapper v. Amnesty Intern., Inc.*, 568 U.S. 398,  416 (2013). "Thus, while it may have been reasonable to take some steps to mitigate the risks associated with [a] data breach, those actions cannot create a concrete injury where there is no imminent threat of harm." *Legg*, 574 F. Supp. 3d at 994 (citing *Clapper*). The Court's rationale in *Clapper* was that "[i]f the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." 568 U.S. at 416. This well-established framework for

establishing standing should not be transformed into an analysis of whether a plaintiff's "subjective fear" is "fanciful, irrational, or clearly unreasonable." *Id*. 416 (citation omitted).

Given the holding in *Clapper*, Tenth Circuit courts widely agree that generalized allegations of lost time and money in response to a data breach do not constitute actual injuries, even if reasonably incurred. *See, e.g., Legg*, 574 F. Supp. 3d at 994; *McCombs*., 676 F. Supp. 3d at 1073 (plaintiff's "efforts monitoring her accounts and safeguarding her PII are not a defense against a concrete or imminent threat"); *Blood*, 2022 WL 11745549, at *6 (alleged injuries for "time spent monitoring and mitigating" were not "concrete" because they were not "based on a threat of future injury that is certainly impending").

Thus, because the Non-Misuse Plaintiffs cannot demonstrate any actual misuse or concrete risk of future harm (as explained above), they have no basis to argue their "lost time or expense" qualifies as an injury-in-fact. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) ("costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury' which forms the basis for Appellants' claims."); *Med-Data*, 2022 WL 970862, at *8 (same, citing cases); *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007) ("an argument that the time and money spent monitoring a plaintiff's credit suffices to establish an injury 'overlook[s] the fact that their expenditure of time and money was not the result of any present injury, but rather the anticipation of future injury that has not materialized.'") (citation omitted).

### v. Increased Spam, or Annoyance, is Not a Concrete Injury

Next, the Non-Misuse Plaintiffs claim they have an actual injury because they received an increase in spam messages and phishing attempts, or other "annoyance" as a result of the cyberattack. (*See, e.g.*, Compl. ¶¶ 89, 101, 112, 123, 131, 144, 206.) These alleged harms also do not confer Article III standing.

"Spam calls, texts, and e-mails have become very common in this digitized world, and a number of courts have declined to confer standing when considering an increase in spam communications." *McCombs*, 676 F. Supp. 3d at 1074 (citing cases); *see also Cooper*, 2022 WL 170622, at *5 ("Courts have generally rejected the theory that unsolicited calls or emails constitute an injury in fact."). The Non-Misuse Plaintiffs do not allege the specific number or frequency of spam messages they received prior to the Incident, nor do they quantify the number or frequency of spam messages they allegedly received after the Incident. Plaintiffs also do not allege that their "phone numbers or email addresses were unlisted or otherwise protected" and that such protections are now lost. *Blood*, 2022 WL 11745549, at *6 (concluding that "alleged inconvenient disruptions (such as spam calls, texts, and emails) do not constitute an injury in fact.").

Instead, the Non-Misuse Plaintiffs only vaguely assert that there has been an "increase" in the number of spam messages and, "upon information and belief" that increase was caused by the Incident. (Compl. ¶¶ 89, 112, 123.) These type of generalized claims of unspecific harms are routinely rejected. *Baker*, 2024 WL 1931480, at *4 (rejecting bare allegations of "increased amounts of spam email, texts and phone[ ] calls" as conclusory); *see also Deevers*, 2023 WL 6133181, at *6 n.5 (no injury in fact where plaintiff alleged there was a "marked increase" in spam messages, but did "not allege a particular quantity").

### vi. Emotional Distress for Perceived Future Risk is Not a Concrete Injury

Finally, the Non-Misuse Plaintiffs all allege they suffered a concrete injury in the form of anxiety and stress from their PII being implicated. (Compl. ¶ 254.) As an initial matter, such claims can be dismissed out of hand because Plaintiffs offer no facts or details showing their emotional injuries extend beyond mere "garden variety claims of worry or inconvenience[.]" *Masterson*, 2023 WL 8647157, at *7 ("Plaintiffs plead no facts supporting this conclusory

statement."); *see also Deevers*, 2023 WL 6133181, at *7 n.7 (concluding  that "[w]ithout facing

an imminent risk of identity theft … the distress of plaintiffs must manifest to that standard as

required to establish" the tort of intentional infliction of emotional distress which requires proof

of "extreme and outrageous" conduct that causes "severe" emotional distress.) Plaintiffs here do

not claim, nor could they plausibly do so, that their emotional injuries are "severe."

Moreover, courts hold that unsupported claims of emotional injuries—like those

presented here—are "quintessential abstract harms that are beyond our power to remedy."

*Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021). For example,

in *Kim v. McDonald's USA, LLC*, plaintiffs alleged they "experienced mental aggravation,

anxiety, and emotional distress" because of a data breach. 2022 WL 4482826, at *6 (N.D. Ill.

Sept. 27, 2022) (unpublished). The court held such allegations were "insufficient to provide

standing under Article III" because if the rule were otherwise, and "emotional injuries alone

were sufficient to invoke the jurisdiction of federal courts, then everyone would have standing to

litigate about everything." *Id*. (quotes omitted). *See also, e.g., Beck v. McDonald*, 848 F.3d 262,

272 (4th Cir. 2017) ("We also reject the Plaintiffs' claim that 'emotional upset' and 'fear [of]

identity theft and financial fraud' resulting from the data breaches are 'adverse effects' sufficient

to confer Article III standing."); *Baker*, 2024 WL 1931480, at *5 ("simply … alleging anxiety

due to [an alleged] increased risk [of disclosure of PII] cannot be sufficiently concrete to plead

an injury in fact."). Further, as noted above, the Supreme Court in *Clapper* was clear that

plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their

fears of hypothetical future harm[.]" *Clapper*, 568 U.S. at 416.

The Non-Misuse Plaintiffs therefore have not shown a concrete injury through general

allegations of emotional distress. *See Sims v. Kahrs Law Offs.*, 2023 WL 2734317, at *8 (D. Kan.

Mar. 31, 2023) (unpublished) ("contrary to Plaintiff's assertion, the Supreme Court did not suggest that an allegation of emotional injury, in and of itself, is sufficient to confer standing.").

### 2. The Alleged-Misuse Plaintiffs also Lack "Concrete" and "Fairly Traceable" Injuries

Similarly, the Alleged-Misuse Plaintiffs (Boyd, Robinson, Ryan, Alexander) do not have Article III standing either, because they too have not alleged any "concrete" injury in fact,[5] and because their alleged injuries are not "fairly traceable" to the September 11, 2023 cyberattack. *See Spokeo*, 578 U.S. at 338 (standing requires an injury "fairly traceable to the challenged conduct of the defendant").

Traceability requires plaintiffs to allege "a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Blood*, 2022 WL 11745549, at *4 (quoting *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 814 (10th Cir. 2021)). "The injury must not be 'the result of the independent action of some third party not before the court'" nor can a plaintiff rely on a "speculative chain of possibilities." *Id*. (quoting *Clapper*, 568 U.S. at 414)). At the pleading stage, plaintiffs "satisfy the 'fairly traceable' requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury." *Santa Fe Alliance*, 993 F.3d at 814.

### i. Plaintiff Chad Boyd

Plaintiff Chad Boyd alleges two instances of purported fraudulent activity in late September and October of 2023. Neither demonstrates he has standing.

First, Mr. Boyd claims that there were "unauthorized charges on his debit card" that he disputed with the bank but "[have] not been reimbursed." (Compl. ¶ 96.) But these charges

---

[5] The Alleged-Misuse Plaintiffs' allegations regarding lost or diminished value of PII, lost benefit of the bargain, inconvenience through spam messages, and emotional distress all are insufficient as a matter of law for the same reasons explained above.

cannot be attributed to the Incident because he fails to allege that his debit card number was among the information taken. (*Id*. ¶ 94.) Mr. Boyd makes no attempt to allege how the threat actor obtained his debit card number when it was not alleged to have been involved in the Incident. Thus, by Mr. Boyd's own allegations, there is no "substantial likelihood" that the unauthorized debit card charges were caused by the Incident. *Blood*, 2022 WL 11745549, at *4

Mr. Boyd likewise fails to prove traceability simply by alleging it occurred after the Incident on September 11, 2023.  (*See* Compl. ¶ 96.) "[T]o prove that a data breach caused identify theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012). "[P]urely temporal connections are often insufficient to establish causation[.]" *Id*. at 1327 (citation omitted). Mr. Boyd provides no such "nexus" beyond a temporal one. (Compl. ¶ 96.) This too reveals why he lacks a traceable injury here. *See, e.g., Allgood v. PaperlessPay Corp.*, 2022 WL 846070, at *10-11 (M.D. Fla. Mar. 22, 2022) (temporal connection in time and sequence was "not enough to plausibly plead causation.").

Second, Mr. Boyd claims there were "approximately fifteen (15) hard inquiries on his credit report" in October of 2023 that were "inaccurate." (Compl. ¶ 97.)  On its face, this does not allege a sufficient injury insofar as having credit inquires that were "inaccurate" does not necessarily mean they were unauthorized or fraudulent — and Mr. Boyd is careful not to allege as much. *(See id.; see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (plausibility standard requires "more than the mere possibility of misconduct").) In any event, Mr. Boyd does not allege the credit inquiries negatively affected his credit scores or otherwise had any negative financial effect. (Compl. ¶ 97.) In similar circumstances, courts agree that credit inquiries alone do not demonstrate a sufficient "injury-in-fact" for Article III standing. *See, e.g., Doak v. Capital*

*One*, 2019 WL 4645162, at *6 (N.D. Cal. Sept. 24, 2019) (unpublished) (no injury where plaintiff does not "allege[] that defendants' credit inquiries impacted their credit scores"); *Oneal v. First Tenn. Bank*, 2018 WL 1352519, at *9 (E.D. Tenn. Mar. 15, 2018) (unpublished) (absent allegation that plaintiff's credit was "used … in any harmful way … plaintiff has alleged an injury that is merely 'abstract,' rather than '*de facto.*'") (citing *Spokeo*, 578 U.S. at 340). Plaintiff Boyd has not experienced any concrete injuries fairly traceable to Prog, and his claims should be dismissed.

### ii. Plaintiff Allison Ryan

Plaintiff Allison Ryan's allegations of actual harm are similar to Mr. Boyd's addressed above, and are similarly unavailing in establishing standing. She claims there were "two hard inquires on her credit" and "unauthorized charges on her prior credit card." (Compl. ¶ 178.)

Like Mr. Boyd, however, Ms. Ryan fails to allege the credit inquires negatively affected her credit score or otherwise caused any financial harm. *See Doak*, 2019 WL 4645162, at *6; *Oneal*, 2018 WL 1352519, at *9. Nor does she allege the credit card number that experienced the fraud was involved in the Incident. (*See* Compl. ¶ 175.) Even if she had alleged such facts, she says the unauthorized charges were on her "prior" credit card (*Id.*). This further suggests any unauthorized charges from a "prior" point in time have nothing to do with Prog or the Incident. *See Allgood*, 2022 WL 846070, at *11 (causation not sufficiently established where "[n]othing in Plaintiffs' Complaint make one scenario more plausible than the other.")

Finally, Ms. Ryan's claim that she received email receipts for items she never purchased (Compl. ¶ 178) is not an injury – let alone a "concrete" and "*de facto*" injury needed for standing. Ms. Ryan does not allege she was ever charged, or ultimately had to pay, for these purchases. (*See id*; see also Part A(1)(v) explaining spam messages are not a cognizable harm.) Ms. Ryan fails to establish standing for her claims and they should be dismissed.

### iii. Plaintiff Laura Robinson

Plaintiff Laura Robinson alleges that she "suffered actual injury" because her "bank accounts [were] frozen without her authorization, with all money in those accounts drained without explanation." (Compl. ¶ 163.) She claims she "no longer has access to these accounts, nor the funds that were in them." (*Id*.) No other information or specific detail about this allegedly unauthorized activity is provided. (*See id*.)

Such barebone allegations are not enough to show traceability – *i.e.*, a "substantial likelihood" that Ms. Robinson's alleged harm was caused by the Incident. A critical missing fact not alleged is that the numbers for *these* bank accounts or any security information necessary to access them were provided to Prog. In addition, she fails to allege that the numbers of the allegedly impacted bank accounts were the *same* account numbers that were involved in the Incident. (*See* Compl. ¶¶ 161, 163.) Without more, Ms. Robinson does not plausibly suggest why this injury is not better explained by "the unfettered choices made by independent actors not before the court" – such as another individual or family member who had access to the account. *See Clapper*, 568 U.S. at 414 n.5. The Court is not required to, and should not, provide these missing links to establish an injury traceable to the Incident. *Spokeo*, 578 U.S. at 330 (plaintiff must "clearly … allege facts demonstrating" each requisite element of standing analysis); *Iqbal*, 556 U.S. at 678 (pleading facts "merely consistent with a defendant's liability … stops short of the line between possibility and plausibility of entitlement to relief.") (quotes omitted).

Indeed, under strikingly similar facts, one court within the Tenth Circuit has already held that unadorned allegations of unauthorized bank account activity did not satisfy the "traceability" requirement under Article III. *See Blood*, 2022 WL 11745549, at *5. In *Blood*, plaintiffs alleged they "suffered unauthorized charges to their bank account" but they stopped short of asserting facts "suggesting how the mere possession of their Social Security numbers and names would

enable someone to make unauthorized charges on an existing account (instead of, for example, opening a new account)." *Id*. The court in *Blood* declined to assume such activity was possible simply by having plaintiff's information, because doing so would "require[] a level of speculation and conjecture [the] Court [was] unwilling to accept." *Id*. Accordingly, the plaintiffs' allegations "on this front [were] speculative and insufficient to connect the data breach to their bank account." *Id*. (citing cases finding same). The same absence of facts and required speculation is present here for Ms. Robinson's claimed injury, meaning she too lacks Article III standing.

### iv.  Plaintiff Marty Alexander

Finally, Plaintiff Marty Alexander alleges he "received multiple notifications indicating that an unauthorized user has attempted to obtain loans with Wells Fargo, American Express, the Bank of Missouri, and Community Bank using his PII." (Compl. ¶ 193.) Like the other Alleged-Misuse Plaintiffs, however, this allegation is insufficient to demonstrate a concrete injury that is fairly traceable to Prog or the Incident.

For one, many courts hold that mere "attempted fraud" is not a sufficient Article III injury. *See, e.g., In re Canon U.S.A. Data Breach Litig*., 2022 WL 22248656, at *7 (E.D.N.Y. Mar. 15, 2022) (unpublished) ("[a]llegations that plaintiffs spent time mitigating or remedying attempted fraud … do not plead cognizable damages."); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 46 (D. Ariz. 2021) ("Although Plaintiffs [] experienced attempted fraud, their claims are not cognizable."); *Whalen v. Michael's Stores, Inc.*, 689 F. App'x. 89, 90 (2d Cir. 2017) (not published) (affirming dismissal for lack of standing where plaintiffs' credit card was presented for payment, but no "fraudulent charges were actually incurred on the card" and plaintiff was not liable for the fraudulent attempts.) Indeed, Mr. Alexander does not allege he is now liable on these attempted loans or that he incurred any expense in the attempted applications

or rejections thereof. (*See* Compl. ¶¶ 193-197.) And his vague allegations that "[t]he Data Breach and multiple hard inquiries has negatively affected [his] credit" (Compl. ¶ 198) is too conclusory and lacking in factual detail/support to plausibly demonstrate an injury in fact. *See, e.g., Baker*, 2024 WL 1931480, at *4 (plaintiff's allegation that he "suffered [l]ower credit scores … from credit inquiries following fraudulent activities" was too conclusory to establish standing).

Moreover, Mr. Alexander's allegations possess the same fatal flaws as the others with respect to traceability – *i.e.*, he provides no facts to plausibly suggest how someone obtained or used his PII to fraudulently apply for loans, whether the PII used in these unauthorized applications was the same PII that he provided to Prog, or whether he can plausibly rule out the "independent action of some [other] third party" that might have access to his PII (e.g., other data breaches that exposed his PII). (*See generally id.*) Compare *Blood*, 2022 WL 11745549, at *5 (distinguishing cases where traceability allegations were sufficient because defendant was the "only common source" of the implicated data) (citations omitted). Instead, Mr. Alexander appears to rely solely on allegations of a "temporal" proximity to the Incident which, as noted above, courts reject. *See Resnick*, 693 F.3d at 1326 (pleadings require nexus between the instances beyond allegations of time and sequence.). Thus, Mr. Alexander thus lacks Article III standing.

### 3. Plaintiffs Cannot Allege Imminent and Substantial Pending Harm to Support Injunctive Relief

The foregoing facts and law establish that Plaintiffs do not have Article III standing to seek damages against Prog for injuries allegedly caused by the Incident. They also do not have standing to seek injunctive relief, either.

Plaintiffs must "demonstrate standing separately for each form of relief sought." *TransUnion*, 594 U.S. at 436 (citation omitted). For injunctive relief as it relates to future harm, a

plaintiff "may pursue forward-looking, injunctive relief to prevent the harm from occurring at least *so long as* the risk of harm is sufficiently *imminent and substantial*." *Id*. at 435 (emphasis added). An "imminent" harm is one that is "*certainly impending*." *Clapper*, 568 U.S. at 409.

For the same reasons set forth above, Plaintiffs have not alleged a sufficiently "imminent and substantial" risk of future harm that confers Article III standing to seek injunctive relief. Moreover, given Plaintiffs' own admission that the risks of data breaches are omnipresent and increasing (*see, e.g.*, Compl. ¶¶ 52-53, 72-77), and may take years to materialize (*id*. ¶ 76), their alleged risk of future harm is no different than what is likely faced by virtually every resident of the United States (or that Plaintiffs themselves faced and would continue to face regardless of the criminal ransomware attack on Prog). *See, e.g.*, *In re Illuminate*, 2023 WL 3158954, at *5 (no injunctive relief based on conclusory citations to articles and claims of increased risk of fraud that did not "explain how the information leaked in the Data Breach creates a risk that is imminent and substantial.").

Plaintiffs also recognize the Incident was a "ransomware" attack (Compl. ¶¶ 10, 65-66) — meaning an attack designed to extort payment from the victim (Prog) for return of the data. But, as courts have recognized, "[t]he target of a ransomware attack is the holder of the confidential data" and theft or blocking of access to data is just a "means to an end" of extorting payment. *Universal Health Serv., Inc.*, 539 F. Supp. 3d 481, 487 (E.D. Pa. 2021). In other words, the individuals whose data may be impacted are not the target of a ransomware attack, and misappropriation or fraudulent use of their PII is not the threat actor's goal. Rather, the company (here, Prog) is the target, and the goal is to extort monetary payment. As such, Plaintiffs have not alleged why it is plausible (let alone a "certainly impending" risk) that the cybercriminal involved here will select their specific PII for misuse out of the large volume of other affected

individuals. *See Beck*, 848 F.3d at 275 (finding it speculative that "thieves [would] select, from thousands of others, the personal information of the named plaintiffs and attempt successfully to use that information to steal their identities.").

Nor do Plaintiffs offer any evidence, other than their own say-so, that the risk of another cyberattack on Prog is imminent and substantial, and thus future looking injunctive relief is necessary. (*See, e.g.*, Compl.¶ 272.) Such allegations are pure conjecture and unsupported legal conclusions that are entitled to no weight. *Holmes v. Elephant Ins. Co.*, 2023 WL 4183380, at *6 (E.D. Va. Jun. 26, 2023) (unpublished) (no standing for injunctive relief for increased data security measures based only on "conclusory statements" of another possible data breach); *Iqbal*, 556 U.S. at 678 ("naked assertion[s] devoid of further factual enhancement" are insufficient) (quotes omitted).

Accordingly, Plaintiffs do not have Article III standing either for monetary or injunctive claims of relief against Prog. The Court lacks subject matter, and must dismiss the consolidated complaint.

### B. Plaintiffs Have Failed to State a Claim for Relief Under Rule 12(b)(6)

Even if Plaintiffs have Article III standing (they do not), the consolidated complaint nevertheless fails to state any valid or plausible claims for relief under Rule 12(b)(6).

#### 1. Plaintiffs Cannot Assert Implied Contract Claims (Count II) Where an Applicable Express Contract Exists

Plaintiffs' claims for breach of implied contract (Count II) must be dismissed because they entered into express contracts with Prog (the Application Agreements) that govern the same obligations, or subject matter, upon which their implied contract claims are based. Implied contractual claims do not exist under such circumstances. *Digecor, Inc. v. E. Dig. Corp.*, 2007 WL 185477, at *4 (D. Utah Jan. 19, 2007) (unpublished) ("[r]ecovery in quasi contract is not

available where there is an express contract covering the subject matter of the litigation.") (citing cases).

Plaintiffs allege that by providing Prog with certain PII in the lease application process, they "entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such PII, to keep such PII secure and confidential[.]" (Compl. ¶ 261.) They further allege that Prog breached the implied contract by "failing to safeguard and protect their PII." (*Id*. ¶ 263.) However, during the lease application process, Plaintiffs were presented with, and agreed to, *express*—not implied—agreements regarding Prog's obligations and limitations of liability with respect to information Plaintiffs provided. (Ex. A, Stout Decl. ¶¶ 6-11.) These Application Agreements foreclose any implied contractual claims related to the same subject matter, as explained below.

### i. Relevant Application Agreements

<u>Application Disclosure Terms</u>

Plaintiffs who applied for a lease were first presented with Prog's "Application Disclosure Terms." (Ex. A, Stout Decl. ¶ 8, hereinafter the "Terms.") The Terms clearly state they "are an agreement between the user … and Prog Leasing, LLC … [that] apply to [Prog's] websites, kiosks, software, applications, and other online services that post or include a link to these Terms[.]" (*Id*.) As of May 11, 2020, the Terms expressly incorporate by reference Prog's "Terms of Use" and "Privacy Policy." (*Id*.) Applicants are advised, in all capital letters, that "BY SUBMITTING THIS APPLICATION, THE USER AGREES TO BE BOUND BY THE TERMS SET FORTH BELOW" and that "IF THE USER DOES NOT AGREE … PLEASE DO NOT SUBMIT THIS APPLICATION." (*Id*.) Further, it is disclosed that "[t]he Terms contain the entire understanding between you and us with respect to the Progressive Platforms and no oral or

written representation, statement, or inducement not contained herein shall bind either party."

(*Id*.)

<u>Terms of Use</u>

As prefaced in the Application Disclosure Terms, Plaintiffs were also required to accept Prog's "Terms of Use" agreement to continue with the lease application process. (Ex. A, Stout Decl. ¶ 9.) The Terms of Use agreement states that it applies to "any use" of the "Progressive Platforms." (*Id*.) It also explicitly states that "[b]y using the Progressive Platforms, the user agrees that he/she has read, that he/she understands, ***and that he/she will be bound by these Terms. This is a legally binding agreement.*** If the user does not agree with the Terms of Use the user should not use the Progressive Platforms." (*Id*., emphasis added.)

Regarding the submission and handling of, and liability for, information provided to Prog in the use of its services, the Terms of Use explicitly disclose in relevant part:

- "The user acknowledges that by submitting Communications to Prog Leasing, no confidential, fiduciary, ***contractually implied,*** or other relationship is created between the user and Prog Leasing other than pursuant to these Terms of Use and any subsequent written agreement entered into with Prog Leasing."

- "PROG LEASING MAKES NO REPRESENTATION OR WARRANTIES OF ANY KIND WHATSOEVER FOR … ***ANY BREACH OF SECURITY ASSOCIATED WITH THE TRANSMISSION OF SENSITIVE INFORMATION THROUGH THE PROGRESSIVE PLATFORMS***[.]"

- "FURTHER, IN NO EVENT WILL PROG LEASING BE LIABLE FOR ANY LOSS OF PROFITS, BUSINESS, ***USE OF DATA*** OR FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND WHETHER BASED IN CONTRACT, NEGLIGENCE OR OTHER TORT."

- "PROG LEASING … DISCLAIM[S] AND EXCLUDE[S] LIABILITY FOR ***ANY LOSSES AND EXPENSES OF WHATEVER NATURE*** AND HOWSOEVER ARISING, INCLUDING WITHOUT LIMITATION ANY DIRECT, INDIRECT, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES, LOSS OF USE, ***LOSS OF DATA***, LOSS CAUSED BY A VIRUS, LOSS OF INCOME OR PROFIT, ***LOSS OF OR DAMAGE TO PROPERTY*** … OR OTHER LOSSES OF ANY KIND OR CHARACTER, ***EVEN IF PROG LEASING HAS BEEN ADVISED OF THE***

***POSSIBILITY OF SUCH DAMAGES*** OR LOSSES, ARISING OUT OF OR IN CONNECTION WITH THE USE OF THE PROGRESSIVE PLATFORMS[.]"

(Ex. A, Stout Decl., ¶ 9, §§ 9-10 of Terms of Use, emphasis added.)

Finally, the Terms of Use specify, in all capital letters, that they "shall be governed by and construed in accordance with the laws of the State of Utah, without regard to conflicts of laws provisions." (*Id.*, § 15 of Terms of Use.)

<u>Privacy Policy</u>

Plaintiffs were also required to accept Prog's Privacy Policy. (Compl. ¶¶ 3, 258; *see also* Ex. A, Stout Decl. ¶¶ 7, 11.) In relevant part, the Privacy Policy attached to the consolidated complaint contains a section titled "How Do We Protect Your Information," which clearly states: "Please note that ***we do not ensure or warrant the security of any Information that we collect***, and you use the Progressive Platforms and our services and provide us with your Information at your own risk." (Emphasis added.) Plaintiffs quote this very language in their consolidated complaint. (Compl. ¶ 3.)[6]

These documents—which Plaintiffs all accepted and agreed to by submitting their lease applications and using Prog's services—set forth the entirety of Prog's contractual obligations concerning Plaintiffs' data. (Ex. A, Stout Decl. ¶¶ 7-11.) Accordingly, Plaintiffs cannot bring a claim for breach of implied contractual promises that are directly addressed by the express provisions in these agreements.

---

[6] A later version of Prog's Privacy Policy similarly states that while Prog takes "various reasonable … measures to protect" user's information, Prog "cannot and do[es] not guarantee complete security, as [complete security] does not exist on the Internet." (Ex. A, Stout Decl. ¶ 11, November 6, 2023 version.)

### ii.  Express Contracts Bar Implied, Quasi-Contract Claims

Under Utah law, a claim for breach of an implied contract is an equitable, or quasi contractual, claim for unjust enrichment or quantum meruit. *See Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987); *Jones v. Mackey Price Thompson & Ostler*, 355 P.3d 1000, 1012 (Utah 2015) ("Contracts implied in law [are] also termed quasi-contracts or unjust enrichment").

It is a basic tenet of contract law, however, that "[r]ecovery in quasi contract is not available where there is an express contract covering the subject matter of the litigation." *Digecor, Inc.*, 2007 WL 185477, at *4. Rather, quasi-contractual recovery "is available only when no enforceable written or oral contract exists." *Id.* (*citing Wood v. Utah Farm Bureau Ins. Co.*, 19 P.3d 392, 396 (Utah Ct. App. 2001)); *see also Davies*, 746 P.2d at 268 ("Recovery under quantum meruit presupposes that no enforceable written or oral contract exists."). "[T]he Utah Supreme Court has stated that … if a legal remedy is available … the law will not imply the equitable remedy of unjust enrichment." *Lysenko v. Sawaya*, 973 P.2d 445, 449 (Utah Ct. App. 1999). Moreover, implied contracts cannot be used as "simply an attempt to vindicate the parties' implicit understanding of the contract." *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1065 (10th Cir. 2019) (citation, quotes omitted).

Given the provisions in Prog's Terms of Use and Privacy Policy listed above that expressly disclaim any "contractually implied" relationships, and liability for "breach[es] of security" or "loss[es] of data," Plaintiffs have no basis to assert implied contract claims–especially implied contractual claims that fall under the very subject matter(s) governed by the parties' express agreements. *See, e.g., Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1095-96 (N.D. Cal. 2022) (dismissing implied contract claim because express "Terms of Service and Privacy Policy … govern the subject matter of Plaintiffs' implied contract claim—scope and purpose of data collection."), *aff'd*, 2024 WL 937247 at *2 (9th Cir. Mar. 5, 2024); *Kuhns v.*

*Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017) (dismissing breach of implied contract claim where plaintiff's brokerage agreement "expressly covered the subject of customer data security.").

### iii. Prog Has Not Been Unjustly Enriched

Even if Plaintiffs could assert implied contract claims, such claims would still fail because Plaintiffs do not plausibly allege how Prog was unjustly enriched by its purported failure to adequately safeguard Plaintiffs' data. *See Davies*, 746 P.2d at 269 (quasi-contract claims are akin to claims for unjust enrichment under Utah law).[7]

Plaintiffs do not allege Prog failed to provide services they paid for, or that Prog's services were defective, or that Prog's services were otherwise impacted by the Incident. (*See generally* Compl.) Plaintiffs do not claim Prog used or sold their data inappropriately. (*Id.*) They do not claim their lease agreements, or leased products themselves, were rescinded or repossessed, or that the incident caused them to pay more than what Plaintiffs originally agreed to. (*Id.*) They are not asking for a refund of any portions of their payments to Prog. (*Id.*) Nor do Plaintiffs allege that any portion of their payments to Prog were specifically for data security or specific preventive measures they now claim were required. (*Id.*)

Instead, as best Prog can tell given the threadbare allegations on this claim (Compl. ¶¶ 257-265), some Plaintiffs (but not all) contend they would not have provided their PII to Prog or would have used another lease provider if they were aware of Prog's allegedly inadequate data security practices. (*See, e.g., Compl.* ¶¶ 127, 147, 151, 165, 177, 189.) Regardless of whether

---

[7] Unjust enrichment under Utah law requires (1) a benefit conferred by one party to another; (2) the conferee's appreciation or knowledge of that benefit by the conferee; and (3) the conferee's retention of that benefit under circumstances where it would be inequitable to not pay fair value for the benefit. *Brumbelow v. L. Offs. of Bennett & Deloney, P.C.*, 372 F. Supp. 2d 615, 622-23 (D. Utah 2005).

such allegations are true, numerous courts have rejected this "would not have shopped" theory and dismissed similar unjust enrichment claims in the data privacy context at the Rule 12 stage.

In *In re SuperValu, Inc., Customer Data Security Breach Litigation*, for example, plaintiff alleged he "conferred financial benefits to SuperValu by paying money for the purchase of goods, and had he known of the data breach he would not have shopped there." 2018 WL 1189327, at *16-17 (D. Minn. Mar. 7, 2018) (unpublished). Rejecting this argument, the court noted plaintiff did not "allege that the goods he purchased were defective or that their value was somehow diminished by the data breach." *Id*. Nor did plaintiff allege the price paid for goods "included an amount that both parties understood would be allocated toward protecting customer data." *Id.* As such, defendant "did not obtain any unjust benefit" as a matter of law. *Id*., *aff'd sub nom. In re Supervalu, Inc.*, 925 F.3d 955, 966 (8th Cir. 2019) ("Because Holmes does not allege that any specific portion of his payment went toward data protection, he has not alleged a benefit conferred in exchange for protection of his personal information nor has he shown how SuperValu's retention of his payment would be inequitable.")

Similarly, in *Gordon v. Chipotle Mexican Grill, Inc.*, another data breach case, the court dismissed a claim for unjust enrichment because "[i]t [was] undisputed that Plaintiffs received the [] services for which they paid … [and] Plaintiffs' contorted 'would not have shopped' theory does not change this elementary analysis[.]" 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018); *see also Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1071-72 (C.D. Ill. 2016) (dismissing claim because plaintiff did not pay a premium for "a side order of data security and protection; it was merely incident to her [] purchase").

In short, Plaintiffs have express agreements with Prog concerning data security, and even if they didn't, they have not alleged how Prog was unjustly enriched by its alleged misconduct.

Plaintiffs' breach of implied contract claims thus fail as a matter of law.

### 2.  Plaintiffs Cannot State a Valid Claim for Negligence (Count I)

Plaintiffs' negligence claims should be dismissed as a matter of law for two reasons.

First, they are barred by the economic loss rule. Plaintiffs have alleged only purely economic and intangible injuries, not damage to themselves physically or their property. Also, the Application Agreements explained above govern the subject matter of Plaintiffs' negligence claims (data security), so Plaintiffs cannot side-step those agreements and recover in tort. Second, Plaintiffs have not adequately alleged any "actual" injuries resulting from Prog's alleged breach of its duty to safeguard their information.

### i.  The Economic Loss Rule Bars Plaintiffs' Negligence Claim

Application of the economic loss rule under Utah law[8] precludes Plaintiffs' recovery under a negligence theory here. "The economic loss rule has two complementary yet distinct applications." *BMF Advance, LLC v. Litiscape, LLC*, 637 F. Supp. 3d 1272, 1286 (D. Utah 2022) (Barlow, J.) "The first application … applies when there is no contract governing the parties … [and] bars recovery of economic losses in negligence actions unless the plaintiff can show physical damage to other property or bodily injury." *Id*. (quotation omitted). The second application "operates to prevent[ ] recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute." *Id*. (quotations omitted); *see also Aclys Int'l v. Equifax*, 438 F. App'x 689, 691 (10th Cir. 2011) ("[T]he economic loss rule prevents parties who have contracted with each other from recovering beyond the bargained-for risks."). Both applications of the economic loss rule bar Plaintiffs' negligence claims.

---

[8] Plaintiffs do not allege which state's law(s) govern their negligence claims. (Compl. ¶¶ 229-256.) Prog reserves the right to supplement or amend its arguments to dismiss Count I depending on which state or states' laws Plaintiffs argue are applicable.

Regarding the first application of the rule, Plaintiffs have alleged only purely economic losses that cannot be recovered through a negligence claim. For example, Plaintiff Boyd claims there have been unauthorized charges on his debit card that were not reimbursed (Compl. ¶ 96), and Plaintiff Robinson claims her bank accounts were frozen and drained (Compl. ¶ 163). Further, all Plaintiffs allege some combination of past and future remediation expenses, lost time, lost opportunity, lost benefit of a bargain, and/or lost value of their PII. (*See, e.g., id.* ¶¶ 19, 253.)

"[A]ll of these are economic damages [excluded by economic loss rule] because they reflect a pecuniary loss rather than a personal injury or damage to property." *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 795 (W.D. Wis. 2019) (rejecting arguments that "lost time; loss in the value of [plaintiffs'] private health information … violation of their privacy rights, attempted and/or actual identity theft and fraud … and being placed at increased risk of identity theft and fraud in the future" were viable non-economic damages under Illinois and Iowa law); *see also*; *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016) (unpublished) (theft of credit card information, costs associated with prevention of identity theft, and costs associated with time spent and loss of productivity "allege[] nothing more than pure economic loss").

 Plaintiffs' allegations of emotional distress caused by the Incident (*e.g.*, Compl. ¶ 254) also do not evade application of the economic loss rule. *See, e.g.*, *Mohsen v. Veridian Credit Union*, -- F. Supp. 3d --, 2024 WL 2080177, at *6 (N.D. Iowa May 9, 2024) ("courts have found that pleading emotional harm does not preclude application of the economic loss rule" because that would "swallow" the rule) (citing cases); *Ramos v. Wells Fargo Bank, N.A.*, 2023 WL 5310540, at *3 (S.D. Cal. Aug. 17, 2023) (unpublished) ("Though Plaintiff claims to have suffered 'emotional distress,' conclusory allegations … are not enough to support a claim for

non-economic damages."); *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 860 (N.D. Ill. 2022) ("emotional injuries … [and other] downstream economic losses" barred by Illinois economic loss rule); *Electra v. Dreamers Cabaret, LLC*, 2019 WL 3238504, at *2 (N.D. Ohio July 18, 2019) (unpublished) (concluding emotional harm, stress, and anxiety did not amount to personal injury or damage to property under Ohio law).

Nor is "diminished value of PII" (Compl. ¶ 19) a non-economic injury to property. Any reduction in alleged value of Plaintiffs' information would necessarily be measured monetarily, as their consolidated complaint suggests. (*See id.* ¶ 72 (alleging monetary value of PII).) Indeed, the court in *Mohsen* recently held that "any diminution of the value of [] PII does not constitute a non-economic property injury." 2024 WL 2080177, at *5; *see also Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 679 (E.D. Pa. 2015) ("[A] number of courts have found that PII lost by a party holding that information was not 'property' … for the purposes of the law of bailment."), *aff'd* 739 F. App'x 91 (3d Cir. 2018). Plaintiffs thus seek purely economic losses, which cannot be recovered in negligence under the first application of the economic loss rule.

Further, regarding the second application of the economic loss rule, Plaintiffs have express agreements with Prog that covers the subject matter (data privacy) of their negligence claim. This too bars the claim as a matter of law. *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 197 (Utah 2018) ("when [the] conflict [that] arises between parties to a contract [is] regarding the subject matter of that contract … the contractual relationship controls, and parties are not permitted to assert actions in tort.") (internal quotes omitted).

As explained in Part IV(B)(1) above, by using Prog's services, Plaintiffs accepted the Terms of Use and Privacy Policy which contain provisions on Prog's obligations and liabilities with respect to security of Plaintiffs' PII. The Terms of Use are applicable to "any use" of the

"Progressive Platforms" and contain several limitations of liability with respect to a "breach of security," "use of data," "loss of data," or "loss of or damage to property[.]" (*See* Part IV(B)(1), *supra*.) Similarly, the Privacy Policy "describes how [Prog] … collect[s], use[s], disclose[s] user … information" such as the user's "name, address, telephone number, email address, social security number, and bank account or other financial institution account number." (Ex. A, Stout Decl. ¶ 11.) The Privacy Policy also contains a standalone provision, which Plaintiffs' quote in their complaint, on how Prog protects user information. (Compl. ¶ 3.) This section states that Prog maintains "administrative, technical, and physical safeguards intended to protect against the loss, misuse, unauthorized access, and disclosure of Information" but that ultimately it is "impossible for [Prog] to guarantee the safety and security of your Information." Prog thus disclosed to Plaintiffs in its Privacy Policy that it did "not ensure or warrant the security of any Information that we collect, and you use the Progressive Platforms and our services and provide us with your Information at your own risk." (*Id*.)

These agreements preclude Plaintiffs efforts to "seek a remedy in tort" that "skirt[s] the provisions of the [parties'] governing agreement[s.]" *BMF Advance*, 637 F. Supp. 3d at 1287. Plaintiffs were presented with, and accepted, these agreements when they chose to submit a lease application with Prog and use its services. (Ex. A, Stout Decl. ¶¶ 6-7.) The economic loss rule thus requires Plaintiffs to seek remedy against Prog pursuant to these agreements — not in negligence based on other alleged duties, obligations, or bases of liability the parties did not agree to originally. *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1083-85 (D. Colo. 2018) (dismissing negligence claims in data breach case where "the parties' relationship [arose] out of a network of contracts" that contained provisions on data security, and "thus [were] barred by the economic loss doctrine."); *see also Hope Int'l Hospice,*

*Inc. v. Net Health Sys., Inc.*, 2023 WL 2433642, at *3 (D. Utah Mar. 9, 2023) (Barlow, J.)

(unpublished) (dismissing gross negligence claim per economic loss rule because the parties'

agreement "contemplated [the] alleged duties" plaintiff sought to impose in tort); *Aclys Int'l.*,

438 F. App'x at 692 (affirming dismissal of negligence claims seeking "purely economic

damages [that] arose from a series of contractual relationships"; applying Utah law). Indeed, the

economic loss rule is particularly applicable where, like here, plaintiffs "seek a remedy in tort in

order to evade [] contractual limitations on recovery"). *BMF Advance*, 637 F. Supp. 3d at 1287;

*see also HealthBanc Int'l*, 435 P.3d at 198 (rule is designed to prevent "importing tort remedies

into the [parties'] deal").

      Cognizant of these shortcomings, Plaintiffs make a single conclusory allegation that Prog

has an "independent duty untethered to any contract." (Compl. ¶ 236.) Courts do recognize an

exception to the economic loss rule where there is an independent duty of care separate from

"any contractual obligations between the parties." *BMF Advance*, 637 F. Supp. 3d at 1287. But

Plaintiffs do not allege or identify what that purported "independent duty" is, where it arises

from, or why it is "independent" of Prog's duties under the Terms of Use and Privacy Policy.

Plaintiffs' sole legal conclusion to try and plead around the economic loss rule therefore does not

save their negligence claim. *Twombly*, 550 U.S. at 555 ("courts are not bound to accept as true a

legal conclusion couched as a factual allegation"); *Gibbons v. Hidden Meadow, LLC*, 524 F.

App'x 451, 453 (10th Cir. 2013) (affirming dismissal pursuant to economic loss rule where

plaintiff "point[ed] to no independent source of duty" beyond the contract).

### ii.  Plaintiffs Have Not Alleged Actual Damages

      Even if the economic loss rule did not apply here, Plaintiffs' negligence claim (Count I)

would still fail as a matter of law because they haven't pleaded actual damages. Damages in the

form of actual losses are an essential element of Plaintiffs' negligence claim. "[T]he law does not

recognize an inchoate wrong, and therefore, until there is actual loss or damage…, a claim for negligence is not actionable." *Seale v. Gowans*, 923 P.2d 1361, 1364 (Utah 1996) (quotations omitted); *see also Billy v. Edge Homes*, 2020 WL 2572522, at *4 (D. Utah May 21, 2020) (unpublished) (elements of negligence claim require "actual injuries or damages").

The standard for "alleging actual damages is generally higher than that for plausibly alleging injury in fact." *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 13 (D.D.C. 2019). Thus, even if the Court finds Plaintiffs have established an injury-in-fact for Article III standing purposes (which they have not, *see* Part IV(A)(1)-(2), *supra*), that does "not [automatically] establish that they adequately pled damages for purposes of their state-law claims." *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (citing *Doe v. Chao*, 540 U.S. 614, 624-25 (2004) (an individual may have sufficient injury "to open the courthouse door, but without more has no cause of action for damages")); *Debernardis v. IQ Formulations*, *LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) (courts should not "conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action [because] the concepts are not coextensive").

Plaintiffs' alleged losses here (*e.g.*, increased risk of future fraud, lost time/opportunity, diminution in value of personal information) are not "actual" injuries. Indeed, many courts in the data breach context have held that "general allegations of lost time, continued risk to [plaintiff's] personal data, and the danger of future harm are not cognizable injuries." *Griffey*, 562 F. Supp. 3d at 45 (quotations omitted); *see also Quinalty v. FocusIT LLC*, 2024 WL 342454, at *4 (D. Ariz. Jan. 30, 2024) (unpublished) (dismissing negligence claim because allegations of "lost time" and "diminished PII value" were "insufficient to establish damages."); *Everhart v. Colonial Pipeline Co.*, 2022 WL 3699967, at *2 (N.D. Ga. July 22, 2022) (unpublished) (dismissing negligence claim because diminished value of PII, increased risk of future identity

theft, mitigation expenses, and lost opportunity costs were insufficient damages as matter of Georgia law)  (citing cases); *Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) (unpublished) ("future harm or an increased risk in harm that has not yet occurred" and "general allegations of lost time are too speculative to constitute cognizable injury.")

Nor is it an actual injury for Plaintiffs to allege they would not have used Prog's services or not provided their PII had they known Prog's systems would later be unlawfully accessed. *See, e.g., Blahous v. Sarrell Reg'l Dental Ctr. for Pub. Health, Inc.,* 2020 WL 4016246, at *7 n.11 (M.D. Ala. July 16, 2020) (unpublished) ("Plaintiffs' claim that they suffered money damages because they paid for [defendant's] services … but would not have done so had they known that [defendant] would get hacked later on, is pure applesauce."); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) (rejecting overpayment theory in standing context where there were "no factual allegations demonstrating that the Parties mutually agreed that any portion of the sums paid from Plaintiffs to Defendants would be allocated to data security").

Further, simply alleging potential instances of misuse of PII after the Incident, without more, does not sufficiently plead a recoverable injury. *Galaria v. Nationwide Mut. Ins. Co.*, 2017 WL 4987663, at *7 (S.D. Ohio Aug. 16, 2017) (unpublished) (dismissing data breach negligence claim where "[a]t best, Plaintiffs have alleged nothing more than time and sequence.");. *Iqbal*, 556 U.S. at 678 ("[A] complaint that pleads facts that are merely consistent with a defendant's liability … stops short of the line between possibility and plausibility of entitlement to relief.") (quotations omitted). This is especially true in data breach contexts because individuals' "[i]nformation is [already] widely available on the internet" and could also be implicated by

other cyber incidents. *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1231 (N.D. Cal. 2022).

These myriad pleading deficiencies also require dismissal of Plaintiffs' negligence claims (Count I).

### 3. Plaintiff Davis's CCPA Claim Fails Because She Did Not Provide the Requisite Pre-Suit Notice and Has No Actual Damages

Plaintiff Dawn Davis's claim for violation of the CCPA must be dismissed because she never provided Prog with written notice of her alleged claims before filing suit, as is required by Cal. Civ. Code § 1798.150(b) when seeking statutory damages. She also has not alleged any "actual" damages recoverable under the CCPA.

### i. Ms. Davis Did Not Provide the Requisite Pre-Suit Notice

The CCPA, § 1798.150(a), provides a right of action for consumers whose "nonencrypted and nonredacted personal information … is subject to an unauthorized access and exfiltration, theft, or disclosure" as a result of certain businesses' "violation of the duty to implement and maintain reasonable security procedures[.]" However, § 1798.150(b) unambiguously sets forth a written notice requirement that must be followed *before* filing claims for statutory damages. In relevant part, § 1798.150(b) states:

> Actions pursuant to this section may be brought by a consumer if, ***prior to initiating any action*** against a business ***for statutory damages*** on an individual or class-wide basis, a consumer provides a business ***30 days' written notice*** identifying the specific provisions of this title the consumer alleges have been or are being violated.

(Emphasis added.)*.* The reason for this pre-suit requirement is to provide the business with reasonable opportunity to cure the alleged violation, and if they do so within 30 days, "no action for individual statutory damages or class-wide statutory damages may be initiated against the business." *Id.*

Courts considering whether a plaintiff has complied with § 1798.150(b) routinely uphold the plain text, and rationale, of the statute. For example, in *Griffey v. Magellan Health Inc.*, the court dismissed plaintiff's § 1798.150(a) claim with prejudice when he "failed to satisfy the 30-day notice requirement." 2022 WL 1811165, at *6 (D. Ariz. June 2, 2022) (unpublished). *See also In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *6 (S.D.N.Y. Feb. 24, 2022) (unpublished) (CCPA violation dismissed because the complaint "contains no allegations regarding any notice of cure from [the defendant]"); *In re Canon U.S.A. Data Breach Litig.*, 2022 WL 22248656, at *13 (E.D.N.Y. Mar. 15, 2022) (unpublished) (same; also dismissing claim because plaintiff did not "plausibly allege that Canon failed to cure its violations of the CCPA.").

Here, Plaintiff Davis seeks statutory damages for Prog's alleged violation of section 1798.150(a). (Compl. ¶ 283 and Prayer for Relief "E") But she never provided Prog with any advance notice of, or 30-day opportunity to cure, her alleged violations before filing suit. (Ex. A, Stout Decl. ¶ 16.) This failure is dispositive of her CCPA claim for statutory damages. *Griffey*, 2022 WL 1811165, at *6.

To be sure, Ms. Davis does allege that she provided the requisite notice to Prog on November 13, 2023 (*see* Compl. ¶ 283), but that assertion is false. In reality, November 13, 2023 is the day Ms. Davis filed her original complaint against Prog in the Central District of California, before her claims were consolidated into this action. (*See* **Exhibit B**.) She gave no notice or opportunity to cure before filing suit on that date.

The Court should not be misled by this sleight of hand. Accepting that a complaint itself can satisfy § 1798.150(b) would mean reading out entirely, and rendering meaningless, the statute's plain language that requires notices to be provided "prior to

initiating any action[.]" That is why the court in *Griffey* rejected this very argument. 2022 WL 1811165, at *6. Reasoning that the CCPA's pre-suit notice requirement is designed to provide would-be defendants a chance to cure any defects "outside of court," the *Griffey* court correctly held that if an amended pleading could "satisfy the 30-day notice requirement, then having the pre-suit notice requirement would be pointless." *Id.* The exact same reasoning applies here.[9]

### ii. Ms. Davis Has No Actual Damages

To the extent Ms. Davis argues her CCPA claim can proceed because she also seeks actual damages, which carry no pre-suit notice requirement under § 1798.150(b), she is wrong again. "Actual" damages under the CCPA means "pecuniary," or monetary losses. *See* § 1798.150(b); *see also DeLisi v. Lam*, 39 Cal. App. 5th 663, 681 (2019) ("actual damages is a term synonymous with compensatory damages"). Actual damages under California law are distinguished from damages "which are nominal rather than substantial, exemplary or punitive rather than compensatory, and speculative rather than existing or certain." *Id.* (citing authority).

Ms. Davis does not allege any "actual" monetary losses incurred because of Prog's alleged violation of the CCPA. Instead, she alleges injuries such as "lost time and opportunity … increased risk to her PII … an increase in spam calls … [and] fear, anxiety, and stress[.]" (Compl. ¶¶ 121-124.) But nowhere does she allege paying any out-of-pocket expenses. (*See generally* Compl. ¶¶ 116-128, 275-283.) She therefore has no

---

[9] Even if Ms. Davis had complied with § 1798.150(b), her bare and unsupported allegation that Prog "has failed to cure [its] breach" – without any allegations or how or why it failed to cure – is plainly insufficient to state a viable claim. *In re Canon*, 2022 WL 22248656, at *13 (dismissing CCPA claim, in part, because plaintiff did not "plausibly allege that Canon failed to cure its violations"); *see also Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do[.]").

claim for "actual" damages under the statute. *See, e.g.*, *Griffey*, 562 F. Supp. 3d at 57-58 (dismissing CCPA claim and finding plaintiff did not "present any 'actual pecuniary damages'" because he "allege[d] no out-of-pocket expenses."); *Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1026 (C.D. Cal. 2020) ("conclusory and vague allegations" and "bare allegations of increased risk of identity theft [are] too speculative to satisfy the pleading requirement to show actual damages.") (internal quotes omitted). As such, Ms. Davis's CCPA claim (Count IV) should be dismissed.

### 4. Plaintiffs' Do Not Have an Independent Claim for Declaratory Judgement Relief (Count III)

Plaintiffs' remaining claims under the Declaratory Judgement Act, 28 U.S.C. § 2201 *et seq*. ("DJA"), should also be dismissed for three reasons. First, Plaintiffs' request for declaratory relief is merely duplicative of its other claims. They ask the Court to declare that Prog "owes a legal duty to secure" Plaintiffs' PII, that Prog is in breach of this duty by "failing to employ reasonable measures to secure" their information, and that failure has caused harm to Plaintiffs. (Compl. ¶ 270) Yet these are the very issues at the heart of Plaintiffs' other three claims — i.e., what duties (if any) Prog owed, whether those duties were breached, and, if so, whether Prog's breach injured Plaintiffs.

There is no reason for the Court to consider duplicative claims for declaratory relief. *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 824 (D. Md. 2015) ("When declaratory relief would be duplicative of claims already alleged, dismissal is warranted."); *Scott v. Conley*, 2016 WL 4257507, at *8 (D. Utah July 18, 2016) (unpublished) ("When a declaratory judgment is duplicative of the substantive claims, it should be dismissed."); *Warnick v. Briggs*, 2005 WL 1566669, at *9 (D. Utah July 1, 2005) (unpublished) (dismissing declaratory judgment claim as "duplicative and

unnecessary" because "Plaintiffs' claims will be determined in due course by the appropriate fact finder according to applicable law").

Indeed, in *Burger v. Healthcare Management Solutions LLC*, another data breach class action, plaintiff's separate claim for "forward looking" injunctive relief under the DJA was dismissed because it "serve[d] no purpose other than to reiterate the injunctive relief requested in [plaintiff's] other counts, as it [was] based on the same alleged breach of duty and harm[.]" 2024 WL 473735, at *9 (D. Md. Feb. 7, 2024) (unpublished). As the Burger court explained, "[t]his type of double pleading is not the purpose of a declaratory judgment." *Id*. (citing cases). The same is true here.

Second, Plaintiffs claim declaratory relief is warranted so the Court can issue prospective injunctive relief requiring [Prog] to employ adequate security protocols … to protect consumers' PII." (Compl. ¶ 271.) But as explained above in Part IV(A) with regard to Article III standing, Plaintiffs may "pursue forward-looking, injunctive relief to prevent [perceived future] harm from occurring" only if "the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. Prog has already explained above why Plaintiffs' "increased risk of fraud" claims, or fears of future harm, have no merit. (*See* Part IV(A), *supra*.) Further, Plaintiffs offer no plausible facts, other than their own say-so, that "another [data] breach" of Prog's system is "real, immediate, and substantial." (Compl. ¶ 272.) *See Twombly*, 550 U.S. at 555 ("courts are not bound to accept as true a legal conclusion couched as a factual allegation[.]") (quotes omitted). Thus, the "imminent and substantial" requirement is not satisfied here.

Finally, the DJA is procedural only*, Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950), and "does not provide an independent federal cause of action."

*Nero v. Oklahoma*, 2022 WL 14423872, at *2 (10th Cir. Oct. 25, 2022) (unreported).

"[A] declaratory judgement is a remedy" not a separate claim. *Utah Hous. Corp. v. Country Pines, Ltd.*, 541 F. Supp. 3d 1288, 1296 n.1 (D. Utah 2021) (citing cases).

Prog has explained above why Plaintiffs' other causes of action fail as a matter of law. Accordingly, their claims under the Declaratory Judgement Act must too be dismissed. *Nero*, 2022 WL 14423872, at *2 ("To maintain an action for a declaratory judgment [plaintiff] must assert a valid federal cause of action—one that exists independent of any request for declaratory relief.").

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Consolidated Complaint (Dkt. #39) should be dismissed in its entirety with prejudice.


Dated:  June 24, 2024                              Respectfully submitted,


                                                   */s/ Lisa M. Ghannoum*_____
                                                   Lisa M. Ghannoum (*pro hac vice*)
                                                   Cory N. Barnes (*pro hac vice*)
                                                   **BAKER & HOSTETLER LLP**
                                                   127 Public Square, Ste. 2000
                                                   Cleveland, OH 44114
                                                   Telephone: (216) 861-7872
                                                   *lghannoum@bakerlaw.com*

                                                   Jason D. Boren (#7816)
                                                   BALLARD SPAHR LLP
                                                   One Utah Center, Suite 800
                                                   201 South Main Street
                                                   Salt Lake City, Utah 84111-2221
                                                   Telephone: (801) 531-3000
                                                   Facsimile: (801) 531-3001
                                                   borenj@ballardspahr.co

                                                   *Counsel for Defendant PROG Leasing, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct of copy of the foregoing was served via the following this 24th day of June 2024, in the manner set forth below:

[ X ] Through the CM/ECF System for the U.S. District Court

[  ] Hand Delivery

[  ] U.S. Mail, postage prepaid

[  ] E-mail:

<u>*/s/ Lisa M. Ghannoum*</u>
*Counsel for Defendant PROG Leasing, LLC*