_____

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH
_____

| | |
|---|---|
| *In re Progressive Leasing Breach Litigation* | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>**Case No.: 2:23-cv-00783**<br><br>**District Judge David Barlow**<br>**Magistrate Judge Cecilia M. Romero** |

**Table of Contents**

I.    INTRODUCTION ..................................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................................3

III.  THE SETTLEMENT AGREEMENT ................................................................................4

  A.    DEFINITION OF THE CLASS ..................................................................................4

  B.    SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS ...........5

    1.    Cash Payments ....................................................................................................5

      a.    Documented Losses ....................................................................................5

      b.    California Statutory Payment......................................................................6

      c.    Cash Payment.............................................................................................6

    2.    Identity Theft Protection and Credit Monitoring ................................................7

    3.    Settlement Administration ...................................................................................7

      a.    Notice.........................................................................................................8

      b.    Exclusion and Objection .........................................................................10

      c.    Distribution of Benefits...........................................................................12

    4.    Attorney's Fees, Expenses, and Service Awards...............................................13

IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........14

  A.    STANDARDS FOR PRELIMINARY APPROVAL...................................................14

    1.    THE *JONES* FACTORS AND RULE 23(e) FACTORS ARE SATISFIED .............16

      a.    *Jones* Factor 1 and Rule 23(e)(2)(A–B): The Settlement was Fairly and Honestly Negotiated at Arm's Length ..............................................................................................16

      b.    *Jones* Factor 2: Serious Questions of Law and Fact Create Sufficient Uncertainty in the Outcome of this Litigation ...............................................................................18

      c.    *Jones* Factor 3 and Rule 23(e)(2)(C)(i): The Settlement Provides Exceptional Immediate Relief to the Class, Outweighing the Mere Possibility of Future Relief through Protracted and Extremely Costly Litigation ................................................................................19

      d.    *Jones* Factor 4 and Rule 23(e)(2)(C)(iii): The Parties and their Counsel Believe the Settlement and the Proposed Award of Attorney's Fees is Fair and Reasonable............20

      e.    Rule 23(e)(2)(D): Class Members are Treated Equitably Under the Settlement ...................21

      f.    Rule 23(e)(2)(C)(ii): The Proposed Method is Effective for Distributing Relief.................22

      g.    Rule 23(e)(2)(C)(iv): There are No Agreements Required to be Identified .........................23

V.    THE COURT SHOULD PRELIMINARILY GRANT CLASS CERTIFICATION....................23

  A.    THE RULE 23(a) FACTORS ARE MET.................................................................23

    1.    The Settlement Class is So Numerous that Joinder is Impracticable.................23

    2.    Plaintiffs' Claims and Defenses are Typical of the Settlement Class.................24

    3.    Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Class ...........................25

B.   THE SETTLEMENT CLASS SATISFIES RULE 23(b)(3)............................................................26

   1.   Common Questions Predominate.....................................................................................26

   2.   A Class Action is the Superior Method for Adjudication.............................................27

VI.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM ..........................27

VII.   CONCLUSION......................................................................................................................29

## Table of Authorities

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................................... 23, 25, 26

*Amoco Prod. Co. v. Fed. Power Comm'n*,
465 F.2d 1350–55 (10th Cir. 1972) .................................................................................... 14

*Ashley v. Reg'l Transp. Dist.*,
2008 WL 384579 (D. Colo. Feb. 11, 2008) ........................................................................ 16

*CGC Holding Co., LLC v. Hutchens*,
773 F.3d 1076 (10th Cir. 2014) .......................................................................................... 27

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,
888 F.3d 455 (10th Cir. 2017) ............................................................................................ 21

*Circle v. Jim Walter Homes, Inc.*,
535 F.2d 583 (10th Cir. 1976) (finding class with 358 members to sufficiently numerous) ... 23

*Desktop Direct, Inc. v. Digital Equip. Corp.*,
993 F.2d 755 (10th Cir. 1993) ............................................................................................ 14

*DG v. Devaughn*,
594 F.3d 1188 (10th Cir. 2010) .......................................................................................... 24

*Hammond v. The Bank of N.Y. Mellon Corp.*,
2010 WL 2643307 (S.D.N.Y. June 25, 2010) ..................................................................... 18

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
271 F. App'x. 41 (2d Cir. 2008) .......................................................................................... 28

*In re Crocs, Inc. Sec. Litig.*,
No. 07-cv-02351-PAB-KLM, 2013 WL 4547404 (D. Colo. Aug. 28, 2013) ........................ 15

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
286 F.R.D. 488 (D. Kan. 2012) .......................................................................................... 15

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
625 F. Supp. 2d 1133 (D. Colo. 2009) .......................................................................... 18, 19

*Jones v. Nuclear Pharmacy, Inc.*,
741 F.2d 322 (10th Cir. 1984) ...................................................................................... 14, 16

*Lucas v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006) ............................................................................. 17, 19, 20

*Oppenlander v. Standard Oil Co.*
(Indiana), 64 F.R.D. 597 (D. Colo. 1974) .......................................................................... 20

*Pliego v. Los Arcos Mexican Restaurants, Inc.,*
    313 F.R.D. 117 (D. Colo. 2016) ...........................................................................25

*Rex v. Owens ex rel. State of*
    Okl., 585 F.2d 432 (10th Cir. 1978) ....................................................................23

*Rhodes v. Olson Assocs., P.C.,*
    308 F.R.D. 664 (D. Colo. 2015) ............................................................16, 17, 20

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948–59 (9th Cir. 2009) .........................................................................21

*Rosenfeld v. Lenich,*
    No. 18-CV-6720-NGGPK, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ..............22

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
    314 F.3d 1180 (10th Cir. 2002) ...........................................................................14

*Settlement. Marcus v. State of Kansas, Dep't of Revenue,*
    209 F. Supp. 2d 1179 (D. Kan. 2002) .................................................................20

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ............................................................................................28

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .................................................................................23, 24, 25

**Statutes**

Cal. Civ. Code § 1798.150 et seq. ..........................................................................2, 3

**Other**

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ...........................................4

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
    100 F.3d 1041 (1st Cir. 1996) .............................................................................16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,*
    293 F.R.D. 21 (D. Me. 2013) ..............................................................................18

Fed. R. Civ. P 23 ..............................................................................................16, 23

Rule 23 .........................................................14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28

Plaintiffs Raymond Dreger, Chad Boyd, Ralph Maddox, Dawn Davis, Richard Guzman, Tyler Whitmore, Melanie Williams, Laura Robinson, Allison Ryan, Marty Alexander, and Stephen Hawes, individually, and on behalf of the Settlement Class,[1] hereby respectfully submit this Unopposed Motion for Preliminary Approval of Settlement and Memorandum of Law in Support and request the Court preliminarily approve the Settlement, provisionally certify the Settlement Class, appoint Plaintiffs as Class Representatives, appoint Daniel Srourian of Srourian Law Firm, P.C. and Tyler J. Bean of Siri & Glimstad LLP, approve the Notice Program, and order Notice to the Settlement Class as soon as practicable.

## I.   **INTRODUCTION**

On or about September 21, 2023, Prog Leasing, LLC ("Prog" or "Defendant") disclosed that it was the victim of a cyberattack. The attack involved systems that contained information about certain customers and other individuals. The cyberattack was effectuated by the international organized crime group commonly known as "BlackCat" or "ALPHV." On or about October 23, 2023, pursuant to applicable law, Prog began notifying individuals, including Plaintiffs and Settlement Class Members, that their Private Information was involved in the Data Incident. Lawsuits were subsequently filed against Prog in the United States District Court for the District of Utah and the Central District of California.

Thereafter, all related actions were transferred and/or consolidated into one case before Judge David Barlow in the United States District Court for the District of Utah, styled *In re Progressive Leasing Breach Litigation*, Case No. 2:23-cv-00783. [ECF Nos. 22, 34.] Plaintiffs filed their Consolidated Class Action Complaint against Prog on April 19, 2024, alleging causes

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement (also referred to as "Agreement") attached hereto as Exhibit 1 (with its respective exhibits 1–6). All citations to the Settlement Agreement will be abbreviated as "SA, § ___."

1

of action for negligence, breach of implied contract, declaratory judgment, and violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150 *et seq*. [ECF No. 39.] On January 16, 2025, the Court dismissed Count II (Breach of Implied Contract) and Count III (Declaratory Judgement) and held that Plaintiffs do not have standing to seek injunctive relief. [ECF No. 69.] Prog denies the allegations in the Consolidated Class Action Complaint and denies that Plaintiffs are entitled to any of the relief sought therein.

After over a year of hard-fought litigation, the Parties have agreed to a Settlement that provides substantial monetary and other benefits to the Settlement Class. Specifically, the Settlement provides monetary relief that will reimburse documented out-of-pocket losses of up to $5,000 per Settlement Class Member who incurred expenses fairly traceable to the Data Incident, including: (i) costs incurred on or after September 11, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (ii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges that were more than likely caused by the Data Incident. (SA, § 90.) In addition, all Settlement Class Members are eligible to receive 24 months of credit monitoring and identity theft protection, with $1,000,000 in reimbursement insurance. (SA, §91._ Further, in addition to, or in the alternative to, making a Claim for Documented Losses and Credit Monitoring, Settlement Class Members who resided in California at the time of the Data Incident may elect to receive a California Statutory Payment of up to $100 on a claims-made basis. And finally, in the alternative to making Claims for Documented Losses and/or Claims for a California Statutory Payment, Settlement Class Members may elect to receive a Cash Payment of up to $400.00 on a claims-made basis.

The Settlement Fund will also pay for attorneys' fees, costs, and expenses that may be awarded by the Court as well as Service Awards to the Class Representatives (SA, § 131), as well as for the cost of notice to the Settlement Class and the costs of settlement administration. As detailed below, the Settlement falls within the range of final judicial approval and includes a comprehensive Notice Program. Prog does not oppose the relief requested in this motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Prog is a Utah company that provides nationwide lease-to-own services. According to the notice letters Defendant sent to Plaintiffs and the Settlement Class, Prog learned on or about September 11, 2023, that it was the victim of a cyber-attack in which cybercriminals gained access to Defendant's network that contained Private Information of Plaintiffs and Settlement Class Members. On October 23, 2023, Prog began to send notice letters to the potentially impacted individuals.

Each Plaintiff filed a class action lawsuit against Defendant, asserting claims for relief emanating from the Data Incident. These class action lawsuits were consolidated before this Court (ECF Nos. 24, 34) under *In re Progressive Leasing Breach Litigation, Case No. 2:23-cv-00783.*[2]

On April 19, 2024, the Consolidated Class Action Complaint ("Consol. Compl.") (ECF No. 39) was filed. Plaintiffs alleged causes of action against Prog for negligence, breach of implied contract, declaratory judgment, and violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150 et seq.  (*See generally* Consol. Compl.) Plaintiffs and the putative class also sought monetary and equitable relief. *Id.*

---

[2] *Cases consolidated under In re Progressive Leasing Breach Litigation, Case No. 2:23-cv-00783 include Raymond Dreger v. Progressive Leasing LLC; Case No. 2:23-cv-00783; Jodi Bell v. Progressive Leasing, Case No. 2:23-cv-00787; Tyler Whitmore v. Progressive Leasing, LLC; Case No. 2:23- cv-00792; Ralph Maddox v. Prog Leasing LLC; Case No.: 2:23-cv-00797; Nazia Pierce v. Progressive Leasing; Case No. 2:23-cv-00799; Chad Boyd v. Prog Leasing LLC, Case No. 2-23- cv-00800; Richard Guzman v. Prog Leasing, LLC, Case No. 2:23-cv-00813; Stephen Hawes v. Progressive Leasing, et al.; Case No. 2:23-cv-00821; Alexander v. Progressive Leasing, LLC, Case No. 2:23-cv-00823; Williams et al., v. Prog Leasing, LLC, Case No. 2-23-cv-00837; Dawn Davis v. Prog Leasing LLC, Case No. 2:24−cv−00134*

Thereafter, Prog filed a motion to dismiss the Consolidated Class Action its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [ECF No. 56.] On January 16, 2025, the Court issued a Memorandum Decision and Order granting in part and denying in part Prog's motion to dismiss. [ECF No. 69.] The Court dismissed Plaintiffs' causes of action for breach of implied contract (Count II) and declaratory judgment (Count III). The Court also found that Plaintiffs did not have standing to seek injunctive relief. [*Id*.]

After the Court's order on Prog's motion to dismiss, the Parties agreed to engage in voluntary settlement negotiations. After months of arm's-length negotiations between competent and experienced counsel, including the exchange of informal discovery, the Parties attended a mediation with Honorable Michael N. Ungar on June 30, 2025. During the mediation, the Parties reached an agreement as to the material terms of the settlement. The Parties continued to work diligently over the next month, exchanging multiple calls and emails to finalize the Settlement Agreement. Plaintiffs now seek preliminary approval of that Agreement.

Plaintiffs and proposed Class Counsel believe, in consideration of all circumstances and after serious arm's-length settlement negotiations with Prog, which included a full-day mediation, that the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members.

### III.   THE SETTLEMENT AGREEMENT

#### A.  DEFINITION OF THE CLASS

The Parties contemplate certification (for settlement purposes only) of a nationwide class. The proposed Settlement Class is defined as follows:

> All living individuals residing in the United States who were sent a Notice of Data Incident from Prog indicating their Private Information may have been involved in the Data Incident.

The proposed California Subclass is defined as follows:

> "California Subclass" meaning all living individuals in the United States who were sent a Notice of Data Incident and are verified to have resided in the State of California on September 11, 2023.

(SA, § 75.) The Settlement Class specifically excludes: (1) Prog, and any entity in which Prog has a controlling interest, and Prog's parents, successors, subsidiaries, affiliates; and assigns; (2) any judge, justice, or judicial officer presiding over this Action, and the members of their immediate families and judicial staff; (3) any persons who have released claims relating to the Action; and (4) all Settlement Class Members who submit a valid Request for Exclusion prior to the close of the Opt-Out Period. (SA, § 75.)

## B. SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS

### 1. Cash Payments

#### a. Documented Losses

Under the Settlement, Settlement Class Members will be reimbursed ordinary out-of-pocket expenses that are fairly traceable to the Data Incident up to $5000 per Class Member. (SA, § 37, 90). To receive payment, Settlement Class Members may submit a claim for reimbursement upon presentment of reasonable Documented Losses arising from the Data Incident. Documented Losses are unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident including, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other misuse of Class Member's Private Information; (ii) costs incurred on or after September 11, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. (SA,

§ 90.)

b.  California Statutory Payment

In addition to, or in the alternative to, making Claims for Documented Losses, Settlement Class Members who resided in California at the time of the Data Incident may elect to receive a statutory cash payment of up to $100 on a claims-made basis ("California Statutory Payment").

      i.  Claimants of the California Statutory Payments must provide documentation of their residence in California on September 11, 2023. Documentation of residence in California on September 11, 2023, includes, but is not limited to, utility bills, tax documents, and pay stubs from September 2023 that reflect the Claimant's name and valid California address.

      ii.  If the aggregate amount of approved Claims for a California Statutory Payment exceeds the remaining amount of the Settlement Fund after payment for approved Claims for Documented Loses,  Credit Monitoring services, Settlement Administration Costs, Service Award payments approved by the Court, and Fee Award and Costs awarded by the Court, approved Claims for a California Statutory Payment will be decreased *pro rata* to consume the remaining amount of the Settlement Fund.

c.  Cash Payment

In the alternative to making Claims for Documented Losses and/or Claims for a California Statutory Payment, Settlement Class Members may elect to receive a Cash Payment of up to $400 on a claims-made basis. The amount of the payment will be calculated by dividing the funds remaining in the Settlement Fund after payment of approved Claims for Documented Losses, approved claims for Credit Monitoring services, approved Claims for a California Statutory

Payment, Settlement Administration Costs, Service Award payments approved by the Court, and Fee Award and Costs awarded by the Court by the number of Settlement Class Members with a Valid Claim, and thus could be less than $400. The notice and claim forms will include the $400 cap on Residual Cash Payment. Class Counsel may select the font, size, and emphasis for the $400 cap on the Residual Cash Payment and their placement within the notice and claim forms, subject to approval from Prog's counsel, which shall not be unreasonably withheld. (SA, § 93.)

### 2. Identity Theft Protection and Credit Monitoring

All Settlement Class Members who submit a Valid Claim are eligible to receive two years of three-bureau Credit Monitoring services. Credit Monitoring services will be provided by IDX and will include 24-month, 3-bureau credit monitoring with Credit Monitoring & Alerts, CyberScan Dark Web Monitoring, $1M Reimbursement Insurance, Fully Managed Identity Restoration, Member Advisory Services, Lost Wallet Assistance, and immediate support to class members who elect Credit Monitoring services. SA, § 91.

### 3. Settlement Administration

The Parties have chosen a third-party Settlement Administrator, CPT Group, to provide notice of the settlement to the Settlement Class and otherwise administer the settlement in accordance with the Settlement Agreement. (SA, § 96-98.) The Settlement Administrator's costs will be paid from the Settlement Fund. (SA, § 74.)

The Settlement Administrator will administer the Settlement and will review Class Members' claims pursuant to the terms set forth in Section VII of the Settlement Agreement. The Parties, Class Counsel, Prog's Counsel, and Prog's insurers and reinsurers shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration

of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses SA, § 120. In the event a dispute arises over the validity of a claim, Settlement Class Members will be entitled to submit their claim to the Settlement Administrator. SA, § 82.

### a. Notice

The Notice Program is straightforward and structured to satisfy due process. Prog will provide the Settlement Administrator with the Class List no later than 10 days after entry of the Preliminary Approval Order. To the extent necessary, Prog will cooperate with updating the Class List to accomplish the Notice Program and otherwise administer the Settlement. SA, § 99. Then, following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein, using the forms of Notice approved by the Court. Where physical addresses have been provided for Settlement Class members, Postcard Notices shall be sent, with an attached "tear-off" Claim Form with prepaid postage for those who wish to make claims that do not require documentation, *e.g.*, Claims for Credit Monitoring and a Cash Payment. The Claim Form will be substantially in the form of Exhibit 4 attached to the Settlement Agreement. Where email addresses have been provided for Settlement Class Members, Email Notice shall also be sent, in addition to the Postcard Notice. *Id*. § 100.

The Email Notice and Postcard Notice shall include, among other information: (a) a description of the material terms of the Settlement; (b) identification of the applicable settlement subclass(es) and applicable Released Parties for each Settlement Class Member; (c) how to submit

a Claim Form; (d) the Claim Form Deadline; (e) the last day of the Opt-Out Period for Settlement Class Members to opt-out of the Settlement Class; (f) the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs; (g) the Final Approval Hearing date; and (h) the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. The Settlement Administrator shall insert the correct dates and deadlines in the Notices before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claim Form that can be submitted online directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator. (SA § 99-102.)

The Settlement Administrator shall perform reasonable address traces for those Email Notices or Postcard Notices returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. To the extent better addresses are found, the Settlement Administrator should attempt to remail the Postcard Notice. The Notice Program shall be completed in its entirety no later than 45 days before the original date set for the Final Approval Hearing. (SA § 109-110.)

b. <u>Exclusion and Objection</u>

Settlement Class Members who do not wish to be included in the Settlement may choose to exclude themselves by mailing a written letter requesting exclusion to the Settlement Administrator, postmarked on or before the last day of the Opt-Out Period. The letter requesting exclusion must contain (i) the Settlement Class Member's full legal name; (ii) the Settlement Class Member's address, telephone number, and email address; (iii) the identity of the Settlement Class Member's counsel, if represented; (iv) a handwritten or electronically imaged written signature of the Settlement Class Member; and (vi) a statement clearly indicating the individual wishes to be excluded from the Settlement Class for the purposes of the settlement. Requests for exclusion furthermore must be made on an individual basis and request exclusion only for that one individual whose personal signature appears on the request; "mass," "class," or other purported group opt outs, or opt outs signed by counsel, are not permitted and are not effective. Any Settlement Class Member who does not submit a timely and valid Request for Exclusion shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Valid Claim.

The Long Form Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs, and the Postcard Notice and Email Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the objection instructions. Objections must be sent by U.S. Mail to the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice, and the Settlement Class Member must not have opted-out of the Settlement Class. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted

by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

For an objection to be valid, the objection must also set forth:

a.    the name of the proceedings;

b.    the objector's full name, mailing address, telephone number, and email address (if any);

c.    all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

d.    a statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

e.    the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

f.    a statement of whether the objector and/or his/her attorney(s) intend to appear and/or testify at the Final Approval Hearing;

g.    a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

h.    the number of times the objector, the objector's counsel and/or counsel's law firm has objected to a class action settlement within the 5 years preceding the date of the objection, the caption of each case in which the objection was made, and a copy of any orders related to or ruling upon the prior objections that were issued by the trial and appellate courts in each listed case; and

i.    the objector's signature (an attorney's signature is not sufficient). SA, § 104-106.

Additionally, within seven (7) days after the deadline for opt-outs as set forth in this

Agreement and as approved by the Court, the Settlement Administrator shall furnish to counsel for the Parties a complete list of all timely and valid request for exclusions. In the event that within seven (7) days after receipt of the list from the Settlement Administrator, more than 0.5% of the Settlement Class has opted out, Prog may, by notifying Class Counsel in writing, void the Settlement Agreement. SA, § 108.

c.    <u>Distribution of Benefits</u>

The Settlement Administrator will collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall verify that each person who submits a Claim is a Settlement Class Member. The Settlement Administrator shall also examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim. (SA, § 113.)

No later than 60 days after the Effective Date, the Settlement Administrator shall distribute the Settlement Class Member Benefits. (SA, § 122). The Settlement Administrator must first use the funds available in the Settlement Fund (after payment of Settlement Administration Costs and Taxes and Tax-Related Expenses) to pay the Fee Award and Costs, followed by Service Awards, followed by Valid Claims for Documented Losses, followed by Valid Claims for Credit Monitoring, followed by Valid Claims for California Statutory Payments, followed by Valid Claims for Cash Payments. *Id*.

All pro rata determinations required under the Settlement Agreement shall be performed by the Settlement Administrator upon notice to Class Counsel and Prog's Counsel. In the event that the aggregate amount of all Settlement payments does not exceed the Net Settlement Fund,

and the remaining amount is not *de minimis* (as determined by Class Counsel and Prog's Counsel based on calculations provided by the Settlement Administrator), then each Settlement Class Member who elected and is entitled to receive a Cash Payment shall receive funds increased on a *pro rata* basis so that the Net Settlement Fund is depleted. If *pro rata* increases to the Cash Payment are made pursuant to this paragraph, under no circumstances shall a Settlement Class Member receive more than Four Hundred Dollars and Zero Cents ($400.00). If funds remain after all Cash Payments are made, then such remaining funds will be Residual Settlement Funds. (SA, § 126-127.)

### 4. Attorney's Fees, Expenses, and Service Awards

The Class Representatives may seek a Service Award of up to $3,000 each, subject to Court approval. Any Service Award will be paid from the Settlement Fund. Class Counsel shall also apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. The Fee Award and Costs and Service Awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account (or accounts) designated by Class Counsel within 35 days of the Effective Date. Class Counsel will determine the allocation of attorneys' fees and costs between Class Counsel and all Plaintiffs' counsel.

This Settlement is not contingent on approval of the request for attorneys' fees and costs, or the request for Service Awards. If the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in full force and effect.

To the extent applicable, and unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst themselves and any other attorneys representing Plaintiffs. Prog and their insurers and reinsurers

shall have no liability or other responsibility for allocation of any such attorneys' fees and costs. (SA, § 131-133.)

## IV. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

As further described herein, the Settlement provides fair, reasonable, and adequate compensation for the Settlement Class under the facts and circumstances of this Action. The Settlement was achieved only after extensive arm's length negotiations among the Parties, including an all-day, in-person mediation session with Michael N. Ungar, Esq., and provides valuable benefits and monetary compensation to Settlement Class Members, including those set forth in Section ___, *supra*. As such, and for the reasons more specifically set forth below, it is a fair, reasonable, and adequate settlement and should be granted preliminary approval under Rule 23(e).

### A. STANDARDS FOR PRELIMINARY APPROVAL

Rule 23(e) provides that a proposed settlement may be approved only after a "finding that it is fair, reasonable, and adequate." Approval of a proposed settlement is "committed to the sound discretion" of the court. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187 (10th Cir. 2002) (citation omitted). However, "[i]n exercising its discretion, the trial court *must* approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir. 1984) (emphasis added). As a matter of public policy, the law favors and encourages settlements. *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354–55 (10th Cir. 1972); *see also Desktop Direct, Inc. v. Digital Equip. Corp.,* 993 F.2d 755, 758 (10th Cir. 1993), aff'd, 511 U.S. 863 (1994) (agreeing that "encouragement of out-of-court settlements is desirable"); *Newberg on Class Actions* (Fourth) (2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

14

"Review of a proposed class action settlement generally involves two hearings." *Manual for Complex Litigation* § 21.632, at 320 (4th ed. 2004). "First, counsel submit the proposed terms of settlement and the judge makes a *preliminary* fairness evaluation." *Id.* At the preliminary approval stage, the court makes "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and date of the final fairness hearing." *Id.* at 321.It

is important to note the preliminary hearing is not a fairness hearing: "Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Sec. Litig.,* No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (alteration in original) (citation and internal quotation marks omitted). For this reason, "the standards for preliminary approval of a class action settlement are not as stringent" as those applied at the final fairness hearing. *Id.* "The Court will ordinarily grant preliminary approval where the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *In re Motor Fuel Temperature Sales Pracs. Litig.,* 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation omitted).

The Tenth Circuit has identified four factors (the "*Jones* Factors") for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted

and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." Jones, 741 F.2d at 324. These factors are in addition to the factors listed under Rule 23(e)(2).[3]

## 1. THE *JONES* FACTORS AND RULE 23(e) FACTORS ARE SATISFIED

This Settlement satisfies the factors contained in Rule 23(e)(2) and the *Jones* factors, as demonstrated below. Thus, Plaintiffs and their counsel respectfully request the Court preliminarily approve the settlement so that notice can be disseminated to Class Members.

### a. *Jones* Factor 1 and Rule 23(e)(2)(A–B): The Settlement was Fairly and Honestly Negotiated at Arm's Length

Courts examine "[t]he fairness of the negotiating process" "'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.,* 2008 WL 384579, at *4 (D. Colo. Feb. 11, 2008). This Settlement is the product of months of litigation and legitimate, arm's-length negotiations. *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("[When] the parties have bargained at arms' length, there is a presumption in favor of the settlement"). There is no doubt that the Settlement was fairly and honestly negotiated. *See Rhodes v. Olson Assocs., P.C.,* 308 F.R.D. 664, 667 (D. Colo. 2015) (no indication of collusion weighed in favor of approval).

The Parties reached a settlement only after vigorously litigating the case. Plaintiffs initially filed twelve (12) lawsuits. Class Counsel successfully moved for consolidation of the actions,

---

[3] Fed. R. Civ. P 23(e)(2) states in pertinent part that "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

structured effective management of the case, drafted and filed their consolidated complaint, negotiated and agreed upon a formal discovery plan, prepared a case management schedule, performed some formal discovery, and exchanged informal discovery with Defendant. Class Counsel's vigorous litigation strategy led to the favorable Settlement obtained for the Class.

The proposed settlement was the result of hard-fought, arms-length negotiations between highly experienced counsel, with the assistance of an experienced mediator, Michael N. Ungar, Esq. *See* Declaration of Daniel Srourian in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Srourian Decl.") (attached hereto as Exhibit 2), ¶ 4. Counsel engaged in a full-day mediation, eventually agreeing in principle to the Settlement and then worked over the subsequent month to finalize the terms of the settlement. *Id.* In sum, because the Settlement "resulted from arm's length negotiations between experienced counsel . . . the Court may presume the settlement to be fair, adequate, and reasonable" for purposes of preliminary approval. *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006); *see also* 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

Further, in negotiating the Settlement and litigating the case, Plaintiffs had the benefit of attorneys who are highly experienced in complex class action litigation, especially data breaches. *See* Srourian Decl., ¶¶ 7–8 and Exhibits A–B, thereto. As evidenced by Class Counsel's extensive experience in data breach class actions, Class Counsel are competent, well-respected, and more than capable of prosecuting this case from inception to completion. *Id.* Class Counsel zealously pursued this matter and acted in the best interests of the Class, which enabled Class Counsel to achieve this favorable Settlement.

Similarly, Plaintiffs were also committed to acting in the best interests of the Settlement

17

Class. Plaintiffs remained informed on the progress of the case, spoke with Class Counsel regularly, were available as needed throughout the litigation and subsequent settlement, produced documents, and reviewed key terms of the settlement. Plaintiffs made all necessary decisions required in support of the best interests of the Settlement Class.

Accordingly, Rule 23(e)(B), Rule 23(e)(A), and the first *Jones* factor are met.

> b. *Jones* Factor 2: Serious Questions of Law and Fact Create Sufficient Uncertainty in the Outcome of this Litigation

Serious questions of law and fact weigh "in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,* 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009).

Plaintiffs believe the claims asserted in the Consolidated Complaint are meritorious, however, Plaintiffs also acknowledge that continuing litigation poses significant risks and additional costs. Due at least in part to their cutting-edge nature and the rapidly evolving law, Data Incident cases like this one generally face substantial hurdles – even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.,* 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting Data Incident cases dismissed at the Rule 12(b)(6) or Rule 56 stage). In fact, should litigation continue, Plaintiffs will likely be tasked with surviving a motion for summary judgment. Class certification is another hurdle that would have to be met – and one that has been denied in other Data Incident cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,* 293 F.R.D. 21 (D. Me. 2013).

In sum, success at trial is far from certain. Through the Settlement, Plaintiff and Class Members gain significant benefits without having to face further risk of not receiving any relief at all. Because of this, the Parties have "reasonably conclude[d] that there are serious questions of

law and fact that ... could significantly impact" the case, and thus, settlement is a favorable alternative to continued litigation. *Lucas,* 234 F.R.D. at 693–94; *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,* 625 F. Supp. 2d at 1138 ("doubt augurs in favor of settlement because settlement creates a certainty of some recovery. . .").

Thus, the second *Jones* factor militates in favor of approval.

   c.   <u>*Jones* Factor 3 and Rule 23(e)(2)(C)(i): The Settlement Provides Exceptional Immediate Relief to the Class, Outweighing the Mere Possibility of Future Relief through Protracted and Extremely Costly Litigation</u>

Most importantly, the Settlement guarantees Class Members immediate relief from alleged harm as well as protection from alleged future harm, which outweighs the mere possibility of future relief through lengthy and expensive litigation. Class Members can easily submit a claim for their proportional share of various cash payments described above. SA, § 92-93. On top of that, Class Members are eligible to receive credit monitoring. SA, § 91. This recovery is objectively substantial.

If litigation were to continue it would involve considerable time and expense. Motions for summary judgment, class certification, *Daubert* motions would all be hotly disputed, and Defendants would likely appeal any adverse verdict. Plaintiffs face continued risk if they reach for the prospect of greater relief through further litigation. Thus, Plaintiffs' options were not between settlement today and a final resolution before a jury sometime in the near future, but between settlement today and multiple jury trials along with final resolution after many years of spending millions of dollars and reducing the amount of any recovery. As one court aptly observed, it is sometimes better "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana),* 64 F.R.D. 597, 624 (D. Colo. 1974) (citations and

internal quotation marks omitted). By reaching a favorable settlement prior to trial, Plaintiffs ensure a risk-free recovery for the Class.

Accordingly, Rule 23(e)(2)(C)(i) is satisfied, as well as the third *Jones* factor.

> d. *Jones* Factor 4 and Rule 23(e)(2)(C)(iii): The Parties and their Counsel Believe the Settlement and the Proposed Award of Attorney's Fees is Fair and Reasonable

The Settlement is supported by Plaintiffs, Defendant, and their respective counsel, who are each highly familiar with the strengths and weaknesses of this litigation. All Settlement Class Members will have the opportunity to weigh in on the Settlement at the Final Approval Hearing if the Court grants preliminary approval.

Class Counsel have carefully evaluated the Settlement and believe it provides exceptional value to Plaintiffs and the Settlement Class. Srourian Decl., ¶ 6. As a result of the Settlement, these benefits will be made immediately available to the Settlement Class without the delay or risk attendant with continued litigation. Indeed, there is no guarantee that the Settlement Class would secure a better outcome were the case prosecuted through trial. "Counsel's judgment as to the fairness of the agreement is entitled to considerable weight" and supports approval of the Settlement. *Marcus v. State of Kansas, Dep't of Revenue,* 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002); *accord Lucas,* 234 F.R.D. at 695; *Rhodes,* 308 F.R.D. at 667.

Moreover, the proposed amount of attorneys' fees is reasonable and fair. Plaintiffs will seek Court approval of attorneys' fees equal to one-third of the common fund—$1,083,333.33—plus reimbursement of costs reasonably incurred in the prosecution of this Action, as well as Service Awards for Class Representatives  in the amount of $3,000 each. SA, § 129. As will be discussed more fully in Plaintiffs' forthcoming motion for attorneys' fees, a one-third fee award is consistent with awards approved in similar data breach class action settlements and is reasonable under the

circumstances of this case. Plaintiffs will fully brief their fee request by separate motion prior to the deadline for Settlement Class Members to object to or exclude themselves from the Settlement. Accordingly, the requested attorneys' fees, costs, and Service Awards do not present a barrier to preliminary approval.

Accordingly, the final *Jones* factor and Rule 23(e)(2)(C)(iii) are met.

e.  Rule 23(e)(2)(D): Class Members are Treated Equitably Under the Settlement

Rule 23(e)(2)(D) requires the Court to confirm the class action settlement treats all class members equitably.

The proposed Settlement is a claims-made settlement, without any preferential treatment of the named Plaintiffs or any segments of the Class. With this proposed Settlement, Settlement Class Members are able to recover damages for injuries allegedly caused by the Data Incident and may also receive credit monitoring services. *See* SA, § 93. In satisfaction of Rule 23(e)(2)(D), the reimbursement for out-of-pocket expenses, time spent, and extraordinary losses allows Settlement Class Members to obtain relief based upon the specific types of damages they allegedly incurred and treats every claimant in those categories equally relative to each other.

Class Counsel also intend to apply for Service Awards for the Class Representatives. SA, § 131. Courts have held that it is appropriate to make modest payment in recognition of the services that such plaintiffs perform in successful class litigation. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.,* 888 F.3d 455, 467 (10th Cir. 2017); *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 958–59 (9th Cir. 2009). A service award to the named Plaintiffs is appropriate here given the efforts and participation of Plaintiffs in the litigation and does not constitute preferential treatment.

As evidenced by the foregoing, the allocation plan is effective and is "rational and fair, as

it treats class members equitably while taking into account variations in the magnitude of their injuries." *Rosenfeld v. Lenich,* No. 18-CV-6720-NGGPK, 2021 WL 508339, at *6 (E.D.N.Y. Feb. 11, 2021). Thus, this factor supports preliminary approval of the Settlement.

        f.   Rule 23(e)(2)(C)(ii): The Proposed Method is Effective for Distributing Relief

Pursuant to Rule 23(e)(2)(C)(ii), the Court should consider the effectiveness of the Parties' "proposed method of distributing relief to the class, including the method of processing class member claims." Here, the plan of allocation is straightforward and is the result of extensive negotiation between highly competent counsel, with the input of an experienced data breach class action mediator. Srourian Decl., ¶ 4. As set forth above, the Settlement makes available to all Settlement Class Members 24 months of Identity Theft Protection and Credit Monitoring, available to Settlement Class Members who need only submit a valid claim. *See* SA, § 91. The Settlement also proposes multiple forms of monetary relief, including (i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other misuse of Settlement Class Member's Private Information; (ii) costs incurred on or after September 11, 2023 associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges (SA, §§ 90(a–c)), as well as a California Statutory Payment and a Cash Payment of up to $400.00 (SA, §§ 92-93). All claims will be processed by the Settlement Administrator, with the oversight of Class Counsel. *See* SA, §§ 98 (a–o).

For these reasons, the proposed settlement is effective for distributing relief and merits preliminary approval.

g.  Rule 23(e)(2)(C)(iv): There are No Agreements Required to be Identified

Lastly, other than the Settlement Agreement, there are no other agreements required to be identified under Rule 23(e)(3). As such, this factor supports preliminary approval.

## V.  THE COURT SHOULD PRELIMINARILY GRANT CLASS CERTIFICATION

At the preliminary approval stage, the Court should also determine whether it will likely be able to certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 593 (1997). As demonstrated below, the proposed Settlement Class satisfies all the requirements of Rule 23(a) and Rule 23(b)(3).

### A.  THE RULE 23(a) FACTORS ARE MET

Under Rule 23(a), a class action may be maintained where: (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) (citing Rule 23(a)).

### 1.  The Settlement Class is So Numerous that Joinder is Impracticable

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel. State of Okl.,* 585 F.2d 432 (10th Cir. 1978); *see also Circle v. Jim Walter Homes, Inc.,* 535 F.2d 583 (10th Cir. 1976) (finding class with 358 members to sufficiently numerous).

Here, the class surpasses the threshold requirement to establish numerosity. As the Settlement Agreement indicates, the Settlement Class exceeds 216,000 individuals. Accordingly, the Settlement Class is sufficiently numerous to justify certification.

### 2. Plaintiffs' Claims and Defenses are Typical of the Settlement Class

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members do not defeat certification. *DG v. Devaughn,* 594 F.3d 1188, 1195 (10th Cir. 2010). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.,* 564 U.S. at 350.

Here, there are myriad common questions of law and fact, including, *inter alia,* whether Defendant owed a duty to Plaintiffs and Class Members to adequately protect their Private Information and to provide timely and accurate notice of the Data Incident to Plaintiffs and the Class; whether Defendant breached these duties; whether Defendant violated California law; whether Defendant knew or should have known that its computer and network systems were allegedly vulnerable to attack; whether Defendant's alleged conduct, including its alleged failure to act, was the proximate cause of the breach of its computer and network systems resulting in the exfiltration of the Private Information; whether Defendant wrongfully failed to inform Plaintiffs and Class Members that it did not maintain security procedures sufficient to reasonably safeguard their Private Information; whether Defendant has taken adequate preventive measures to ensure

24

the Plaintiffs and Class Members will not experience further harm; whether Plaintiffs and Class Members suffered injury as a proximate result of Defendant's conduct or failure to act; and whether Plaintiffs and the Class are entitled to recover damages and other relief from Defendant.

Resolving the allegations surrounding Defendant's alleged conduct relating to the Data Incident will resolve issues that are "central to the validity of each of the claims in one stroke." *Id.* Commonality is satisfied.

### 3. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Class

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." *Id.* "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Pliego v. Los Arcos Mexican Restaurants, Inc.,* 313 F.R.D. 117, 126 (D. Colo. 2016) (citing *Maez v. Springs Auto. Group, LLC,* 268 F.R.D. 391, 396 (D. Colo. 2010)). Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.; see also Amchem Prods. Inc.,* 521 U.S. at 625–26. At this stage of the approval process, there is nothing to suggest that this requirement has not been satisfied.

Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for alleged injuries arising out of the same Data Incident. Plaintiffs' and Settlement Class Members' data was all allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Plaintiff and Settlement Class Members will all be eligible for the same reimbursements upon submitting a valid claim form, which may be reduced pro rata based

on the claims rate and availability of funds.

Further, Class Counsel has decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the class. *See* Srourian Decl., ¶¶ 6–7. Moreover, they have put their collective experience to use in negotiating a settlement that guarantees immediate relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

## B.  THE SETTLEMENT CLASS SATISFIES RULE 23(b)(3)

Plaintiffs also seek certification of the Settlement Class pursuant to Rule 23(b)(3). A class action seeking an award of damages is appropriate under Rule 23(b)(3) if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Prods. Inc.,* 521 U.S. at 618.

### 1.  Common Questions Predominate

Plaintiffs satisfy the predominance requirement because questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to the Class Members. Most notably, all Plaintiffs and Class Members were affected by the same Data Incident and allegedly had their Private Information exposed to cybercriminals. Here, the same alleged course of conduct by Defendant's allegedly inadequate data security, which permitted the Data Incident to occur, gives rise to all Settlement Class Members' claims. As set forth above, there are numerous common issues relating to Defendant's liability at the core of this Action which predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is, therefore, satisfied.

### 2. A Class Action is the Superior Method for Adjudication

Finally, certification of this Settlement as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the Settlement Class. The superiority requirement is easily satisfied here where there are a large number of class members with small damages stemming from the same course of conduct. According to the Tenth Circuit, "class treatment is superior [when] it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *CGC Holding Co., LLC v. Hutchens,* 773 F.3d 1076, 1096 (10th Cir. 2014).

The Settlement Agreement and Notice Program provide Settlement Class Members with the ability to obtain prompt, predictable, and certain relief. There are also well-defined administrative procedures to assure due process. This includes the right of any Class Member dissatisfied with the Settlement to object to it, or to exclude themselves. SA, § 70. The Settlement will also relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendant, by going forward with this case as a class action. Additionally, because the Parties seek to resolve this case through a settlement, any manageability issues that could have arisen at trial are marginalized. Finally, the complexity of the claims and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class Members would be able to obtain relief without class certification.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise, regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual for Complex Litigation (Fourth)* §§ 21.632, 21.633 (2004). To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). This standard does not require that every class member actually receive notice. *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.,* 271 F. App'x. 41, 44 (2d Cir. 2008).

Here, Defendant will provide the Settlement Administrator with the list of the names, addresses, and emails (if known) of all Settlement Class Members in its records. SA, § 39. The Settlement Administrator will then send the Long Form Notice (attached to the Settlement Agreement as Exhibit 3) to Settlement Class Members by U.S. mail or email within thirty (30) days of the Preliminary Approval Order. SA, § 100. Settlement Class Members will have fifteen (15) days before the initially scheduled Final Approval Hearing to submit a Claim Form in order to be eligible for a Settlement Class Member Benefit. SA, § 27. The Settlement Administrator shall perform reasonable address traces for those Email Notices or Postcard Notices returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the LexisNexis database that can be utilized for such purpose. To the extent better addresses are found, the Settlement Administrator should attempt to remail the Postcard Notice. SA, § 109.

The Settlement Administrator will also establish a Settlement Website to which Settlement Class Members may refer for information about the Settlement, submit Claim Forms, ask

questions, and review important settlement documents and deadlines. SA, § 80. This is in addition to maintaining a toll-free telephone number and P.O. Box that Settlement Class Members can use to seek additional information regarding the Settlement. SA, § 98 (d-f).

The proposed Notices are plain and easily understood. Srourian Decl., ¶ 6. Specifically, the Notices describe the claims brought in the Action, as well as the relief provided under the Settlement, along with Settlement Class Members' rights and options pertaining thereto. *See* SA, *generally*. Plaintiffs submit that the Notice Program is reasonable and provides the best notice practicable under the circumstances.

## VII.   CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant this motion for preliminary approval and enter an order substantially similar to the proposed Preliminary Approval Order, which is attached as Exhibit 5 to the Settlement Agreement.


Date: October 20, 2025                    */s/ Daniel Srourian*_____

Daniel Srourian (*pro hac vice*)
SROURIAN LAW FIRM, P.C.
468 N. Camden Dr., Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
Fax: (213) 471-4160
daniel@slfla.com

Tyler J. Bean (*pro hac vice*)
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (929) 677-5144
Fax: (646) 417-5967
tbean@sirillp.com

*Proposed Settlement Class Counsel*
*and Attorneys for Plaintiffs*

EXHIBIT 1

Daniel Srourian (*pro hac vice*)
SROURIAN LAW FIRM, P.C.
468 N. Camden Dr., Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
Fax: (213) 471-4160
daniel@slfla.com

Tyler J. Bean (*pro hac vice*)
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (929) 677-5144
Fax: (646) 417-5967
tbean@sirillp.com

*Proposed Settlement Class Counsel
and Attorneys for Plaintiffs*

Lisa M. Ghannoum (*pro hac vice*)
Cory N. Barnes (*pro hac vice*)
BAKER & HOSTETLER LLP
127 Public Square, Ste. 2000
Cleveland, OH 44114
Telephone: (216) 861-7872
Facsimile: (216) 696-0740
lghannoum@bakerlaw.com
lbarnes@bakerlaw.com

*Attorneys for Defendant*

---

## THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH

---

| *In re Progressive Leasing Breach Litigation* | SETTLEMENT AGREEMENT |
|---|---|
| | Case No.: 2:23-cv-00783 |
| | District Judge David Barlow<br>Magistrate Judge Cecilia M. Romero |

This Settlement Agreement[1] ("Agreement") is entered into between Plaintiffs, individually, and on behalf of the Settlement Class, and Defendant Progressive Leasing, LLC  as of the date last signed below. The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final Approval Order entered by the Court.

## I.    <u>PROCEDURAL HISTORY</u>

1.    On or about September 21, 2023, Prog disclosed that it was the victim of a cyberattack. The attack involved systems that contained information about certain customers and other individuals. The cyberattack was effectuated by the international organized crime group commonly known as "BlackCat" or "ALPHV."

2.    On or about October 23, 2023, pursuant to applicable law, Prog began notifying individuals, including Plaintiffs and Settlement Class Members, that their Private Information was involved in the Data Incident.

3.    Lawsuits were subsequently filed against Prog in the United States District Court for the District of Utah and the Central District of California.

4.    Thereafter, all related actions were transferred and/or consolidated into one case before Judge David Barlow in the United States District Court for the District of Utah, styled *In re Progressive Leasing Breach Litigation*, Case No. 2:23-cv-00783. [ECF Nos. 22, 34.]

5.    Plaintiffs filed their Consolidated Class Action Complaint against Prog on April 19, 2024, alleging causes of action for: negligence, breach of implied contract, declaratory judgment, and violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150 *et seq*. [ECF No. 39.]

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II below.

6.      On June 6, 2024, the Court issued a scheduling order that, among other things, bifurcated class certification discovery from merits discovery, pursuant to DUCivR 23-1(c)(1)(C)-(D). [ECF No. 55.] Under that scheduling order, discovery addressing facts necessary to determine the sufficiency of the putative class was permitted, but discovery pertaining solely to the strengths or weaknesses of the Parties' claims or defenses was not. [*Id.*]

7.      On June 24, 2024, Prog filed a motion to dismiss the Consolidated Class Action Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [ECF No. 56.] Plaintiffs filed an opposition to the motion on August 9, 2024. [ECF No. 64.] Prog filed a reply in support of its motion on August 30, 2024. [ECF No. 67.]

8.      On July 26, 2024, Prog provided documents and responses to Plaintiffs' first set of interrogatories, requests for production, and requests for admission.

9.      On January 16, 2025, the Court issued a Memorandum Decision and Order granting in part and denying in part Prog's motion to dismiss. [ECF No. 69.] The Court dismissed Plaintiffs' causes of action for breach of implied contract (Count II) and declaratory judgment (Count III). The Court also found that Plaintiffs did not have standing to seek injunctive relief. [*Id.*]

10.     On February 6, 2025, Prog filed an answer to the remaining claims and causes of action alleged in the Consolidated Class Action Complaint. [ECF No. 72.]

11.     On February 12, 2025, Prog served its first set of interrogatories, requests for production, and requests for admission to Plaintiffs.

12.     On March 10, 2025, the Parties submitted a Stipulated Motion to Stay Case Proceedings so the Parties could conduct a private mediation to try to resolve the claims against Prog. [ECF No. 73.]

13.     On March 11, 2025, the Court granted the Parties' motion for a stay of the

proceedings, other than conducting third-party discovery, until the earlier of July 7, 2025 or a notice from the Parties. [ECF No. 76.]

14.    The Parties subsequently agreed to participate in a private mediation on June 30, 2025 in Salt Lake City, Utah with respected mediator, Michael N. Unger, Esq.

15.    In advance of the mediation, Prog requested, and Plaintiffs provided, certain discovery responses and documents to facilitate meaningful settlement discussions. This included, among other things, information allegedly provided to Prog that was involved in the Data Incident and documentation of allegedly fraudulent or unauthorized misuse of that information tied to the Data Incident. The Parties also exchanged detailed mediation statements outlining their positions with respect to liability, damages, and settlement.

16.    On July 7, 2025, the Parties informed the Court that the June 30, 2025 mediation was successful and the Parties reached a class-wide settlement, in principle, of all claims in the Action.

17.    On July 7, 2025, in response to the Parties' notification, the Court extended the stay of proceedings and ordered the Parties to provide a status report or notice of dismissal on or before October 6, 2025. [ECF No. 79.]

18.    The Parties now agree to settle the Action entirely, without any admission by Prog of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties.

19.    Prog has entered into this Agreement to resolve all controversies and disputes arising out of or relating in any way to the allegations made in the Consolidated Class Action Complaint and the Data Incident, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to their business operations associated with further litigation. Prog does not in any way acknowledge, admit to, or concede any of the allegations made in the

Consolidated Class Action Complaint, and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Consolidated Class Action Complaint or in connection with the Data Incident. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement.

20.     The Parties intend this Agreement to bind Plaintiffs, Prog, and all Settlement Class Members to the Class Settlement (also referred to herein as the "Settlement").

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

**II.     DEFINITIONS**

21.     "**Action**" means the above-captioned action, *In re Progressive Leasing Breach Litigation*, Case No. 2:23-cv-00783 (D. Utah), and all complaints, claims, demands, controversies, or actions consolidated therein by order of the Court.

22.     "**Application for Attorneys' Fees and Costs**" means the application seeking the payment of attorneys' fees and reimbursement for costs to Class Counsel from the Settlement Fund.

23.     "**CAFA Notice**" means the Class Action Fairness Act Notice which the Settlement Administrator shall serve upon the appropriate state and federal officials, providing notice of the proposed Settlement. The Settlement Administrator shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with the Motion for Final Approval.

24.    "**Cash Payment**" means a pro rata cash payment paid to Settlement Class Members who submit a Valid Claim for a Cash Payment under Section V herein.  A Valid Claim for a Cash Payment shall be in lieu of a Valid Claim for Documented Losses under the terms of this Settlement.

25.    "**Claim**" means the submission of a Claim Form by a Claimant for Settlement Class Member Benefits.

26.    "**Claim Form**" means the proof of claim, substantially in the form attached hereto as **Exhibit 4**, which may be modified as necessary, subject to the Parties' approval.

27.    "**Claim Form Deadline**" shall be 15 days before the initially scheduled Final Approval Hearing and is the last day by which a Claim Form may be submitted to the Settlement Administrator for a Settlement Class Member to be eligible for a Settlement Class Member Benefit.

28.    "**Claimant**" means a Settlement Class Member who submits a Claim Form.

29.    "**Claim Process**" means the process by which Claimants submit Claims to the Settlement Administrator and the Settlement Administrator determines which Claims are Valid Claims.

30.    "**Class Counsel**" or "**Settlement Class Counsel**" means the Daniel Srourian of Srourian Law Firm, P.C. and Tyler J. Bean of Siri & Glimstad LLP.

31.    "**Class List**" means the list of individuals who received a Notice of Data Incident that Prog provides to the Settlement Administrator for purposes of sending Notice. The Class List shall include the Settlement Class Members' names and email addresses and postal addresses, if available.

32.    "**Class Representatives**" means Raymond Dreger, Chad Boyd, Ralph Maddox, Dawn Davis, Richard Guzman, Tyler Whitmore, Melanie Williams, Laura Robinson, Allison Ryan, Marty Alexander, and Stephen Hawes.

33.    "**Consolidated Class Action Complaint**" means all complaints, disputes, proceedings, or claims in any jurisdiction filed against Prog or the Released Parties arising out of or relating in any way to the Data Incident, including without limitation those consolidated into this Action and the Consolidated Class Action Complaint filed in this Action on April 19, 2024 [ECF No. 39].

34.    "**Court**" means the United States District Court for the District of Utah and the Judge(s) assigned to the Action.

35.    "**Credit Monitoring**" means the credit monitoring product that Settlement Class Members may elect as a Settlement Class Member Benefit.

36.    "**Data Incident**" means the cybersecurity incident involving Prog's systems that Prog announced on or about September 21, 2023.

37.    "**Documented Losses**" means the documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are fairly traceable to the Data Incident and have not already been reimbursed by a third party, for which Settlement Class Members may submit a claim to be compensated under this Settlement, up to a total of Five Thousand Dollars and Zero Cents ($5,000.00).

38.    "**Effective Date**" means the day after the entry of the Final Approval Order, provided no objections are made to the Settlement. If there are objections to the Settlement, then the Effective Date shall be the later of: (a) 30 days after entry of the Final Approval Order if objections are filed and overruled and no appeals are taken from the Final Approval Order; or (b)

if appeals are taken from the Final Approval Order, then the earlier of 30 days after the last appellate court ruling affirming the Final Approval Order or 30 days after the entry of a dismissal of the appeal.

39.    "**Email Notice**" means the email form of Notice of the Settlement, substantially in the form attached hereto as **Exhibit 1**, distributed to Settlement Class members for which email addresses are provided by Prog.

40.    "**Escrow Account**" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

41.    "**Fee Award and Costs**" means the amount of attorneys' fees and reimbursement of Litigation Costs and Expenses awarded by the Court to Class Counsel.

42.    "**Final Approval**" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached to the Motion for Final Approval.

43.    "**Final Approval Hearing**" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees and Costs.

44.    "**Final Approval Order**" means the final order the Court enters granting Final Approval of the Settlement. The Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded. The Final Approval Order shall be substantially in the form attached hereto as **Exhibit 6**.

45.    "**Litigation Costs and Expenses**" means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting, and settling the Action.

46.    "**Long Form Notice**" means the long form notice of the Settlement, substantially in the form attached hereto as **Exhibit 3**, that shall be posted on the Settlement Website and shall be available to Settlement Class members by mail upon request to the Settlement Administrator.

47.    "**Motion for Final Approval**" means the motion that Plaintiffs and Class Counsel shall file with the Court seeking Final Approval of the Settlement.

48.    "**Motion for Preliminary Approval**" means the motion that Plaintiffs shall file with the court seeking Preliminary Approval of the Settlement.

49.    "**Net Settlement Fund**" means the amount of the funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) Settlement Administration Costs; (ii) Taxes and Tax-Related Expenses; and (iii) Fee Award and Costs as approved by the Court.

50.    "**Non-Profit Residual Recipient**" means Granite Education Foundation or another non-profit organization(s) as approved by the Court.

51.    "**Notice**" means the Email Notice, Postcard Notice, and Long Form Notice, attached as Exhibits 1-3, that Plaintiffs will ask the Court to approve in connection with the Motion for Preliminary Approval.

52.    "**Notice of Data Incident**" means the notices Prog sent, pursuant to applicable law, to persons whose information was involved in the Data Incident.

53.    "**Notice Deadline**" means the last day by which Notice must issue to the Settlement Class Members, which will occur thirty (30) days after entry of the Preliminary Approval Order.

54.    "**Notice Program**" means the methods provided for in this Agreement for giving Notice to the Settlement Class and consists of the Email Notice, Postcard Notice, and Long Form Notice.

55.    "**Notice of Deficiency**" means the notice sent by the Settlement Administrator to a Settlement Class Member who has submitted an invalid Claim.

56.    "**Objection Period**" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the initial scheduled Final Approval Hearing.

57.    "**Opt-Out Period**" means the period that begins the day after the Notice is first distributed, and that ends sixty (60) days after the date of Notice is sent by the Settlement Administrator.

58.    "**Party**" means each of the Plaintiffs and Prog, and "**Parties**" means Plaintiffs and Prog collectively.

59.    "**Plaintiffs**" means individuals Raymond Dreger, Chad Boyd, Ralph Maddox, Dawn Davis, Richard Guzman, Tyler Whitmore, Melanie Williams, Laura Robinson, Allison Ryan, Marty Alexander, and Stephen Hawes, as listed on the Consolidated Class Action Complaint [ECF No. 39].

60.    "**Private Information**" means—for purposes of this Agreement only—some combination of Settlement Class Members' names, addresses, phone numbers, social security numbers, dates of birth, email addresses, bank account numbers, driver's license numbers, monthly gross incomes, and credit limits, and any other information alleged as being private information in the Consolidated Class Action Complaint, that was stored by Prog at the time of the Data Incident.

61.    "**Postcard Notice**" means the postcard notice of the Settlement, substantially in the form attached hereto as **Exhibit 2** that the Settlement Administrator shall disseminate to Settlement Class Members by mail if necessary.

62.    "**Prog**" means defendant Prog Leasing, LLC and its directors, officers, employees, and agents.

63.    "**Prog's Counsel**" means attorney Lisa Ghannoum and Cory Barnes of Baker & Hostetler LLP.

64.    "**Preliminary Approval**" means the preliminary approval of the settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form submitted with the Motion for Preliminary Approval.

65.    "**Preliminary Approval Order**" means the order preliminarily approving the settlement and proposed Notice Program, substantially in the form attached hereto as **Exhibit 5**.

66.    "**Releases**" means the releases and waiver set forth in Section XII of this Agreement.

67.    "**Released Claims**" means any and all actual, potential, filed or unfiled, known or unknown, fixed or contingent, claimed or unclaimed, asserted or unasserted, liquidated or unliquidated, existing or potential, suspected or unsuspected claims, demands, liabilities, rights, suits, causes of action, obligations, damages, punitive, exemplary or multiplied damages, expenses, costs, losses, attorneys' fees and/or obligations, and remedies of any kind or description, whether in law or in equity, accrued or unaccrued, direct, individual or representative, joint or several, of every nature and description whatsoever, based on any federal, state, local, statutory or common law, whether in tort, contact or quasi-contract, or based on any regulation, rule or any other law, against the Released Parties, or any of them, arising out of or relating to actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act that the Releasing Parties had or have, that have been or could have

been asserted in the Consolidated Class Action Complaint, or that otherwise relate in any way to or arise from the Data Incident.

68.    "**Released Parties**" means Prog and each and every of its past, present, and future assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, retail partners, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees.

69.    "**Releasing Parties**" means Plaintiffs and Settlement Class Members and each and every of their respective past, present, and future heirs, beneficiaries, dependents, spouses, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

70.    "**Request for Exclusion**" means a written communication by a Settlement Class Member in which he or she requests to opt out/be excluded from the Settlement Class in the form and manner provided for in the Notice.

71.    "**Residual Settlement Fund**" means any funds that remain from the Net Settlement Fund after settlement payments have been distributed and the time for cashing and/or redeeming settlement payments has expired.  The Residual Settlement Fund will be sent to Granite Education Foundation.

72.    "**Service Award**" means the payment the Court may award the Class Representatives, which is in addition to any Settlement Class Member Benefit due to Class Representatives as Settlement Class Members. The Service Awards shall be paid from the Settlement Fund but separate from the Settlement Class Member Benefits.

73.    "**Settlement Administrator**" means CPT Group, Inc.

12

74.     "**Settlement Administration Costs**" means all costs and fees of the Settlement Administrator incurred in the administration of this Settlement, including, without limitation, all expenses or costs associated with providing Notice to the Settlement Class Members, locating Settlement Class Members, performing National Change of Address search(es) and/or skip tracing, processing claims, determining the eligibility of any person to be a Settlement Class Member, issuing Class Action Fairness Act  notices, and administering, calculating and distributing the Settlement Fund to Settlement Class Members.  Settlement Administration Costs also includes all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.  Settlement Administration Costs will be paid solely from the Settlement Fund, not Prog, as set forth in this Agreement.

75.     "**Settlement Class**" means all living individuals residing in the United States who were sent a Notice of Data Incident from Prog indicating their Private Information may have been involved in the Data Incident. Excluded from the Settlement Class are: (1) Prog, and any entity in which Prog has a controlling interest, and Prog's parents, successors, subsidiaries, affiliates, and assigns; (2) any judge, justice, or judicial officer presiding over this Action, and the members of their immediate families and judicial staff; (3) any persons who have released claims relating to the Action; and (4) all Settlement Class Members who submit a valid Request for Exclusion prior to the close of the Opt-Out Period. The Settlement Class includes the:

    a.     "**California Subclass**" meaning all living individuals in the United States who were sent a Notice of Data Incident and are verified to have resided in the State of California on September 11, 2023.

76.     "**Settlement Class Member**" means any member of the Settlement Class.

77.     "**Settlement Class Member Benefit**" means the benefits elected by Settlement Class Members and approved by the Settlement Administrator pursuant to this Agreement.

78.     "**Settlement Fund**" means the sum of three million two hundred fifty thousand dollars ($3,250,000.00) to be paid by or on behalf of Prog pursuant to Section III herein, including any interest accrued thereon after payment. This payment, without exception, is the limit and extent of the monetary obligations of Prog and each entity which is controlled by, controlling, or under common control with Prog and each and every of their respective past, present, and future assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, servants, employees, partners, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees, insurers and reinsurers with respect to this Agreement and the settlement of this matter.

79.     "**Settlement Payments**" means the Settlement Class Member Benefits in the form of payments for Documented Losses, Cash Payments, and/or California Statutory Payments provided to Settlement Class Members who submit a Valid Claim.

80.     "**Settlement Website**" means the website the Settlement Administrator will establish as a means for Settlement Class Members to submit Claim Forms and obtain notice and information about the settlement, including hyperlinked access to this Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees and Costs, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders to be posted. The Settlement Website shall remain online and operable for at least three months after Final Approval.

14

81. "**Taxes and Tax-Related Expenses**" means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Prog with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund.

82. "**Valid Claim**" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of this Agreement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

## III.    SETTLEMENT FUND

83. Prog will fund the Settlement Fund as follows: Prog will pay a first installment in the amount of $500,000.00 within thirty (30) days of the Court's entry of the Preliminary Approval Order ("First Settlement Fund Installment"). Prog will pay the second installment (the remaining amount of the Settlement Fund in the amount of $2,750,000.00) within thirty (30) days of the Effective Date ("Second Settlement Fund Installment"). If Final Approval of the Settlement is not

granted, the First Settlement Fund Installment will be returned to Prog and/or its insurer(s).

84.  The Settlement Fund will be placed into the Escrow Account. All interest earned on the Settlement Fund shall be for the benefit of the Settlement Class.

85.  The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l at all times after creation of the Escrow Account. The Settlement Administrator, within the meaning of United States Treasury Reg. § 1.468B-l, shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. Prog, its insurers and reinsurers, Prog's Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the Taxes or Tax-Related Expenses. The Escrow Account shall indemnify and hold Prog, its insurers and reinsurers, Prog's Counsel, Plaintiffs, and Class Counsel harmless for all taxes (including, without limitation, taxes payable by reason of any such indemnification).

86.  The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or, in the event this Agreement is terminated in accordance with the provisions herein, the balance returned to those who paid the Settlement Fund.

87.  Any amount remaining in the Residual Settlement Fund shall be paid to the Non-Profit Residual Recipient as set forth in this Agreement. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court.

88.  The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by Plaintiffs or any Settlement Class Member of any payment or

transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Plaintiffs and Settlement Class Members shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS

89.    In the Motion for Preliminary Approval, Plaintiffs shall propose and request to the Court that the Settlement Class and California Subclass be certified for Settlement purposes only. Prog agrees solely for purposes of the Settlement, and the implementation of such Settlement, that this case shall proceed as a class action; provided however, that if a Final Approval Order is not issued, then any certification shall be null and void and, for the avoidance of doubt, Prog shall retain all rights to object to any future requests to certify a class. Plaintiffs and Class Counsel shall not reference this Agreement in support of any subsequent motion for class certification of any class in the Action.

## V.    SETTLEMENT CLASS MEMBER BENEFITS

90.    All Settlement Class Members may also submit a claim for Documented Losses, up to a maximum of Five Thousand Dollars and Zero Cents ($5,000.00). Settlement Class Members may submit a claim for reimbursement upon presentment of reasonable Documented Losses arising from the Data Incident. Documented Losses are unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident including, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other misuse of Class Member's Private Information; (ii) costs incurred on or after September 11, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or

freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

a. Settlement Class Members who elect to submit a claim for reimbursement for Documented Losses must provide to the Settlement Administrator the information required to evaluate the claim, including a signed verification of: (1) the Settlement Class Member's name, e-mail address, and current postal address; (2) documentation supporting their claim; (3) a brief description of the documentation describing the nature of the loss; and (4) whether the Settlement Class Member has been reimbursed for the loss by another source. Documentation supporting Documented Losses can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation. Settlement Class Members shall not be reimbursed for Documented Losses if they have already been reimbursed for the same out-of-pocket losses by another source, including compensation provided in connection with the identity protection and credit monitoring services offered as part of the notification letter provided by Prog or otherwise.

b. The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for Documented Losses reflects valid Documented Losses actually incurred that are fairly traceable to

the Data Incident but may consult with Class Counsel and Prog's Counsel together in making individual determinations. In assessing what qualifies as "fairly traceable," the Parties agree to instruct the Settlement Administrator to consider: (i) whether the timing of the loss occurred on or after September 11, 2023; and (ii) whether the Private Information used to commit identity theft or fraud consisted of the same type of Private Information that was involved in the Data Incident. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

c.  If the aggregate amount of approved Claims for Documented Losses exceeds the remaining amount of the Settlement Fund after payment for Settlement Administration Costs, Service Award payments approved by the Court, and Fee Award and Costs awarded by the Court, approved Claims for Documented Losses will be decreased *pro rata* to consume the remaining amount of the Settlement Fund.

91.    All Settlement Class Members who submit a Valid Claim are eligible to receive two years of three bureau Credit Monitoring services. Credit Monitoring services will be provided by IDX and will include 24 month, 3-bureau credit monitoring with Credit Monitoring & Alerts, CyberScan Dark Web Monitoring, $1M Reimbursement Insurance, Fully Managed Identity Restoration, Member Advisory Services, Lost Wallet Assistance, and immediate support to class members who elect Credit Monitoring services.

92.    In addition to, or in the alternative to, making Claims for Documented Losses,

Settlement Class Members who resided in California at the time of the Data Incident may elect to receive a statutory cash payment of up to $100 on a claims-made basis ("California Statutory Payment").

    a. Claimants of the California Statutory Payments must provide documentation of their residence in California on September 11, 2023. Documentation of residence in California on September 11, 2023 includes, but is not limited to, utility bills, tax documents, and pay stubs from September 2023 that reflect the Claimant's name and valid California address.

    b. If the aggregate amount of approved Claims for a California Statutory Payment exceeds the remaining amount of the Settlement Fund after payment for approved Claims for Documented Loses, Credit Monitoring services, Settlement Administration Costs, Service Award payments approved by the Court, and Fee Award and Costs awarded by the Court, approved Claims for a California Statutory Payment will be decreased *pro rata* to consume the remaining amount of the Settlement Fund.

93.    In the alternative to making Claims for Documented Losses and/or Claims for a California Statutory Payment, Settlement Class Members may elect to receive a Cash Payment of up to $400.00 on a claims-made basis. The amount of the payment will be calculated by dividing the funds remaining in the Settlement Fund after payment of approved Claims for Documented Losses, approved claims for Credit Monitoring services, approved Claims for a California Statutory Payment, Settlement Administration Costs, Service Award payments approved by the Court, and Fee Award and Costs awarded by the Court by the number of Settlement Class Members with a Valid Claim, and thus could be less than $400. The notice and claim forms will include the

$400 cap on Residual Cash Payment. Class Counsel may select the font, size, and emphasis for the $400 cap on the Residual Cash Payment and their placement within the notice and claim forms, subject to approval from Prog's counsel, which shall not be unreasonably withheld.

**VI.    SETTLEMENT APPROVAL**

94.    Plaintiffs will file their Motion for Preliminary Approval no later than October 20, 2025. The Motion for Preliminary Approval shall, among other things, request the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claim Form and Claim Process; (5) approve the procedures for Settlement Class Members to opt-out of the Settlement or for Settlement Class Members to object to the Settlement; (6) appoint CPT Group, Inc. as Settlement Administrator; (7) appoint Daniel Srourian of Srourian Law Firm P.C. and Tyler Bean of Siri & Glimstad LLP as Class Counsel for Settlement purposes; (8) stay the Action pending Final Approval of the Settlement; and (9) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, the Parties, Class Counsel, and Prog's Counsel.

95.    Class Counsel shall provide Prog's Counsel with a draft of the Motion for Preliminary Approval 30 days prior to filing same to ensure that there are no requested revisions from Prog.

**VII.    SETTLEMENT ADMINISTRATOR**

96.    The Parties agree that, subject to Court approval, CPT Group shall be the Settlement Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in this Agreement and the Preliminary

Approval Order and the Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

97.     The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claims Process, administering the Settlement Fund, and distributing the payments for Documented Losses and/or Cash Payments, and issuing Credit Monitoring activation codes to Settlement Class Members who submit Valid Claims.

98.     The Settlement Administrator's duties include the following:

a.      Provide CAFA Notice;

b.      Complete the Court-approved Notice Program by noticing the Settlement Class by Email Notice and/or Postcard Notice and sending out Long Form Notices and paper Claim Forms upon request from Settlement Class members, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

c.      Establish and maintain the Settlement Fund and the Escrow Account;

d.      Establish and maintain a post office box to receive opt-out requests from the Settlement Class, objections from Settlement Class Members, and Claim Forms;

e.      Establish and maintain the Settlement Website to provide important information and to receive electronic Claim Forms;

f.      Establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class Members who call with or otherwise communicate such inquiries;

22

g.      Respond to any mailed Settlement Class Member inquiries;

h.      Process all opt-out requests from the Settlement Class;

i.      Provide weekly reports to Class Counsel and Prog's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notice of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

j.      In advance of the Final Approval Hearing, prepare a declaration confirming the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

k.      Distribute, out of the Settlement Fund, Settlement Payments by electronic means or by paper check;

l.      Email all Credit Monitoring activation codes to all Settlement Class Members who elect Credit Monitoring;

m.      Pay Fee Award and Costs, as approved by the Court, out of the Settlement Fund;

n.      Pay Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel; and

o.      Any other settlement administration function at the instruction of Class Counsel and Prog's Counsel, including, but not limited to, verifying that the Settlement Fund has been properly administered, the benefits to the Settlement Class Members who submit Valid Claims

23

have been properly distributed, and payment of any funds in the Residual Settlement Fund have been distributed to the non-profit designated in this Agreement.

## VIII.   NOTICE TO THE SETTLEMENT CLASS, OPT-OUT PROCEDURES, AND OBJECTION PROCEDURES

99.    Prog will provide the Settlement Administrator with the Class List no later than 10 days after entry of the Preliminary Approval Order. To the extent necessary, Prog will cooperate with updating the Class List to accomplish the Notice Program and otherwise administer the Settlement.

100.    Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein, using the forms of Notice approved by the Court. Where physical addresses have been provided for Settlement Class members, Postcard Notices shall be sent, with an attached "tear off" claim form with prepaid postage for those who wish to make claims that do not require documentation, *e.g.*, Claims for Credit Monitoring, a Cash Payment, and/or California Statutory Payment, substantially in the form of **Exhibit 4**    hereto.  Where email addresses have been provided for Settlement Class members, Email Notice shall also be sent, in addition to the Postcard Notice.

101.    The Email Notice and Postcard Notice shall include, among other information: (a) a description of the material terms of the Settlement; (b) identification of the applicable settlement subclass(es) and applicable Released Parties for each Settlement Class Member; (c) how to submit a Claim Form; (d) the Claim Form Deadline; (e) the last day of the Opt-Out Period for Settlement Class Members to opt-out of the Settlement Class; (f) the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs; (g) the Final Approval Hearing date; and (h) the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and

24

information. The Settlement Administrator shall insert the correct dates and deadlines in the Notices before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

102.    The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claim Form that can be submitted online directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

103.    The Long Form Notice shall also include a procedure for Settlement Class Members to opt-out of the Settlement Class, and the Email Notice and Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the opt-out instructions.

104.    To opt out, a Settlement Class Member must mail a written letter requesting exclusion to the Settlement Administrator, postmarked on or before the last day of the Opt-Out Period. The letter requesting exclusion must contain (i) the Settlement Class Member's full legal name; (ii) the  Settlement Class Member's address, telephone number, and email address; (iii) the identity of the Settlement Class Member's counsel, if represented; (iv) a handwritten or electronically imaged written signature of the Settlement Class Member; and (vi) a statement clearly indicating the individual wishes to be excluded from the Settlement Class for the purposes of the settlement. Requests for exclusion furthermore must be made on an individual basis and request exclusion only for that one individual whose personal signature appears on the request;

"mass," "class," or other purported group opt outs, or opt outs signed by counsel, are not permitted and are not effective. Any Settlement Class Member who does not submit a timely and valid Request for Exclusion shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Valid Claim.

105. The Long Form Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs, and the Postcard Notice and Email Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the objection instructions. Objections must be sent by U.S. Mail to the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice, and the Settlement Class Member must not have opted-out of the Settlement Class. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

106. For an objection to be valid, the objection must also set forth:

a.    the name of the proceedings;

b.    the objector's full name, mailing address, telephone number, and email address (if any);

c.    all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

d.    a statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

e.    the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

f.    a statement of whether the objector and/or his/her attorney(s) intend to appear and/or testify at the Final Approval Hearing;

g.    a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

h.    the number of times the objector, the objector's counsel and/or counsel's law firm has objected to a class action settlement within the 5 years preceding the date of the objection, the caption of each case in which the objection was made, and a copy of any orders related to or ruling upon the prior objections that were issued by the trial and appellate courts in each listed case; and

i.    the objector's signature (an attorney's signature is not sufficient).

107.    Class Counsel and/or Prog's Counsel may conduct expedited, limited discovery on any objector or objector's counsel.

108.    Within seven (7) days after the deadline for opt-outs as set forth in this Agreement and as approved by the Court, the Settlement Administrator shall furnish to counsel for the Parties a complete list of all timely and valid request for exclusions. In the event that within seven (7) days after receipt of the list from the Settlement Administrator, more than 0.5% of the Settlement Class has opted out, Prog may, by notifying Class Counsel in writing, void this Agreement.

109.    The Settlement Administrator shall perform reasonable address traces for those Email Notices or Postcard Notices returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. To the extent better addresses are found, the

Settlement Administrator should attempt to remail the Postcard Notice.

110.    The Notice Program shall be completed in its entirety no later than 45 days before the original date set for the Final Approval Hearing.

## IX.    CLAIM PROCESS AND DISBURSEMENT OF CASH PAYMENTS

### CLAIM PROCESS

111.    The Notice and the Settlement Website will explain to Settlement Class Members that they may be entitled to a Settlement Class Member Benefit and how to submit a Claim Form.

112.    Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

113.    The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall verify that each person who submits a Claim is a Settlement Class Member. The Settlement Administrator shall also examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

114.    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of Claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

115.    The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim Process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of Claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may require information from Claimants or deny Claims, subject to the supervision of the Parties and ultimate oversight by the Court.

116.    Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Settlement Class Member using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the physical or e-signature. A Settlement Class Member shall have until the Claim Form Deadline, or 15 days after the date the Notice of Deficiency is sent via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Settlement Class Member timely and adequately provides the requested information and/or

documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Settlement Class Member does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless Defendants and Class Counsel otherwise agree in writing.

117. Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

a. Failure to fully complete and/or sign the Claim Form;

b. Illegible Claim Form;

c. The Claim Form is fraudulent;

d. The Claim Form is duplicative of another Claim Form;

e. The Claimant is not a Settlement Class Member;

f. The Claimant submitted a timely and valid request to opt-out of the Settlement Class.

g. The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

h. Failure to submit a Claim Form by the Claim Form Deadline; and/or

i. The Claim Form otherwise does not comply with the requirements of this Settlement.

118. The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

a. The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims based on findings of fraud or duplication;

b. A request for additional information by sending a Notice of Deficiency shall not be

30

considered a denial for purposes of this paragraph;

      c.     If a Claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Upon request, Class Counsel and Prog's Counsel shall be provided with copies of all such notifications to Claimants; and

      d.     The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

119.    The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or Prog's Counsel. Additionally, Class Counsel and Prog's Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

120.    The Parties, Class Counsel, Prog's Counsel, and Prog's insurers and reinsurers shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

121.    The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, Prog's Counsel, and Prog's insurers and reinsurers for (i) any act or omission or

31

determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Program and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

DISBURSEMENT OF SETTLEMENT BENEFITS

122.    No later than 60 days after the Effective Date, the Settlement Administrator shall distribute the Settlement Class Member Benefits.

123.    The Settlement Administrator will send an email to Settlement Class Members with Valid Claims that include an election for Credit Monitoring with information on how to enroll in the Credit Monitoring, including the activation code.

124.    Cash Payments to Settlement Class Members will be made by electronic payment or by paper check. In the event a Settlement Class Member does not make an election of electronic payment or paper check, or if there is a problem with issuance of an electronic payment, a paper check will be sent to the Settlement Class Member's last known address. Paper checks must be negotiated within 90 days of issuance. In the event the Settlement Administrator is unable to distribute funds to the Settlement Class Members entitled to receive them due to incorrect or incomplete information provided to the Settlement Administrator, the funds shall become residual funds, and such Settlement Class Members shall forfeit their entitlement right to the funds.

125.    The Settlement Administrator must first use the funds available in the Settlement Fund (after payment of Settlement Administration Costs and Taxes and Tax-Related Expenses) to

make payments for Fee Award and Costs, followed by Service Awards, followed by Valid Claims for Documented Losses, followed by Valid Claims for Credit Monitoring, followed by Valid Claims for California Statutory Payments, followed by Valid Claims for Cash Payments.

126.    All pro rata determinations required by this Agreement shall be performed by the Settlement Administrator upon notice to Class Counsel and Prog's Counsel.

127.    In the event that that the aggregate amount of all Settlement payments does not exceed the Net Settlement Fund, and the remaining amount is not *de minimis* (as determined by Class Counsel and Prog's Counsel based on calculations provided by the Settlement Administrator), then each Settlement Class Member who elected and is entitled to receive a Cash Payment shall receive funds increased on a *pro rata* basis so that the Net Settlement Fund is depleted. If *pro rata* increases to the Cash Payment are made pursuant to this paragraph, under no circumstances shall a Settlement Class Member receive more than Four Hundred Dollars and Zero Cents ($400.00). If funds remain after all Cash Payments are made, then such remaining funds will be Residual Settlement Funds.

128.    No portion of the Settlement Fund shall revert or be repaid to Prog after the Effective Date. To the extent any monies remain in the Residual Settlement Fund more than 150 days after the distribution of Settlement payments to the Settlement Class Members, or 30 days after all Settlement Checks are no longer negotiable, whichever occurs later or as otherwise agreed to by the Parties, any remaining monies shall be distributed as required by state law or to the Non-Profit Residual Recipient.

## X.    FINAL APPROVAL ORDER AND FINAL JUDGMENT

129.    Class Counsel shall file their Application for Attorneys' Fees and Costs not later than 14 days before the final day of the Objection Period. Prog's Counsel will be provided with a

copy of the proposed Application for Attorneys' Fees and Costs not less than 3 days before it is filed. At the Final Approval Hearing, the Court will hear argument on Class Counsel's Motion for Final Approval of the Settlement and Application for Attorneys' Fees and Costs. In the Court's discretion, the Court will also hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Application for Attorneys' Fees and Costs, provided the objectors submitted timely objections that meet all of the requirements listed in this Agreement.

130.    Class Counsel shall file their Motion for Final Approval of the Settlement no later than 14 days before the original date set for the Final Approval Hearing. Prog's Counsel will be provided with a copy of the proposed Motion for Final Approval not less than 3 days before it is filed. At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to grant the Application for Attorneys' Fees and Costs. Such proposed Final Approval Order shall, among other things:

    a.    Determine that the Settlement is fair, adequate and reasonable;

    b.    Finally certify the Settlement Class for settlement purposes only;

    c.    Determine the completed Notice Program satisfies due process requirements;

    d.    Bar and enjoin all Releasing Parties from asserting or otherwise pursuing any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

    e.    Release Prog and the Released Parties from the Released Claims, as specified in Section XII below; and

    f.    Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Prog, Plaintiffs, all Settlement Class Members, and all objectors, to

administer, supervise, construe, and enforce this Agreement in accordance with its terms.

**XI.    SERVICE AWARDS, ATTORNEYS' FEES AND COSTS**

131.    The Class Representatives may seek a Service Award of up to $3,000 each, subject to Court approval. Any Service Award will be paid from the Settlement Fund. Class Counsel shall also apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. The attorneys' fees and cost awards and Service Awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account (or accounts) designated by Class Counsel within 35 days of the Effective Date. Class Counsel will determine the allocation of attorneys' fees and costs between Class Counsel and all Plaintiffs' counsel.

132.    This Settlement is not contingent on approval of the request for attorneys' fees and costs, or the request for Service Awards. If the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in full force and effect.

133.    To the extent applicable, and unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst Plaintiffs' counsel and any other attorneys for Plaintiffs. Prog and their insurers and reinsurers shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

**XII.    RELEASES**

134.    Upon the Effective Date, and in consideration of the relief and other consideration described herein, the Releasing Parties shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished, and completely discharged Prog and the Released Parties from any and all Released Claims.

135.    The Released Claims include the Release of Unknown Claims.  "Unknown Claims" means claims that could have been raised in the Action and that Plaintiffs, any Settlement Class Member or any Releasing Party, do not know or suspect to exist which, if known by him, her or it, might affect his, her or its agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement.  Upon the Effective Date, Plaintiffs, the Settlement Class Members, and any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Upon the Effective Date, each of the Releasing Parties shall also be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law(s) of any state, the District of Columbia, or territory of the United States, by federal law(s), or principle of common law, or the law of any jurisdiction outside of the United States, which is/are similar, comparable or equivalent to California Civil Code section 1542 (including, without limitation, California Civil Code § 1798.80, et seq., Montana Code Ann. § 28- 1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11). The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to fully, finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims that they may have, as that term is defined in this Paragraph.

136.    The Releasing Parties agree that, once this Agreement is executed, they will not, directly or indirectly, individually or in concert with another, maintain, cause to be maintained, or voluntarily assist in maintaining any further demand, action, claim, lawsuit, arbitration, or similar proceeding, in any capacity whatsoever, based on any of the Released Claims.  It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

137.    Following the Effective Date, the Settlement Administrator shall maintain a list of applicable Settlement Class Members with Released Claims against Prog and will provide Prog and Prog's Counsel with a copy of the list of Settlement Class Members. Each list shall be conclusive evidence of the Settlement Class Members that have Released Claims for each Prog.

138.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting all Released Claim, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

139.    The power to enforce any term of this Settlement is not affected by the releases in this section.

## XIII.  MODIFICATION/TERMINATION OF SETTLEMENT

140.    The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the

Court if such changes are consistent with the Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

141.    This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

 a. Court approval of the Settlement consideration set forth in Section V and the Releases set forth in Section XII of this Agreement;

 b. The Court has entered the Preliminary Approval Order;

 c. The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of Final Approval; and

 d. The Effective Date has occurred.

142.    If any of the conditions specified in the preceding paragraph are not met, or if the Court otherwise imposes any modification to or condition of approval of the Settlement to which the Parties do not consent, then this Agreement shall be cancelled and terminated.

143.    Additionally, Prog shall have the sole option to terminate this Agreement if more than 0.5% of the Settlement Class submits a Request for Exclusion.  Prog shall notify Class Counsel and the Court of its intent to terminate this Agreement pursuant to this paragraph within 30 days after the end of the Opt-Out Period and receipt of the list of Requests for Exclusion from the Settlement Administrator.

144.    In the event this Agreement is terminated or fails to become effective, then this Agreement shall be considered null and void; all of Plaintiffs', Class Counsel's, Prog's, and Prog's Counsel's obligations under the Settlement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement.

The Parties shall further jointly file a status report in the Court seeking to reopen the Action and all papers filed. In such event, all of the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved; any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purposes; and the terms and provisions of this Agreement shall not be used in this Action or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

145.    In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to Prog.

**XIV.    No Admission of Liability**

146.    This Agreement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. Prog has denied and continues to deny each of the claims and contentions alleged in the Consolidated Class Action Complaint. Prog does not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. Prog has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action.

147.    Class Counsel believe the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel

fully investigated the facts and law relevant to the merits of the claims, conducted discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

148.    This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

149.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

150.    In addition to any other defenses Prog or the Released Parties may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

**XV.    Miscellaneous Provisions**

151.    ***Confidentiality***. To the extent permitted by ethics rules, the Parties and their counsel shall keep confidential all settlement communications, including communications regarding the

negotiation and drafting of this Agreement. This paragraph shall not be construed to limit or impede the Notice requirements contained in this Agreement, nor shall this paragraph be construed to prevent Class Counsel or Prog's Counsel from notifying or explaining that the Action has settled or limit the representations that the Parties or their counsel may make to the Court to assist in the Court's evaluation of the Settlement, Preliminary Approval, Final Approval, and any objection to the Settlement's terms. Prog may also provide information about the Agreement to its customers, employees, attorneys, members, partners, insurers, brokers, agents, and other persons or entities as required by securities laws, other applicable laws and regulations, and as necessary to effect the Settlement.

     152.    ***Non-Disparagement***. Plaintiffs' counsel and the Settlement Class, for themselves and on behalf of each and every of their respective past, present, and future heirs, beneficiaries, dependents, spouses, conservators, executors, estates, administrators, assigns, agents, attorneys, accountants, financial and other advisors, and any other representatives of any of these persons and entities shall agree not to publicly disparage Prog or take any action designed to harm the public perception of Prog regarding any issue that may result from, arise out of, are based on, or relate in any way to the facts or claims that were alleged in the Action or Consolidated Class Action Complaint.

     153.    ***Deadlines***.  If any of the dates or deadlines specified herein fall on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day.  All reference(s) to "days" in this Agreement shall refer to calendar days unless otherwise specified.

     154.    ***Gender and Plurals***. As used in this Agreement, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

155.   **Headings**.  The headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

156.   **Binding Effect**. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

157.   **Cooperation of Parties**. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

158.   **Obligation to Meet and Confer**. Before filing any motion with the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in good faith in an attempt to resolve the dispute.

159.   **Integration and No Reliance**. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

160.   **No Conflict Intended**. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

161.   **Governing Law**. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the state of Utah, without regard to the principles thereof regarding choice of law.

162. ***Counterparts***. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required. Any signature submitted through email of a PDF or DocuSign shall be deemed an original.

163. ***Jurisdiction***. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

164. ***Notices***. All notices provided for herein shall be sent by email with a hard copy sent by overnight mail to:

> **If to Plaintiffs or Class Counsel**:
>
> Tyler J. Bean
> **SIRI & GLIMSTAD LLP**
> 745 Fifth Avenue, Suite 500
> New York, NY 10151
> tbean@sirillp.com
>
>
> **If to Prog or Prog's Counsel**:

43

Lisa Ghannoum
Cory Barnes
**Baker & Hostetler LLP**
127 Public Square, Ste. 2000
Cleveland, OH 44114
lghannoum@bakerlaw.com
cbarnes@bakerlaw.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

165.    ***Modification and Amendment***. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Prog's Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

166.    ***No Waiver***. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

167.    ***Authority***. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

168.    ***Agreement Mutually Prepared***. Neither Plaintiffs nor Prog shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

169.    ***Independent Investigation and Decision to Settle***. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in

44

addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their experts used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

170.     ***Receipt of Advice of Counsel***. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

*[Remainder of page intentionally left blank]*

**AGREED TO BY**:

| | |
|---|---|
| _____<br>Raymond Dreger<br><br>Date: | _____<br>Chad Boyd<br><br>Date: |
| _____<br>Ralph Maddox<br><br>Date: | _____<br>Dawn Davis<br><br>Date: |
| _____<br>Richard Guzman<br><br>Date: | _____<br>Tyler Whitmore<br><br>Date: |
| _____<br>Melanie Williams<br><br>Date: | _____<br>Laura Robinson<br><br>Date: |
| _____<br>Allison Ryan<br><br>Date: | _____<br>Marty Alexander<br>Date: |
| _____<br>Stephen Hawes | |

| Date: | |
|---|---|
| | |

By: _____         By: _____

Date: _____       Date: _____

Daniel Srourian, Esq.                 Lisa Ghannoum, Esq.
SROURIAN LAW FIRM, P.C.               Baker & Hostetler LLP
468 N. Camden Drive Suite 200         127 Public Square, Suite 2000
Beverly Hills, CA 90210               Cleveland, OH 44114-1214
Telephone: (213) 474-3800             Tel: (216) 861-7872
Fax: (213) 471-4160                   Email: lghannoum@bakerlaw.com
Email: daniel@slfla.com

Tyler Bean, Esq.                      *Attorneys for Defendant*
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: (212) 532-1091
E: dsmith@sirillp.com
E: mbarney@sirillp.com
E: tbean@sirillp.com

*Attorneys for Plaintiffs*

**<u>AGREED TO BY</u>**:

| | |
|---|---|
| Raymond Dreger | Chad Boyd |
| Date: 10-20-25 | Date: |
| Ralph Maddox | Dawn Davis |
| Date: | Date: |
| Richard Guzman | Tyler Whitmore |
| Date: | Date: |
| Melanie Williams | Laura Robinson |
| Date: | Date: |
| Allison Ryan | Marty Alexander |
| Date: | Date: |
| Stephen Hawes | |

Docusign Envelope ID: 264C95C2-E523-483F-8BEC-A65C0A51EE58

**AGREED TO BY**:

| | |
|---|---|
| _____<br>Raymond Dreger<br><br>Date: | _CHAD BOYD_____<br>Chad Boyd<br><br>Date: |
| _____<br>Ralph Maddox<br><br>Date: | _____<br>Dawn Davis<br><br>Date: |
| _____<br>Richard Guzman<br><br>Date: | _____<br>Tyler Whitmore<br><br>Date: |
| _____<br>Melanie Williams<br><br>Date: | _____<br>Laura Robinson<br><br>Date: |
| _____<br>Allison Ryan<br><br>Date: | _____<br>Marty Alexander<br>Date: |
| _____<br>Stephen Hawes | |

**AGREED TO BY**:

| | |
|---|---|
| _____<br>Raymond Dreger<br><br>Date: | _____<br>Chad Boyd<br><br>Date: |
| _____<br>Ralph Maddox<br><br>Date: 20/10/2025 | _____<br>Dawn Davis<br><br>Date: |
| _____<br>Richard Guzman<br><br>Date: | _____<br>Tyler Whitmore<br><br>Date: |
| _____<br>Melanie Williams<br><br>Date: | _____<br>Laura Robinson<br><br>Date: |
| _____<br>Allison Ryan<br><br>Date: | _____<br>Marty Alexander<br>Date: |
| _____<br>Stephen Hawes | |

**AGREED TO BY**:

| | |
|---|---|
| _____<br>Raymond Dreger<br><br>Date: | _____<br>Chad Boyd<br><br>Date: |
| _____<br>Ralph Maddox<br><br>Date: | _____<br>Dawn Davis<br><br>Date: |
| _____<br>Richard Guzman<br><br>Date: | _____<br>Tyler Whitmore<br><br>Date: |
| _____<br>Melanie Williams<br><br>Date: | _____<br>Laura Robinson<br><br>Date: |
| _____<br>Allison Ryan<br><br>Date: | _____<br>Marty Alexander<br>Date: |
| _____<br>Stephen Hawes | |

**AGREED TO BY**:

| | |
|---|---|
| _____<br>Raymond Dreger<br><br>Date: | _____<br>Chad Boyd<br><br>Date: |
| _____<br>Ralph Maddox<br><br>Date: | _____<br>Dawn Davis<br><br>Date: |
| *Richard G.*<br>_____<br>Richard Guzman<br><br>Date: 10/17/2025 | _____<br>Tyler Whitmore<br><br>Date: |
| _____<br>Melanie Williams<br><br>Date: | _____<br>Laura Robinson<br><br>Date: |
| _____<br>Allison Ryan<br><br>Date: | _____<br>Marty Alexander<br>Date: |
| _____<br>Stephen Hawes | |

**<u>AGREED TO BY</u>**:

| | |
|---|---|
| _____<br>Raymond Dreger<br><br>Date: | _____<br>Chad Boyd<br><br>Date: |
| _____<br>Ralph Maddox<br><br>Date: | _____<br>Dawn Davis<br><br>Date: |
| _____<br>Richard Guzman<br><br>Date: | *Tyler Whitmore*<br>_____<br>Tyler Whitmore<br><br>Date: Oct 17, 2025 |
| _____<br>Melanie Williams<br><br>Date: | _____<br>Laura Robinson<br><br>Date: |
| _____<br>Allison Ryan<br><br>Date: | _____<br>Marty Alexander<br>Date: |
| _____<br>Stephen Hawes | |

**AGREED TO BY**:

| | |
|---|---|
| _____<br>Raymond Dreger<br><br>Date: | _____<br>Chad Boyd<br><br>Date: |
| _____<br>Ralph Maddox<br><br>Date: | _____<br>Dawn Davis<br><br>Date: |
| _____<br>Richard Guzman<br><br>Date: | _____<br>Tyler Whitmore<br><br>Date: |
| Melanie Williams (Oct 16, 2025 09:23:15 CDT)<br>Melanie Williams<br><br>Date:<br><br>10/16/2025 | *Laura Robinson*<br>Laura Robinson (Oct 16, 2025 12:50:51 CDT)<br>Laura Robinson<br><br>Date:<br><br>10/16/2025 |
| Allison Ryan (Oct 16, 2025 15:40:05 PDT)<br>Allison Ryan<br><br>Date:<br><br>10/16/2025 | _____<br>Marty Alexander<br>Date: |
| _____<br>Stephen Hawes | |

**AGREED TO BY**:

| | |
|---|---|
| _____<br>Raymond Dreger<br><br>Date: | _____<br>Chad Boyd<br><br>Date: |
| _____<br>Ralph Maddox<br><br>Date: | _____<br>Dawn Davis<br><br>Date: |
| _____<br>Richard Guzman<br><br>Date: | _____<br>Tyler Whitmore<br><br>Date: |
| _____<br>Melanie Williams<br><br>Date: | _____<br>Laura Robinson<br><br>Date: |
| _____<br>Allison Ryan<br><br>Date: | Signed by:<br>AD21DEEBAB27439<br>Marty Alexander<br>Date: |
| _____<br>Stephen Hawes | |

**AGREED TO BY**:

| | |
|---|---|
| _____<br>Raymond Dreger<br><br>Date: | _____<br>Chad Boyd<br><br>Date: |
| _____<br>Ralph Maddox<br><br>Date: | _____<br>Dawn Davis<br><br>Date: |
| _____<br>Richard Guzman<br><br>Date: | _____<br>Tyler Whitmore<br><br>Date: |
| _____<br>Melanie Williams<br><br>Date: | _____<br>Laura Robinson<br><br>Date: |
| _____<br>Allison Ryan<br><br>Date: | _____<br>Marty Alexander<br>Date: |
| _____<br>Stephen Hawes | |

| Date:<br><br>18/10/2025 | |
|---|---|

By: _____    By: _____

Date: _____    Date: _____

Daniel Srourian, Esq.
SROURIAN LAW FIRM, P.C.
468 N. Camden Drive Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Fax: (213) 471-4160
Email: daniel@slfla.com

Tyler Bean, Esq.
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: (212) 532-1091
E: dsmith@sirillp.com
E: mbarney@sirillp.com
E: tbean@sirillp.com

*Attorneys for Plaintiffs*

Lisa Ghannoum, Esq.
Baker & Hostetler LLP
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Tel: (216) 861-7872
Email: lghannoum@bakerlaw.com

*Attorneys for Defendant*

| Date: | |
|-------|---|

By: _____

Date: _____10/27/25_____

By: _____

Date: __10/16/2025__

Daniel Srourian, Esq.
SROURIAN LAW FIRM, P.C.
468 N. Camden Drive Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Fax: (213) 471-4160
Email: daniel@slfla.com

Tyler Bean, Esq.
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: (212) 532-1091
E: dsmith@sirillp.com
E: mbarney@sirillp.com
E: tbean@sirillp.com

*Attorneys for Plaintiffs*

Lisa Ghannoum, Esq.
Baker & Hostetler LLP
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Tel: (216) 861-7872
Email: lghannoum@bakerlaw.com

*Attorneys for Defendant*

EXHIBIT 1

To: [Class Member Email]
From: [Email]@cptgroup.com
Subject: Notice of Class Action Settlement – In re Progressive Leasing Breach Litigation
Body of Email:

United States District Court for the District of Utah
*In re Progressive Leasing Breach Litigation*
Case No. 2:23-cv-00783

*A federal court has authorized this Notice. This is not a solicitation from a lawyer.*

**If your Private Information was potentially involved in a Data Incident that took place at Prog Leasing, LLC on or around September 11, 2023, you could receive benefits from a class action Settlement.**

**Why did I Receive this Notice?** You received this Notice because Prog Leasing, LLC's ("Prog" or "Defendant") records show that your Private Information was potentially involved in a Data Incident that took place at Prog on or around September 11, 2023 and was announced on or around September 21, 2023, ("Data Incident"). You are being provided this Notice because you have a right to know about a proposed settlement of this class action, and about your rights and options, before the Court decides whether to grant final approval of the Settlement.

**How do I know if I am part of the Settlement?** If you received this Notice, Defendant's records indicate that you are included in the Settlement Class. "Settlement Class" or "Settlement Class Members" means all living individuals residing in the United States who were sent a Notice of Data Incident from Prog indicating their Private Information may have been involved in the Data Incident.

**What Does the Settlement Provide?** The Settlement establishes a $3,250,000 Settlement Fund to be used to pay valid Claims; Settlement Administration Costs; Attorneys' Fee Award and Costs and Service Awards. Settlement Class Members that submit a valid and timely Claim Form may select one or more of the following settlement benefits:

  a. **Documented Losses** – Reimbursement for certain losses that more likely than not resulted from the Data Incident up to $5,000 per individual. You must provide documentation of losses.
  b. **California Statutory Payment** – If you resided in California at the time of the Data Incident, you may elect to receive a statutory cash payment of up to $100. You must provide documentation of your residence in California.
  c. **Residual Cash Payment** – In the alternative to making Claims for Documented Losses and/or Claims for a California Statutory Payment, you may elect to receive a pro rata Cash Payment of up to $400.
  d. **Credit Monitoring** – You may claim (2) two years of three bureau Credit Monitoring services.

**How To Get Benefits.** The only way to receive the above benefits is to submit a Claim Form by [Date]. To submit a Claim Form online, click on Submit Claim and enter your Unique ID [ID] and Passcode [Passcode].

**Submit Claim**

**What are my Legal Rights and Options?**

  • **Submit a Claim Form by [Date]:** To submit an online claim, use the Submit Claim button above. If you prefer to mail in a Claim Form, a downloadable paper version is available at www.[Web Address].com.
  • **Exclude Yourself by [Date]:** If you ask to be excluded, you will not receive any settlement benefits, but you may be able to file your own individual lawsuit against Defendant for the same claims. This is the only option that leaves you the right to file your own lawsuit against Defendant for the claims that are being resolved by the Settlement.
  • **Object by [Date]:** You can remain in the Settlement Class and file an objection telling the Court why you do not like the Settlement. If your objections are overruled, you will be bound by the Settlement.
  • **Do Nothing:** You will not receive any settlement benefits. You will also remain in the Settlement Class and forfeit your right to sue or bring any claim against Defendant related to the Data Incident.

The Court will hold a Final Approval Hearing at [Time], on [Date]. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsel's application for Attorneys' Fee Award and Costs and Service Awards to the Class Representatives. If there are objections, the Court will consider them.

This notice is a summary. The Settlement Agreement and more information about the lawsuit and Settlement are available at www.[Web Address].com. If you have questions, contact the Settlement Administrator at toll-free [Toll-free number] or by email at [Email]@cptgroup.com.

EXHIBIT 2

PRESORTED
First Class
U.S. Postage
PAID

**Court Approved Legal Notice**

United States District Court for the
District of Utah
*In re Progressive Leasing Breach Litigation*
Case No. 2:23-cv-00783

**If your Private Information was potentially
involved in a Data Incident
that took place at Prog Leasing, LLC on or
around September 11, 2023 and announced
on or around September 21, 2023,
you could receive benefits from a class action
Settlement.**

*A federal court has authorized this Notice.
This is not a solicitation from a lawyer.*

**Progressive Leasing Breach Litigation**
c/o CPT Group, Inc.
50 Corporate Park
Irvine, CA 92606

ELECTRONIC SERVICE REQUESTED

Unique ID: «ID»
Passcode: «Passcode»
«FullName»
«Address1» «Address2»
«City», «State» «Zip»

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**In re Progressive Leasing Breach Litigation, Case No. 2:23-cv-00783**
**POSTCARD CLAIM FORM**

Complete and return this Claim Form to receive Residual Cash Payment and/or Credit Monitoring by no later than [Deadline]. To submit a claim for Documented Losses and/or California Statutory Payment, visit the settlement website at www.[Website Address].com.

**Residual Cash Payment**
☐ Check this box if you want to receive a Residual Cash Payment. This cash payment is offered as an alternative to submitting claims for Documented Losses and/or California Statutory Payment which require documentation.

**Credit Monitoring**
☐ Check this box if you want to receive 2 years of Credit Monitoring services. You must provide your email address to receive enrollment instrustions: _____

**Payment** A paper check will be sent to the same address as this Notice. If you prefer an electronic payment such as PayPal, Venmo or Direct Deposit, file your claim at www.[Website Address].com

**Address Change** If your address is different from the preprinted data on the front of this postcard, please print your correct information. Address: _____City:_____State: ____Zip:_____

**Sign and Date Your Claim Form** By signing my name below, I declare under penalty of perjury under the laws of the State of Utah that the information included on this Claim Form for a Residual Cash Payment and/or Credit Monitoring is true and accurate, and I certify that I am eligible to make a claim in this Settlement, and that I am completing this Claim Form to the best of my personal knowledge.

Signature:_____ Printed Name:_____ Date:_____

Email:_____ Phone Number: _____

Unique ID: «ID / Claimant: «FullName»

# EXHIBIT 3

## NOTICE OF PROPOSED CLASS LITIGATION SETTLEMENT

United States District Court for the District of Utah

*In re Progressive Leasing Breach Litigation*
Case No. 2:23-cv-00783

*A federal court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

**If your Private Information was potentially involved in a Data Incident
that took place at Prog Leasing, LLC on or around September 11, 2023, and announced on or around
September 21, 2023, you could receive benefits from a class action Settlement.**

- A Settlement has been reached in a class action lawsuit against Prog Leasing, LLC ("Prog" or "Defendant") alleging an unauthorized user gained access to Defendant's systems on or around September 11, 2023 (the "Data Incident").

- You are a "Settlement Class Member" if you are a living individual residing in the United States who was sent a Notice of Data Incident from Prog indicating your Private Information may have been involved in the Data Incident..

- Defendant has agreed to pay $3,250,000 which will be used to pay for Settlement Class Member Benefits, Settlement Administration Costs, Attorneys' Fee Award and Costs, and Service Awards to the Class Representatives as awarded by the Court.

- Settlement Class Members are eligible to receive credit monitoring services and cash payments for (1) Documented Losses up to $5,000, (2) California Statutory Payment up to $100, or (3) a Residual Cash Payment up to $400, subject to a pro rata adjustment based upon the total number of valid claims.

**This Notice may affect your rights. Please read it carefully.**

| Your Legal Rights and Options | | Deadline |
|---|---|---|
| **DO NOTHING** | You will receive no payment or credit monitoring and will no longer be able to sue Defendant over the claims resolved in the Settlement. You will remain a member of the Settlement Class and be subject to the terms of the Settlement if approved by the Court. | No Deadline |
| **SUBMIT A CLAIM FORM** | The only way to receive a payment or credit monitoring. Claims must be submitted by **[Date]**. | **[Date]** |
| **EXCLUDE YOURSELF** | If you ask to be excluded, you will not receive a cash payment or credit monitoring, but you may be able to file your own lawsuit against Defendant, for the same claims. This is the only option that leaves you the potential to file your own lawsuit against Defendant for the claims that are being resolved by the Settlement. To be effective, you must submit a request for exclusion by the deadline. | **[Date]** |
| **OBJECT** | If you do not exclude yourself from the Settlement Class, you may submit an objection telling the Court why you do not like the Settlement. If your objection is overruled, you will be bound by the Settlement. | **[Date]** |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case must still decide whether to approve the Settlement and the requested

1

Attorneys' Fees Award and Costs and Service Awards. No Settlement benefits or payments will be
provided unless and until the Court approves the Settlement and it becomes final.

## BASIC INFORMATION

### 1. Why is this Notice being provided?

A federal court authorized this Notice because you have the right to know about the Settlement of this class
action lawsuit and about all of your rights and options before the Court decides whether to grant Final Approval
of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available,
who is eligible for the benefits, and how to get them.

The United States District Court for the District of Utah is overseeing this class action. The lawsuit is known
as *In re Progressive Leasing Breach Litigation*, Case No. 2:23-cv-00783. The individuals who filed this lawsuit
are called the "Plaintiffs" and/or "Class Representatives" and the company sued, Prog Leasing, LLC is called
the "Defendant."

### 2. What is this lawsuit about?

This matter is a putative class action (the "Action") alleging a third-party gained unauthorized access to certain
of Defendant's systems, potentially resulting in access to personal information of putative Class Members. The
lawsuit asserts common law claims against Defendant for alleged negligent data security practices and
California statutory claims.

Defendant denies any allegation of wrongdoing and denies that Plaintiffs would prevail or be entitled to any
relief should this matter proceed to be litigated.

### 3. Why is the lawsuit a class action?

In a class action, the Class Representatives sues on behalf of all people who are alleged to have similar claims.
Together, in the context of a settlement like this one, all these people are called a Settlement Class or Settlement
Class Members. One court resolves the issues for all Settlement Class Members, except for those Settlement
Class Members who timely exclude themselves (opt-out) from the Settlement Class.

### 4. Why is there a Settlement?

Plaintiffs and Defendant do not agree about the claims made in this Action. The Action did not go to trial, and
the Court did not decide in Plaintiffs' or Defendant's favor. Instead, Plaintiffs and Defendant agreed to settle
the Action. Plaintiffs and the attorneys for the Settlement Class ("Class Counsel") believe the Settlement is best
for all Settlement Class Members because of the Settlement benefits made available under the Settlement, the
risks and uncertainty associated with continuing the Action, and the nature of the defenses raised by Defendant.

## WHO IS INCLUDED IN THE SETTLEMENT?

### 5. How do I know if I am part of the Settlement?

You are a Settlement Class Member if you are a living individual residing in the United States who was sent a
Notice of Data Incident from Prog indicating your Private Information may have been involved in the Data
Incident. Defendant previously began providing notice of the Data Incident to Class Members on or about

2

October 23, 2023. If you are not sure whether you are a Settlement Class Member, you may contact the Settlement Administrator at [Toll-free number] or by email at [Email address]@cptgroup.com.

| 6. Are there exceptions to being included in the Settlement? |
| --- |

Yes, the following are not included in the Settlement Class: (1) Prog, and any entity in which Prog has a controlling interest, and Prog's parents, successors, subsidiaries, affiliates, and assigns; (2) any judge, justice, or judicial officer presiding over this Action, and the members of their immediate families and judicial staff; (3) any persons who have released claims relating to the Action; and (4) all Settlement Class Members who submit a valid Request for Exclusion prior to the close of the Opt-Out Period.

| 7. What if I am still not sure whether I am part of the Settlement? |
| --- |

If you are still not sure whether you are a Settlement Class Member, you may go to the settlement website at www.[Website address].com or contact the Settlement Administrator's toll-free number at [Toll-free number] or by email at [Email address]@cptgroup.com.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

| 8. What does the Settlement provide? |
| --- |

Under the Settlement, Defendant will establish a settlement fund in the amount of $3,250,000. These funds will be used to pay for all valid Claims made by Settlement Class Members, Settlement Administration Costs, Attorneys' Fees Award and Costs and Service Awards.

Settlement Class Members that submit a valid and timely Claim Form may select one or more of the following settlement benefits:

a. **Reimbursement for Documented Losses:** All Settlement Class Members who submit a claim for reimbursement for documented losses fairly traceable to the Data Incident, if not already reimbursed through any other source, not to exceed $5,000 per Settlement Class Member. To receive a documented loss payment, a Settlement Class Member will be required to submit reasonable documentation supporting the losses. If approved Documented Loss claims exceed the remaining Settlement Fund after all fees, costs, and awards are paid, each claim will be reduced proportionally.

Documented Losses may include, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other misuse of Class Member's Private Information; (ii) costs incurred on or after September 11, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

Settlement Class Members who elect to submit a claim for reimbursement for Documented Losses must submit a claim form with signed verification of their contact information, supporting documentation, a brief description of the loss, and confirmation of whether the Settlement Class Member has been reimbursed from another source. Acceptable proof includes receipts or other third-party records of costs incurred; self-prepared documents alone are not sufficient. No reimbursement will be provided for losses already covered by another source, including identity protection or credit monitoring services previously offered.

b. **California Statutory Payment:** In addition to, or in the alternative to, making Claims for Documented Losses, Settlement Class Members who resided in California at the time of the Data Incident may elect to

3

receive a statutory cash payment of up to $100. Claimants must provide documentation of their residence in California on September 11, 2023. Documentation includes, but is not limited to, utility bills, tax documents, and pay stubs from September 2023 that reflect the Claimant's name and valid California address. If total approved California Statutory Payment claims exceed the remaining Settlement Fund after all fees, costs, and awards are paid, each claim will be reduced proportionally.

c. **Residual Cash Payment:** In the alternative to making Claims for Documented Losses and/or a Claim for a California Statutory Payment, Settlement Class Members may elect to receive a Cash Payment of up to $400. The amount of the payment will be calculated by dividing the funds remaining in the Settlement Fund after payment of approved Claims for Documented Losses, approved claims for Credit Monitoring services, approved Claims for a California Statutory Payment, Settlement Administration Costs, Service Award payments approved by the Court, and Attorneys' Fee Award and Costs awarded by the Court by the number of Settlement Class Members with a Valid Claim, and thus could be less than $400.

**In addition to electing a cash payment, the settlement also provides:**

d. **Credit Monitoring**: All Settlement Class Members may claim (2) two years of three bureau Credit Monitoring services. Credit Monitoring services will include 24 month, 3-bureau credit monitoring with Credit Monitoring & Alerts, CyberScan Dark Web Monitoring, $1M Reimbursement Insurance, Fully Managed Identity Restoration, Member Advisory Services, Lost Wallet Assistance, and immediate support to class members who elect Credit Monitoring services. These services will be made available to all Settlement Class Members who choose to enroll regardless of whether they submit a claim for Documented Losses, California Statutory Payment or a claim for a Residual Cash Payment under the settlement. Enrollment instructions will be provided following final approval of the settlement.

## HOW TO GET BENEFITS FROM THE SETTLEMENT

| 9. **Do I need to submit a claim?** |
|---|

If you would like to receive benefits under the Settlement, you <u>must</u> submit a Claim Form. If you do not want to give up your right to sue Defendant about the Data Incident or the issues raised in this case, you must exclude yourself (or "opt out") from the Settlement Class. See Question 17 below for instructions on how to exclude yourself. If you wish to object to the Settlement, you must (a) remain a Settlement Class Member (*i.e.*, you may not exclude yourself from the Settlement Class by opting out and also object to the Settlement) and (b) submit a written objection. See Question 20 below for instructions on how to submit an objection.

| 10. **How do I get a settlement benefit?** |
|---|

To receive a settlement benefit, you must complete and submit a Claim Form online at www.[Website address].com or by mail to Progressive Leasing Breach Litigation, 50 Corporate Park, Irvine, CA 92606. Read the Claim Form instructions carefully, fill out the Claim Form, provide the required documentation, and submit online or by mail postmarked by [Deadline]. To receive an electronic payment for your valid claim, you must file a claim form online at www.[Website address].com.

| 11. **What am I giving up by receiving settlement benefits or remaining in the Settlement Class?** |
|---|

Unless you timely submit a request for exclusion to exclude yourself (opt-out), you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders will apply to you and

legally bind you. You will not be able to sue or be part of any other lawsuit against Defendant and Released Parties about the legal issues in the Action that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

| 12. What are the Released Claims? |
| --- |

The Settlement Agreement describes the Release in Section XII, in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.[Website address].com, in the public Court records on file in this Action You can also request a copy of the Settlement Agreement be mailed to you by calling or writing to the Settlement Administrator. For questions regarding the Releases or Released Claims and what the language in the Settlement Agreement means, you can also contact one of the lawyers listed in Question 15 for free, or you can talk to your own lawyer at your own expense.

| 13. What happens if my contact information changes after I submit a claim or receive the Notice? |
| --- |

If you change your mailing address or email address after you submit a Claim Form or after you received the Notice, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by writing to:

*Progressive Leasing Breach Litigation*
50 Corporate Park
Irvine, CA 92606
[Email address]@cptgroup.com

| 14. When will I receive my Settlement Benefits? |
| --- |

If you received notice in the mail, or if you file a timely and valid Claim Form, benefits will be provided by the Settlement Administrator approximately 60 days after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.[Website address].com or call the Settlement Administrator or the attorneys in Question 15, below, for updates.

# THE LAWYERS REPRESENTING YOU

| 15. Do I have a lawyer in this case? |
| --- |

Yes, the Court has appointed Daniel Srourian of Srourian Law Firm, P.C., 468 N. Camden Dr., Suite 200, Beverly Hills, California 90210 and Tyler J. Bean of Siri & Glimstad LLP, 745 Fifth Avenue, Suite 500 New York, New York 10151 as Class Counsel to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in the Action.

| 16. How will Class Counsel be paid? |
| --- |

Class Counsel will file a motion asking the Court to award attorneys' fees up to one-third of the Settlement Fund, plus reimbursement of costs. They will also ask the Court to approve Service Awards not to exceed $3,000 to the Class Representatives for their service to the Action . If awarded by the Court, Attorneys' Fee Award and Costs and the Service Awards will be paid out of the Settlement Fund. The Court may award less than these amounts.

A copy of Class Counsel's application for Attorneys' Fee Award and Costs and the Service Awards will be made available on the settlement website at www.[Website address].com before the deadline for submission of objections. You may also request a copy be mailed to you by calling the Settlement Administrator.

## OPTING OUT OF THE SETTLEMENT

If you are a Settlement Class Member and want to keep any right you may have to sue or continue to sue Defendant on your own based on the claims raised in the Action or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from or "opting-out" of the Settlement.

### 17. How do I get out of the Settlement?

To opt-out of the Settlement, you must mail or email a written notice of intent to opt-out, also referred to as a "Request for Exclusion" in the Settlement Agreement. The written notice must be signed by you, include your name, mailing address, and clearly state that you wish to be excluded from the Settlement. You cannot exclude yourself by telephone or email. The opt-out request must be postmarked and sent to the Settlement Administrator at the following address by [Deadline]:

*Progressive Leasing Breach Litigation*
50 Corporate Park
Irvine, CA 92606

### 18. If I opt out, can I get anything from the Settlement?

No. If you opt out, you are telling the Court you do not want to be part of the Settlement. You can only get Settlement benefits if you stay in the Settlement. If you opt out, do not submit a Claim Form.

### 19. If I do not opt out, can I sue the Defendant for the same thing later?

No. Unless you opt-out, you give up any right to sue Defendant and Released Parties for the claims this Settlement resolves and releases relating to the Data Incident. You must opt-out of the Action to start your own lawsuit against the Defendant or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECTING TO THE SETTLEMENT

### 20. How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member, you can tell the Court you do not agree with all or any part of the Settlement or requested Attorneys' Fees Award and Costs and Service Awards. You can also give reasons why you think the Court should not approve the Settlement or Attorneys' Fees Award and Costs and Service Awards. To object, you must mail timely written notice to the Settlement Administrator as provided below no later than [Deadline], stating you object to the Settlement.

The objection must include all the following additional information:

    a.  the name of this Action, *In re Progressive Leasing Breach Litigation*, Case No. 2:23-cv-00783;
    b.  the objector's full name, mailing address, telephone number, and email address (if any);
    c.  all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

d. a statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

e. the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or application for Attorneys' Fee Award and Costs and the Service Awards;

f. a statement of whether the objector and/or his/her attorney(s) intend to appear and/or testify at the Final Approval Hearing

g. a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

h. the number of times the objector, the objector's counsel and/or counsel's law firm has objected to a class action settlement within the 5 years preceding the date of the objection, the caption of each case in which the objection was made, and a copy of any orders related to or ruling upon the prior objections that were issued by the trial and appellate courts in each listed case;

i. the objector's signature (an attorney's signature is not sufficient).

| COURT | CLASS COUNSEL | DEFENDANT'S COUNSEL | SETTLEMENT ADMINISTRATOR |
|---|---|---|---|
| United States District Court for the District of Utah [Address] | Daniel Srourian Srourian Law Firm, P.C. 468 N. Camden Drive Suite 200 Beverly Hills, CA 90210  Tyler Bean Siri & Glimstad LLP 745 Fifth Avenue, Suite 500 New York, New York 10151 | Lisa Ghannoum Baker & Hostetler LLP 127 Public Square Suite 2000 Cleveland, OH 44114 | Progressive Leasing Breach Litigation 50 Corporate Park Irvine, CA 92606 |

To be timely, written notice of an objection in the appropriate form must be mailed, postmarked by no later than [Date] to the Court, Class Counsel, Defendant's Counsel and the Settlement Administrator at the following addresses:

Any Settlement Class Member who fails to comply with the requirements for objecting in the Settlement Agreement waives and forfeits any and all rights they may have to appear separately and/or to object to the Settlement Agreement and will be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Action.

| 21. What is the difference between objecting and asking to opt out? |
|---|

Objecting is simply telling the Court you do not like something about the Settlement or requested Attorneys' Fee Award and Costs and the Service Awards. You can object only if you stay in the Settlement Class (meaning you do not opt-out of the Settlement). Opting out of the Settlement is telling the Court you do not want to be part of the Settlement Class or the Settlement. If you opt-out, you cannot object to the Settlement.

## THE FINAL APPROVAL HEARING

| 22. When and where will the Court decide whether to approve the Settlement? |
|---|

The Court will hold a Final Approval Hearing on [Date/Time] before Judge [Judge] at the [Court address].

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsel's application for their Fees Award and Costs and Service Awards to the Class Representatives. If there are objections, the Court will consider them. The Court may also listen to people who have asked to speak at the hearing. You may attend the hearing at your own expense, or you may pay your own lawyer to attend, but it is not necessary.

<u>Note</u>: The date and time of the Final Approval Hearing are subject to change. Any change will be posted at www.[Website address].com.

<table><tr><td>**23. Do I have to attend to the Final Approval Hearing?**</td></tr></table>

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to come to Court to speak about it. As long as you mail your written objection on time, the Court will consider it.

<table><tr><td>**24. May I speak at the Final Approval Hearing?**</td></tr></table>

Yes, as long as you do not exclude yourself (opt-out), you can (but do not have to) participate and speak for yourself in the Action about the Settlement. This is called making an appearance. You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed in Question 20 and specifically include a statement whether you and your counsel (if any) will appear at the Final Approval Hearing.

## IF YOU DO NOTHING

<table><tr><td>**25. What happens if I do nothing at all?**</td></tr></table>

If you are a Settlement Class Member and you do nothing, you will not receive any Settlement benefits. You will give up rights explained in the "Opting Out from the Settlement" section of this Notice, including your right to start a lawsuit, or be part of any other lawsuit against Defendant or any of the Released Parties about the legal issues in the Action that are released by the Settlement Agreement.

## GETTING MORE INFORMATION

<table><tr><td>**26. How do I get more information?**</td></tr></table>

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.[Website address].com, by calling [Toll-free number] or by writing to:

*Progressive Leasing Breach Litigation*
50 Corporate Park
Irvine, CA 92606
[Email address]@cptgroup.com

**PLEASE DO NOT CALL THE COURT OR IT CLERK'S
OFFICE REGARDING THIS NOTICE**

130241.000001\4933-5386-8148.1

EXHIBIT 4

**Must be postmarked or submitted online NO LATER THAN [DATE]**

*Progressive Leasing Breach Litigation.*
50 Corporate Park
Irvine, CA 92606
www.[Web Address].com

| Claim Form |
|:---:|
| **SETTLEMENT BENEFITS - WHAT YOU MAY GET** |

If you received notice that your Private Information may have been involved in the *Progressive Leasing Breach Litigation* Data Incident that took place on or about September 11, 2023 and if you did not opt out of the settlement, you may submit a claim.

**The easiest way to submit a claim is online at www.[Web Address].com**, or you can complete and mail this Claim Form to the mailing address above.

**You may be eligible for one or more of the following settlement benefits.**

1. **Reimbursement for Documented Losses:** You may submit a claim for reimbursement for documented losses fairly traceable to the Data Incident, if not already reimbursed through any other source, not to exceed $5,000 per individual. To receive a documented loss payment, you must submit reasonable documentation supporting the losses. Documented Losses are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member in responding to notice of the Data Incident or as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information that incurred on or after September 11, 2023 caused by the Data Incident.

2. **California Statutory Payment:** In addition to, or in the alternative to, making Claims for Documented Losses, Settlement Class Members who resided in California at the time of the Data Incident may elect to receive a statutory cash payment of up to $100. You must provide documentation of your residence in California on September 11, 2023.

3. **Residual Cash Payment:** In the alternative to making Claims for Documented Losses and/or Claims for a California Statutory Payment, you may elect to receive a pro rata Cash Payment of up to $400.

   The cash payments above may be reduced on a pro-rata basis depending on the remaining funds in the Settlement Fund after payment of approved Claims, Settlement Administration Costs, Service Award payments approved by the Court, and Attorneys' Fee Award and Costs awarded by the Court.

4. **Credit Monitoring:** You may claim (2) two years of three bureau Credit Monitoring services regardless of whether you submit a claim for Documented Losses, California Statutory Payment and/or a claim for a Residual Cash Payment under the Settlement. Enrollment instructions will be provided following final approval of the settlement

**Claims must be submitted online or mailed by [DATE]. Use the address at the top of this form for mailed claims.**

For more information and complete instructions visit www.[Web Address].com.

**Settlement benefits will be distributed after the Settlement is approved by the Court and final.**

1

| Your Information |
|---|

*This information will be used solely to contact you and to process your claim. It will not be used for any other purpose. If any of the following information changes, you must promptly notify us by emailing [Email]@cptgroup.com.*

First Name

Last Name

Mailing Address

City

State

ZIP Code

Phone Number

Email Address

Unique ID (as shown on the notice you received)

| Cash Payment |
|---|

You can submit a claim for one or more of following cash payments: Reimbursement for Documented Losses, California Statutory Payment and Residual Cash Payment.

**1. Reimbursement for Documented Losses**: You may receive reimbursement for documented losses up to $5,000 total, if you lost or spent money trying to prevent or recover from fraud or identity theft that is fairly traceable to the Data Incident and have not been reimbursed already.

**Examples of Documented Losses include:** (i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other misuse of your Private Information; (ii) costs incurred on or after September 11, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

**Examples of supporting documentation include (but are not limited to)**: (i) credit card statements; (ii) bank statements; (iii) invoices; (iv) telephone records; and (v) receipts. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. You will not be reimbursed for expenses if you have been reimbursed for the same expenses by another source, including identity protection or credit monitoring services previously offered.

To obtain reimbursement under Documented Losses, attach the supporting documentation, provide a brief description of the loss, and confirmation of whether you have been reimbursed from another source.

| Date | Description of Documented Losses and Supporting Documents | Amount |
|------|-----------------------------------------------------------|--------|
|      |                                                           |        |
|      |                                                           |        |
|      |                                                           |        |

**2. California Statutory Payment:** If you resided in California at the time of the Data Incident, you may elect to receive a statutory cash payment of up to $100. You must  provide documentation of your residence in California on September 11, 2023. Examples of documentation includes, but is not limited to: (i) utility bills; (ii)  tax documents, and (iii) pay stubs from September 2023 that reflect your name and valid California address.

☐   Check this box to receive a California Statutory Payment.

To obtain reimbursement a California Statutory Payment, attach the supporting documentation and provide a brief description of the document.

| Date | Description of Supporting Documents |
|------|-------------------------------------|
|      |                                     |

**3. Residual Cash Payment**: In the alternative to making Claims for Documented Losses and/or Claims for a California Statutory Payment, you may elect to receive a pro rata Cash Payment of up to $400.

☐   Check this box to receive a Residual Cash Payment.

## Credit Monitoring Services

Credit Monitoring services will include 24 month, 3-bureau credit monitoring with Credit Monitoring & Alerts, CyberScan Dark Web Monitoring, $1M Reimbursement Insurance, Fully Managed Identity Restoration, Member Advisory Services, Lost Wallet Assistance, and immediate support to class members who elect Credit Monitoring services.

☐   Check this box to receive two (2) years of free Credit Monitoring services.

## How You Will Receive Your Payment

If you make a claim for a cash payment using this Claim Form, you will receive your payment by check. To receive an electronic payment, submit your claim online at www.[Web Address].com.

## Attestation & Signature

I declare under penalty of perjury that the information supplied in this Claim Form is true and correct to the best of my knowledge. I understand that I may be asked to provide more information by the Settlement Administrator before my claim is complete and valid.

_____     Date: _____ - _____ - _____
Signature                                                                          MM        DD        YYYY

# EXHIBIT 5

_____

### THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH

_____

*In re Progressive Leasing Breach Litigation*

|  |  |
|---|---|

**Case No.: 2:23-cv-00783**

**District Judge David Barlow**
**Magistrate Judge Cecilia M. Romero**

### [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF

### CLASS ACTION SETTLEMENT

This matter came before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement (the "Motion"). Plaintiffs, individually and on behalf of the proposed Settlement Class, and Defendant Prog Leasing, LLC ("Defendant" or "Prog") have entered into a Settlement Agreement (also referred to herein as the "Settlement") that settles the above-captioned Action.

Multiple putative class actions were filed against Prog between the dates of October 27, 2023, and November 15, 2023 arising from Prog's Data Incident. On January 10, 2024 this Court issued its order consolidating these matters and on April 19, 2024, Plaintiffs filed their Consolidated Class Action Complaint. (ECF 39). In the Consolidated Complaint, Plaintiffs alleged several causes of action: negligence, breach of implied contract, declaratory judgment, and violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150 et seq. (*Id.)* Plaintiffs

allege that Prog failed to safeguard Plaintiffs' and Class Members' personal information. Plaintiffs also allege that, as a result of the Data Incident, Plaintiffs and Settlement Class Members suffered ascertainable losses, including (without limitation) (i) lost or diminished value of their information; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) the disclosure of their private information, and (v) the continued and certainly increased risk to their information.(*See id.* ¶¶ 19.) Plaintiffs and the putative class sought monetary and equitable relief. Defendant denies the allegations in the Lawsuit. On January 16, 2025, the Court dismissed Count II (Breach of Implied Contract) and Count III (Declaratory Judgement) and held that Plaintiffs do not have standing to seek injunctive relief. (ECF No. 69.) After prolonged arm's-length settlement negotiations, the Parties reached the Settlement and seek preliminary approval of the same.

WHEREAS, Plaintiffs, on behalf of the proposed Settlement Class Members, having made an unopposed motion for an order preliminarily approving a settlement in accordance with the Settlement Agreement filed on October 20, 2025 and attached as Exhibit A to the Motion, which, together with the Exhibits attached thereto, set forth the terms and conditions for a proposed settlement;

WHEREAS, the Court, having read and considered the Settlement Agreement and the exhibits attached thereto; and

WHEREAS, unless otherwise defined, all terms used herein have the same meanings as set forth in the Settlement Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     The Court has reviewed the Settlement Agreement and does hereby preliminarily
approve the Settlement set forth therein as fair, reasonable, and adequate, subject to further
consideration at the Final Approval Hearing described below.

2.     Pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) and for purposes of
this Settlement only, the Court grants provisional certification to the following Settlement Class:

> **The Settlement Class**: All living individuals residing in the United States who
> were sent a Notice of Data Incident from Prog indicating their Private Information
> may have been involved in the Data Incident.

> **California Subclass:** All living individuals in the United States who were sent a
> Notice of Data Incident and are verified to have resided in the State of California
> on September 11, 2023.

Excluded from the Settlement Class are (1) Prog, and any entity in which Prog has a controlling
interest, and Prog's parents, successors, subsidiaries, affiliates, and assigns; (2) any judge, justice,
or judicial officer presiding over this Action, and the members of their immediate families and
judicial staff; (3) any persons who have released claims relating to the Action; and (4) all
Settlement Class Members who submit a valid Request for Exclusion prior to the close of the Opt-
Out Period. The Settlement Class may include as many as 216,000 individuals—each, a Settlement
Class Member.

3.     The Court provisionally finds, for settlement purposes only, that: (a) the Settlement
Class is so numerous that joinder of all Settlement Class Members would be impracticable; (b)
there are issues of law and fact common to the Settlement Class; (c) the claims of the Settlement
Class Representative are typical of and arise from the same operative facts and seek similar relief
as the claims of the Settlement Class Members; (d) the Settlement Class Representative and
Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class
as the Settlement Class Representative has no interest antagonistic to or in conflict with the

Settlement Class and has retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class; (e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy.

4.    For the purposes of the settlement only, Plaintiffs Raymond Dreger, Chad Boyd, Ralph Maddox, Dawn Davis, Richard Guzman, Tyler Whitmore, Melanie Williams, Laura Robinson, Allison Ryan, Marty Alexander, and Stephen Hawes are certified as the Class Representatives.

5.    The Court finds that the following counsel are experienced and adequate counsel and are hereby provisionally designated as Settlement Class Counsel under Federal Rule of Civil Procedure 23(a)(4): Daniel Srourian of Srourian Law Firm, P.C. and Tyler J. Bean of Siri & Glimstad LLP.

6.    The Court preliminarily finds that the proposed settlement should be approved as: (a) the result of serious and extensive arm's-length and non-collusive negotiations; (b) falling within a range of reasonableness warranting final approval; (c) having no obvious deficiencies; and (d) warranting notice of the proposed settlement to Settlement Class Members and further consideration of the settlement at the Final Approval Hearing described below.

7.    The Final Approval Hearing shall be held before this Court on _____ _____, 2025 at _____ . at the Orin G. Hatch United States District Court, District of Utah, 351 South West Temple, Salt Lake City, Utah 84101. At this hearing, the Court will determine: (a) whether the proposed settlement on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate to the Settlement Class and should be approved by the

Court; (b) whether the [Proposed] Final Judgment and Order as provided under the Settlement Agreement should be entered; (c) whether the Settlement Class should be finally certified for purposes of the settlement; (d) whether Plaintiffs and proposed Class Counsel should be finally appointed as Class Representatives and Class Counsel; (e) the amount of attorneys' fees, costs, and expenses that should be awarded to Class Counsel; and (f) any Service Awards to the Class Representatives that should be awarded. The Court will also hear any objections by Settlement Class Members to (a) the settlement; (b) the award of attorneys' fees and costs to Class Counsel; (c) Service Awards to the Class Representatives, as well as consider such other matters the Court deems appropriate.

8.      The Court approves, as to form and content, the use of the Claim Form in a form substantially similar to those attached as Exhibit 4 to the Settlement Agreement;

9.      The Court approves as to form and content the Long Form Notice to be posted on the Settlement Website and shall be available to Settlement Class members by mail upon request to the Settlement Administrator attached as Exhibit 3 to the Settlement Agreement

10.     The Court approves as to form and content, the Email Notice and Postcard Notice, substantially similar to those attached as Exhibits 1 and 2 to the Settlement Agreement.

11.     The Court finds that the mailing and distribution of the Class Notice substantially in the manner and form set forth in the Settlement Agreement, attached as Exhibits 1 and 2 to the Motion: (a) constitute the best notice to Settlement Class Members practicable under the circumstances; (b) are reasonably calculated, under the circumstances, to describe the terms and effect of the Settlement Agreement and of the settlement and to apprise Settlement Class Members of their right to object to the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive such notice; and (d) satisfies all applicable

5

requirements of Federal Rule of Civil Procedure 23(c)(2) and (e), the Due Process Clauses under the United States Constitution, the Rules of this Court, and other applicable laws.

12.     CPT Group is hereby appointed as the Settlement Administrator, to supervise and administer the notice procedure, as well as the processing of claims as more fully set forth below.

13.     No later than 30 days after entry of the Preliminary Approval Order (the "Notice Completion Deadline"), the Settlement Administrator will notify Settlement Class Members of the settlement with the Email and Postcard Notices, substantially similar to the forms attached to the Settlement Agreement as Exhibits 1 and 2, by U.S. mail or email to all Settlement Class Members to whom Prog previously mailed notice of the Data Incident. The Settlement Administrator will establish and maintain a Settlement Website throughout the Claims Period, which will contain the Long Form Notice and the Claim Form to either submit online or download and mail to the Settlement Administrator before the Claims Deadline. The Settlement Administrator will also maintain a toll-free telephone number and P.O. Box through which Settlement Class Members can seek additional information regarding the Settlement.

14.     Settlement Class Members who wish to submit a Claim in the Settlement shall complete and submit a Claim Form in accordance with the instructions contained therein. Any such claim must be postmarked or submitted electronically no later than 15 days before the initially scheduled final approval hearing set forth in paragraph 7 above.

15.     The Claim Forms submitted by each Settlement Class Member must: (a) be properly completed, signed, and submitted in a timely manner in accordance with the preceding paragraph; (b) be accompanied by adequate supporting documentation, as required by and as specified in the Settlement Agreement; and (c) be complete and contain no deletions or modifications of any of the printed matter contained therein.

16.     Any Settlement Class Member who files a Claim Form shall reasonably cooperate with the Settlement Administrator, including by promptly responding to any inquiry made by the Settlement Administrator, if applicable. Any Settlement Class Member who does not timely submit a Claim Form within the time provided in the Settlement Agreement (except those Settlement Class Members who opt-out) are barred from receiving any benefits under the Settlement Agreement and shall be bound by the Settlement Agreement, the Final Judgment and Order, and the Releases therein, unless otherwise ordered by the Court.

17.     Settlement Class Members will have no later than 60 days from the date the Notice is issued to decide whether to exclude themselves from the Settlement. Any Settlement Class Member wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the Settlement Administrator at the address provided in the Notice. A written opt-out notice must include an individual signature and state the name, address, and phone number of the person seeking exclusion, as set forth in the Settlement Agreement. A written opt-out notice must also clearly manifest a person's intent to be excluded from the Settlement Class. To be effective, a written opt-out notice must be postmarked no later than 60 days from the date the Notice is issued. Settlement Class Members who exclude themselves from the Settlement shall not be eligible to receive any benefits of and/or be bound by the terms of the Settlement Agreement.

18.     Any Settlement Class Member may appear in person or through counsel, at his or her own expense, at the Final Approval Hearing to object to the Settlement. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice, and the Settlement Class Member must not have opted-out of the Settlement Class. If submitted by mail, an objection shall be deemed to have been submitted

7

when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label. For an objection to be valid, the objection must also set forth:

    a.    the name of the proceedings;

    b.    the objector's full name, mailing address, telephone number, and email address (if any);

    c.    all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

    d.    a statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

    e.    the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

    f.    a statement of whether the objector and/or his/her attorney(s) intend to appear and/or testify at the Final Approval Hearing;

    g.    a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

    h.    the number of times the objector, the objector's counsel and/or counsel's law firm has objected to a class action settlement within the 5 years preceding the date of the objection, the caption of each case in which the objection was made, and a copy of any orders related to or ruling upon the prior objections that were issued by the trial and appellate courts in each listed case; and

    i.    the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Prog's Counsel may conduct expedited, limited discovery on any objector or objector's counsel. Any Settlement Class Member who fails to object in this manner will be deemed to have waived and forfeited any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and the Settlement Class Member shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Lawsuit.

19.     All opening briefs and documents in support of any application by Plaintiffs and proposed Class Counsel for Service Awards to Class Representatives and attorneys' fees and costs shall be filed and served by no later than 14 days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement Agreement. Plaintiffs shall file a Motion for Final Approval of the Class Action Settlement no later than 14 days prior to the Final Approval Hearing.

20.     At or after the Final Approval Hearing, the Court shall determine whether any applications for the Service Awards and an award of attorneys' fees and costs should be approved. The Court reserves the right to enter a Final Judgment and Order approving the Settlement regardless of whether it has granted same.

21.     All reasonable expenses incurred in identifying and notifying Settlement Class Members, as well as administering the settlement, shall be paid from the Settlement Fund, as set forth in the Settlement Agreement.

22.     Neither this Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Prog of the truth of any of the allegations in the Lawsuit, or of any liability, fault, or wrongdoing of any kind. Nor does this Order or the Settlement Agreement constitute Prog's

admission or concession on the propriety of this case proceeding as, and being certified as, as class action if final approval of the Settlement is not secured.

23.      The Court reserves the right to adjourn the date of the Final Approval Hearing without further notice to the Settlement Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed settlement. The Court may approve the settlement, with such modifications as may be agreed to by the Parties to the Settlement Agreement, if appropriate, without further notice to the Settlement Class.

24.      If the Settlement Agreement is not approved or consummated for any reason whatsoever, the Settlement Agreement and settlement and all proceedings had in connection therewith shall be without prejudice to the rights of the parties to the Settlement Agreement status quo ante.

25.      Until otherwise ordered by the Court, the Court shall continue to stay all proceedings in the Action other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement. The Court retains continuing and exclusive jurisdiction over the implementation, enforcement, and administration of the Settlement and this Preliminary Approval Order.

IT IS SO ORDERED.

Date: _____          _____

Judge, David Barlow

# EXHIBIT 6

---

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

---

| | |
|---|---|
| *In re Progressive Leasing Breach Litigation* | **[PROPOSED] FINAL APPROVAL ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>**Case No.: 2:23-cv-00783**<br><br>**District Judge David Barlow**<br>**Magistrate Judge Cecilia M. Romero** |

Before the Court is Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Memorandum of Law in Support requesting that the Court enter an Order granting final approval of the class action settlement involving Plaintiffs Raymond Dreger, Chad Boyd, Ralph Maddox, Dawn Davis, Richard Guzman, Tyler Whitmore, Melanie Williams, Laura Robinson, Allison Ryan, Marty Alexander, and Stephen Hawes, (collectively "Plaintiffs" or "Class Representatives") and Defendant Prog Leasing, LLC ("Defendant" or "Prog") as fair, reasonable and adequate.

Having reviewed and considered the Settlement Agreement and Plaintiffs' Motion, and having conducted a Final Approval Hearing, the Court makes the findings and grants the relief set forth below approving the settlement upon the terms and conditions set forth in this Final Judgment and Order.

**THE COURT** not being required to conduct a trial on the merits of the case or determine with certainty the factual and legal issues in dispute when determining whether to approve a proposed class action settlement; and

**THE COURT** being required under Federal Rule of Civil Procedure 23(e) to make the findings and conclusions hereinafter set forth for the limited purpose of determining whether the settlement should be approved as being fair, reasonable, adequate and in the best interests of the Settlement Class Members;

**IT IS ON THIS _____ day of _____, 2025,**

**ORDERED** that:

1.      Unless otherwise noted, words in this Final Judgment and Order with initial capital letters have the same meaning as set forth in the Settlement Agreement.

2.      On October [insert], 2025, the Court entered an Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order"), which, among other things: (a) approved the Class Notice to the Settlement Class, including approval of the form and manner of notice set forth in the Settlement Agreement; (b) provisionally certified a class in this matter, including defining the Settlement Class; (c) appointed Plaintiffs as the Class Representatives and appointing Daniel Srourian of Srourian Law Firm, P.C. and Tyler J. Bean of Siri & Glimstad LLP as Class Counsel; (d) preliminarily approved the settlement; (e) set deadlines for opt-outs and objections; (f) approved and appointed the Settlement Administrator; and (g) set the date for the Final Approval Hearing.

3.      In the Preliminary Approval Order, pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(e) the Court defined the Settlement Class and the Settlement subclass for settlement purposes only. The Court defined the Settlement classed as follows:

> **The Settlement Class**: All living individuals residing in the United States who were sent a Notice of Data Incident from Prog indicating their Private Information may have been involved in the Data Incident.

130241.000001\4925-9345-3428.1

**California Subclass:** All living individuals in the United States who were sent a Notice of Data Incident and are verified to have resided in the State of California on September 11, 2023.

Excluded from the Settlement Class are (1) Prog, and any entity in which Prog has a controlling interest, and Prog's parents, successors, subsidiaries, affiliates, and assigns; (2) any judge, justice, or judicial officer presiding over this Action, and the members of their immediate families and judicial staff; (3) any persons who have released claims relating to the Action; and (4) all Settlement Class Members who submit a valid Request for Exclusion prior to the close of the Opt-Out Period. The Settlement Class may include as many as 216,977 individuals—each, a Settlement Class Member.

4.      The Court, having reviewed the terms of the Settlement Agreement submitted by the Parties, grants final approval of the Settlement Agreement and certifies the Settlement Class and the California Subclass as defined herein and in the Preliminary Approval Order, and finds that the settlement is fair, reasonable, and adequate and meets the requirements of Federal Rule of Civil Procedure 23(e).

5.      The Settlement Agreement provides, in part, and subject to a more detailed description of the settlement terms in the Settlement Agreement, for:

a. The establishment of a Settlement Fund in the amount of Three Million Two Hundred and Fifty Thousand Dollars ($3,250,000.00).

b. A process by which Settlement Class Members who submit valid and timely Claim Forms to the Settlement Administrator will receive twenty-four months of credit monitoring and identity-protection services free of charge.

c. A process by which Settlement Class Members who submit valid and timely Claim Forms with supporting documentation to the Settlement Administrator are eligible to receive compensation for unreimbursed losses up to a total of $5,000 that will be evaluated by the Claims Administrator.

3

d. A process by which Settlement Class Members who resided in California at the time of the Data Incident may elect to receive a California Statutory Payment of up to $100 on a claims-made basis.

And finally, in the alternative to making Claims for Documented Losses and/or Claims for a California Statutory Payment, Settlement Class Members may elect to receive a Cash Payment of up to $400 on a claims-made basis.

e. A process by which pro rata determinations required under the Settlement Agreement shall be performed by the Settlement Administrator upon notice to Class Counsel and Prog's Counsel. In the event that the aggregate amount of all Settlement payments does not exceed the Net Settlement Fund, and the remaining amount is not de minimis (as determined by Class Counsel and Prog's Counsel based on calculations provided by the Settlement Administrator), then each Settlement Class Member who elected and is entitled to receive a Cash Payment shall receive funds increased on a pro rata basis so that the Net Settlement Fund is depleted. If pro rata increases to the Cash Payment are made pursuant to the Settlement Agreement, under no circumstances shall a Settlement Class Member receive more than $400.

f. All costs of class notice and claims administration shall be paid out of the Settlement Fund.

g. Court-approved Service Awards in the amount of $3,000 to each Class Representative shall be paid out of the Settlement Fund.

h. Court-approved attorneys' fees to Class Counsel in the amount of one-third of the Settlement Fund and reimbursement of reasonable documented litigation expenses, separate from any benefits provided to Settlement Class Members and the costs of notice and settlement administration and separate from any Service Awards to Class Representatives, shall be paid out of the Settlement Fund.

6.      Pursuant to the notice requirements in the Settlement Agreement and the Preliminary Approval Order, the Claims Administrator provided Notice to Settlement Class Members in compliance with the Settlement Agreement, due process, and Rule 23 of the Federal Rules of Civil Procedure. The Notice:

a. Fully and accurately informed Settlement Class Members about the Action and the existence and terms of the Settlement Agreement;

b. Advised Settlement Class Members of their right to request exclusion from the settlement and provided sufficient information so that Settlement Class Members were able to decide whether to accept the benefits offered, opt out and pursue their own remedies, or object to the proposed settlement;

c. Provided procedures for Settlement Class Members to file written objections to the proposed settlement, to appear at the Final Approval Hearing, and to state objections to the proposed settlement; and

d. Provided the time, date, and place of the Final Approval Hearing

7.      The terms of the Settlement Agreement are fair, reasonable, and adequate, and are hereby approved, adopted, and incorporated by the Court. The Parties, their respective attorneys, and the Claims Administrator are hereby directed to consummate the Settlement in accordance with this Order and the terms of the Settlement Agreement.

8.      Notice of the Final Approval Hearing and the proposed Motion for Attorneys' Fees, Costs, Expenses, and Service Awards have been provided to Settlement Class Members as directed by this Court's orders.

9.       The Court finds that such notice as therein ordered constituted the best practicable notice under the circumstances, apprised Settlement Class Members of the pendency of the action, gave them an opportunity to opt out or object, complied with the requirements of Federal Rule of Civil Procedure 23(c)(2), and satisfied due process under the United States Constitution, and other applicable law.

10.     As of the final date of time for opting out of the Settlement, [insert] Settlement Class Member has submitted a valid request to be excluded from the settlement. [The names of those persons are set forth in Exhibit A to this Order]. Those persons are not bound by this Final Judgment and Order, as set forth in the Settlement Agreement.

11.     The Court has considered all the documents filed in support of the settlement, and has fully considered all matters raised, all exhibits and affidavits filed, all evidence received at the

130241.000001\4925-9345-3428.1

Final Approval Hearing, all other papers and documents comprising the record herein, and all oral arguments presented to the Court.

12.    The Court awards Class Counsel $1,083,333.33 (one-third of the Settlement Fund) in reasonable fees, and $[insert] in reimbursement of costs and expenses. The Court finds this amount to be fair and reasonable. Payment shall be made from the Settlement Fund pursuant to the procedures in the Settlement Agreement.

13.    The Court awards a Service Award of $3,000 to each of the named Class Representatives. The Court finds these amounts are justified by the Class Representatives' service to the Settlement Class. Payment shall be made from the Settlement Fund pursuant to the procedures in the Settlement Agreement.

14.    As of the Effective Date, Plaintiffs and Settlement Class Members and each and every of their respective past, present, and future heirs, beneficiaries, dependents, spouses, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities in consideration of the relief set forth in the Settlement Agreement, fully and finally release Defendant and each and every of its past, present, and future assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, departments, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, retail partners, benefit plans, predecessors, successors, vendors, managers, administrators, executors, and trustees, from any and all actual, potential, filed or unfiled, known or unknown, fixed or contingent, claimed or unclaimed, asserted or unasserted, liquidated or unliquidated, existing or potential, suspected or unsuspected claims, demands, liabilities, rights, suits, causes of action, obligations, damages, punitive, exemplary or multiplied damages, expenses, costs, losses, attorneys' fees and/or obligations, and remedies of any kind or description, whether in law or in equity, accrued or unaccrued, direct, individual or representative, joint or several, of every nature and description whatsoever, based on any federal, state, local, statutory or common law, whether in tort, contact or quasi-contract, or based on any regulation, rule or any other law, against the Released Parties, or any of them, arising out of or relating to actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements,

130241.000001\4925-9345-3428.1

representations, omissions or failures to act that the Releasing Parties had or have, that have been or could have been asserted in the Consolidated Class Action Complaint, or that otherwise relate in any way to or arise from the Data Incident. The claims released in this paragraph are referred to as the "Released Claims," and the parties released are referred to as the "Released Parties."

15.    Plaintiffs and the Settlement Class Members waive any principles of law similar to and including Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

16.    Plaintiffs and the Settlement Class Members agree that Section 1542 and all similar federal or state laws, rules, or legal principles of any other jurisdiction are knowingly and voluntarily waived in connection with the claims released in the Settlement Agreement and agree that this is an essential term of the Settlement Agreement. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to fully, finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims that they may have, as that term is defined in this Paragraph.

17.

18.    In no event shall the Settlement Agreement, any of its provisions, or any negotiations, statements, or proceedings relating to it be offered or received as evidence in the Lawsuit or in any other proceeding, except in a proceeding to enforce the Settlement Agreement (including its Release).

19.    Released Claims shall not include the claims of those persons identified in Exhibit A to this Order who have timely and validly requested exclusion from the Settlement Class.

20.    The Settlement Agreement and this Final Approval Order and Judgment, and all documents, supporting materials, representations, statements and proceedings relating to the

settlement, are not, and shall not be construed as, used as, or deemed evidence of, any admission by or against Defendant of liability, fault, wrongdoing, or violation of any law, or of the validity or certifiability for litigation purposes of the Settlement Class or any claims that were or could have been asserted in the Action.

21.    The Settlement Agreement and this Final Approval Order and Judgment, and all documents, supporting materials, representations, statements and proceedings relating to the settlement shall not be offered or received into evidence, and are not admissible into evidence, in any action or proceeding, except that the Settlement Agreement and this Final Approval Order and Judgment may be filed in any action by any Defendant or the Settlement Class Members seeking to enforce the Settlement Agreement or the Final Approval Order and Judgment.

22.    If the Settlement Agreement is not approved or consummated for any reason whatsoever, the Settlement Agreement and settlement and all proceedings had in connection therewith shall be without prejudice to the rights of the parties to the Settlement Agreement status quo ante.

23.    The matter is hereby dismissed with prejudice and without costs except that the Court reserves jurisdiction over the consummation and enforcement of the settlement.

24.    The Court reaffirms the appointment of CPT Group as the Settlement Administrator.

25.    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and the Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

26.    In accordance with Federal Rule of Civil Procedure 23, this Final Judgment and Order resolves all claims against all parties in this action and is a final order. There is no just reason to delay entry of final judgment in this matter, and the Clerk is directed to file this Final Judgment and Order in this matter.

**IT IS SO ORDERED**

130241.000001\4925-9345-3428.1

SO ORDERED on _____, 2025

By: _____

United States District Judge

**EXHIBIT A Opt-Out List**


**(To Be Completed Before Final Approval Hearing)**

EXHIBIT 2

_____

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH
_____

*In re Progressive Leasing Breach Litigation*

**Case No.: 2:23-cv-00783**

**District Judge David Barlow**
**Magistrate Judge Cecilia M. Romero**

## DECLARATION OF DANIEL SROURIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELMINARY APPROVAL OF SETTLEMENT

I, **Daniel Srourian,** declare under penalty of perjury as follows:

1. I am an attorney duly admitted to the Bar of the state of California. I am the founder and member of the law firm Srourian Law Firm, P.C., proposed Class Counsel for Plaintiffs and Settlement Class Members in the above-referenced action. I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

2. Plaintiffs, on behalf of themselves and all other members of the putative class ("Plaintiffs"), and Defendant (collectively, the "Parties") have reached an agreement to settle this Action pursuant to the terms of the Settlement Agreement (also referred to as the "Settlement").[1]

3. The Settlement provides substantial benefits to the Settlement Class, including significant monetary benefits, extensive identity theft protection and credit monitoring.

_____

[1] All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

4. The proposed Settlement was agreed to following extensive arm's-length settlement discussions between the Parties, including a full-day, in-person mediation session assisted by highly respected mediator Michael N. Ungar, Esq. as well as multiple subsequent phone calls, emails, and information exchanges after the mediation.

5. By the time the Settlement was reached, Plaintiffs and Plaintiffs' Counsel were well informed of the strengths and weaknesses of the Action. Indeed, the Settlement was achieved only after a thorough pre-complaint investigation that culminated in the preparation of detailed complaints; the exchange and consideration of relevant formal and informal discovery; the briefing of Defendant's motion to dismiss; preparation of a detailed mediation statement that included a proposed settlement term sheet; numerous discussions with Plaintiffs concerning possible settlement terms and potential improvements to offers made by Defendant; and intense settlement negotiations that included an exchange of information between the Parties about the Data Incident, potential damages, and the input of Plaintiffs.

6. It is my opinion that the Settlement is fair, reasonable, and adequate considering the significant benefits to the Settlement Class as well as the risks and delays attendant to further protracted litigation. This view is informed by my decades of work litigating complex actions. Furthermore, the proposed Notices are plain and easily understood, and the Notice Program is designed to comply with due process and inform as many Settlement Class Members of the Settlement as possible.

7. I have extensive experience in the successful litigation of class actions, including data breach class actions. Indeed, I or my firm, Srourian Law Firm, P.C., has served as lead or co-lead counsel in consumer class actions in both state and federal courts. For example, I or the firm were appointed lead counsel in the following cases: *Malinowski et al. v. International Business Machine*

*Corporation, et al.* (7:23-cv-08421-NSR) (S.D. New York), a national data breach involving approximately 500,000 individuals, and *Conifer et al. v. Conifer Revenue Cycle Solutions, LLC, et al.* (2:23-CV-01987 AB), a national data breach involving approximately 100,000 individuals. Additionally, Srourian Law Firm has been appointed to the Plaintiff's Steering/Executive Committee for the class action data breach cases *Cain et al v. CGM, L.L.C* (1:23-cv-02604) (N.D. Georgia), *Hahn et al. v. Phoenician Medical Center, Inc.* (CV2023-010982) (Superior Court of the State of Arizona, County of Maricopa), *Dudurkaewa v. Midfirst Bank and Midland Financial Co.* (5:23-cv-00817-R) (W.D. Oklahoma), *Trottier v. Sysco Corporation* (4:23-cv-01818) (S.D. Texas), *Mathis v. Planet Home Lending, LLC* (3:24-cv-00127) (D. Conn.), *Gambino v. Berry, Dunn, McNeil & Parker, LLC* (2:24-cv-00146) (D. Maine), and *Tambroni v. WellNow Urgent Care, P.C.* (1:24-cv-01595) (N.D. Illinois) *See* Resume of Srourian Law Firm, P.C., attached hereto as **Exhibit A.**

8. Additionally, Mr. Bean, additional proposed Settlement Class Counsel, and his firm have extensive experience in the successful litigation and settlement of class actions, particularly in the area of data privacy. *See* Firm Resume of Siri & Glimstad LLP, attached hereto as **Exhibit B.**

I declare under penalty of perjury that the foregoing is true and correct.

Date: October 20, 2025

*/s/ Daniel Srourian*_____
Daniel Srourian (*pro hac vice*)
SROURIAN LAW FIRM, P.C.
468 N. Camden Dr., Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
Fax: (213) 471-4160
daniel@slfla.com

*Proposed Settlement Class Counsel and Attorneys for Plaintiffs*

3

# EXHIBIT A





**WWW.SLFLA.COM**

**P:** 213.474.3800

**F:** 213.471.4160

**LOS ANGELES**

3435 Wilshire Blvd. Suite 1710

Los Angeles, CA 90010

**ORANGE COUNTY**

1503 South Cost Drive, Suite 210

Costa Mesa, California 92626

## OUR FIRM

Based in Los Angeles, Srourian Law Firm, P.C. handles complex civil and employment matters with an emphasis on data privacy, wage and hour, and employment matters.

Lead attorney Daniel Srourian, Esq. began the firm in 2013 exclusively litigating class actions on behalf of employees and consumers across the country, having recovered over $25 million as lead counsel on over 100 class action lawsuits to date. Mr. Srourian has also obtained two multi-million dollar verdicts in the two cases he has tried to a jury, including the 50th largest jury trial verdict in the State of California in 2016.

Mr. Srourian has been named a Rising Star by Super Lawyers Magazine for eight consecutive years. He currently serves as counsel of record in over 40 pending data breach class action suits.

## REPRESENTATIVE AND NOTABLE CLASS ACTION CASES

**Guerrero v. Ruth's Chris Hospitality Group, et al.,** Riverside County Superior Court. Class action on behalf of over 3,000 employees of a national restaurant for unpaid minimum and overtime wages, meal and rest break premiums, and associated penalties under California law. Case settled in 2022 for $6,000,000.00 with Preliminary Approval pending.

**McLemore v. Nautilus Hyosung America, Inc.,** United Stated District Court, Central District of California, Class action seeking minimum wage and overtime compensation for on-call time, break premiums, wage statement penalties, among other penalties, for engineers employed by defendant throughout the country. Plaintiffs' counsel. Case settled in 2018 for $3,000,000, with Final Approval granted and no objections filed.

**Guerrero v. Chefs' Toys LLC,** Orange County Superior Court. Class action seeking overtime compensation, break premiums, wage statement penalties, among other penalties, for hotel staff employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2021 for $1,100,000.00 with Preliminary Approval pending.

**Zamudio v. Letter Ride Inc.,** Plaintiffs' counsel in class action in San Diego Superior Court seeking overtime compensation, break premiums, wage statement penalties, among other penalties, for delivery drivers employed by defendant in the State of California. Case settled in 2019 for $1,000,000.00 with Final Approval granted and no objections filed.

**Manoukian v. John Bean Technologies,** United Stated District Court, Central District of California, Class action seeking minimum wage and overtime compensation, break premiums, wage statement penalties, among other penalties, for non-exempt employees employed by defendant throughout the State of California. Plaintiffs' counsel. Case settled in 2018 for $987,500, with Final Approval granted and no objections filed.

**Medlock v. MedMen Dispensary,** Orange County Superior Court. Class action seeking overtime compensation, break premiums, wage statement penalties, among other penalties, for hotel staff employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2020 for $975,000.00 with Final Approval granted and no objections filed.

**Mayca v. DHL,** Los Angeles County Superior Court. Class action seeking overtime compensation, break premiums, wage statement penalties, among other penalties, for hotel staff employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2019 for $945,000.00 with Final Approval granted and no objections filed.

**Sylvester v. Starwood Inc.,** Los Angeles Superior Court. Class action seeking overtime compensation, break premiums, wage statement penalties, among other penalties, for hotel staff employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2015 for $875,000, with Final Approval granted and no objections filed.

**Patterson v. LA Leasing Inc.,** San Diego Superior Court, Class action seeking minimum wage and overtime compensation, break premiums, wage statement penalties, among other penalties, for employees employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2018 for $425,000, with Preliminary Approval granted and Final Approval pending.

**Sears v. AlliedBarton,** San Bernardino Superior Court, Class action seeking reimbursement of necessary business expenditures, among other penalties, for employees employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2018 for $425,000, with Preliminary Approval granted and Final Approval pending.

**Prado v. Sand and Sea Inc.,** Plaintiffs' counsel in pending class action in Los Angeles Superior Court seeking overtime compensation, break premiums, wage statement penalties, among other penalties, for front of house/back of house staff employed by defendant in the State of California. Case settled in 2019 for $500,000.00 with Final Approval granted and no objections filed.

# EXHIBIT B

# Siri | Glimstad

FIRM RESUME



# Class Action Practice Group

With attorneys across the country, Siri & Glimstad LLP represents clients from coast to coast in class actions and mass torts in state and federal courts. Utilizing decades of experience at major global law firms, we tackle each dispute with a sophisticated, strategic approach, and we fight hard for every one of our clients.

## Offices Nationwide

**NEW YORK**
745 Fifth Ave • Suite 500
New York, NY 10151

**MIAMI**
20200 West Dixie Highway • Ste 902
Aventura, FL 33180

**PHOENIX**
11201 N. Tatum Boulevard • Ste 300
Phoenix, AZ 85028

**DETROIT**
220 West Congress Street • 2nd Floor
Detroit, MI 48226

**WASHINGTON D.C.**
1025 Thomas Jefferson Street, N.W.
Washington, D.C. 20007

**LOS ANGELES**
700 S Flower Street • Ste 1000
Los Angeles, CA 90017

**AUSTIN**
1005 Congress Avenue • Ste 925-C36
Austin, TX 78701

**CHARLOTTE**
525 North Tryon Street • Ste 1600
Charlotte, NC 28202

**1-888-SIRI-LAW (747-4529)**

## Admitted States

Alabama • Arizona • California • Colorado • Connecticut • District of Columbia • Florida Idaho • Illinois • Kentucky • Maryland • Massachusetts • Michigan • Mississippi • New Jersey New York • North Carolina • Oklahoma • Oregon • Pennsylvania • South Carolina • Tennessee Texas • Virginia

Siri | Glimstad

www.sirillp.com



# Attorney Profiles

## Aaron Siri
*Managing Partner*

Aaron Siri is the Managing Partner of Siri & Glimstad LLP and has extensive experience in a wide range of complex civil litigation matters, with a focus on civil rights, class actions, and commercial litigation.



Mr. Siri has successfully litigated numerous civil rights cases, prosecuted class actions against large corporations resulting in payments to hundreds of thousands of Americans, and has acted as counsel to clients in multiple commercial disputes exceeding one billion dollars, including regarding Oracle Team's challenge for the America's Cup and the collapse of the World Trade Center.

Prior to founding Siri & Glimstad, Mr. Siri was a litigation attorney at Latham & Watkins for over five years. Before Latham, Mr. Siri clerked for the Chief Justice of the Supreme Court of Israel from 2004-2005 where he advised the Chief Justice of relevant American, English (including Commonwealth Countries), and International Law precedents for cases of first impression.

Mr. Siri has also been involved in various pro-bono matters, including representation of asylum applicants, housing discrimination victims, and non-profit organizations in tenant-landlord disputes, as well as being chosen as a Frank C. Newman delegate to present a paper he authored before the United Nations Human Rights Sub-Commission.

Mr. Siri earned his law degree at the University of California, Berkeley School of Law where he received four Prosser Prizes and ten High Honors. He was also the Editor-in-Chief and founder of the Berkeley Business Law Journal, which he developed into a nationally recognized publication, and was ranked as the leading commercial law journal in the country.

Prior to law school, Mr. Siri was an auditor at Arthur Andersen LLP, where he examined internal controls and audited corporate documents for private and public micro-cap technology companies. Mr. Siri is a Certified Public Accountant and an attorney admitted in federal and state courts across the country.

Mr. Siri is regularly interviewed on national television for his expertise regarding certain legal issues. He has also been published in the Washington Post, Stat News, and Bloomberg.



## Mason A. Barney
*Senior Partner*



Mason A. Barney is an experienced trial attorney who for nineteen years has represented both individuals and corporations in complex litigations. Mr. Barney received his J.D., *summa cum laude* from Brooklyn Law School, in 2005, where he graduated second in his class of nearly 500 students, and received numerous academic honors, in addition to being an editor on the Brooklyn Law Review. He then served as a law clerk to the Honorable Judge David G. Trager in the U.S. District Court for the Eastern District of New York. After clerking, he joined the litigation department at Latham & Watkins LLP, and later joined Olshan Frome Wolosky LLP a large established New York City law firm. Before law school, Mr. Barney earned his B.A. from Bowdoin College, where he double majored in Computer Science and Studio Art, and after college he served as a lead database developer for three years at a successful Internet start-up in Washington D.C.

Mr. Barney focuses his practice on class actions and representing individuals in complex litigations. In this practice he has won tens of millions of dollars for his clients. Among other matters, Mr. Barney has fought to stop companies from illegally spamming consumers with unwanted phone calls, has worked to stop companies from illegally obtaining their customers' biometric information (e.g., facial scans and fingerprints), and obtained recovery for numerous victims of data breaches. Mr. Barney has also served as counsel of record for numerous lawsuits involving alleged violations of the Illinois Genetic Information Privacy Act, successfully opposing dispositive motions and defeating improperly raised affirmative defenses.

Mr. Barney is recognized by the New York Legal Aid Society for his outstanding pro bono work representing indigent individuals in matters concerning prisoners' rights, immigration, and special education.

Mr. Barney has published a number of articles concerning a variety of legal issues. These include authoring or co-authoring: *The FBI vs. Apple: What Does the Law Actually Say?,* Inc. Magazine (February 2016); *Can Lawyers Be Compelled to Produce Data They Compile? An Emerging Front in the Trenches of e-Discovery Battles*, Bloomberg BNA (May 2015); *Legal Landscape for Cybersecurity Risk is Changing as Federal Government and SEC Take Action*, Inside Counsel Magazine (May 2015); *Tellabs v. Makor, One Year Later*, Securities Law 360 (July 2008); *Not as Bad as We Thought: The Legacy of Geier v. American Honda Motor Co.in Product Liability Actions,* 70 Brooklyn L. Rev. 949 (Spring 2005). Mr. Barney serves as an adjunct professor at Brooklyn College in New York, teaching Education Law in its graduate studies program, and separately has presented continuing legal education instruction regarding the Foreign Corrupt Practices Act.

Siri | Glimstad



## Elizabeth Brehm
*Senior Partner*



Elizabeth Brehm graduated from Boston University with a Bachelor of Science and earned her master's degree from Long Island University at C.W. Post. She attended Hofstra Law School and obtained a Juris Doctorate, graduating *magna cum laude*, in 2008.

After law school, Ms. Brehm spent a year at Winston & Strawn LLP where she focused on products liability litigation. For nine years prior to joining Siri & Glimstad, Ms. Brehm worked for a New York law firm where she focused on antitrust class action lawsuits, health care fraud, and qui tam and whistleblower litigations.

Ms. Brehm has been an attorney at Siri & Glimstad for over two years and has handled numerous complex litigation matters, including class action matters.

## Walker Moller
*Partner*



Before law school, Walker Moller worked and volunteered for three years in 15 countries throughout Southeast Asia, Oceania, and Africa. While at Mississippi College School of Law, Walker clerked at the Mississippi Supreme Court and was on the Law Review. He graduated *summa cum laude* in 2014 and earned the highest grade in eight courses. After graduation, Walker clerked for a federal judge at the United States District Court, Western District of Louisiana, where he gained exposure to a large volume of employment discrimination matters, products liability cases, and constitutional litigation.

Walker then worked for the U.S. Army Corps of Engineers from 2015 to 2021, where his practice focused on federal contracts and civil litigation in various administrative courts. Immediately before joining Siri & Glimstad, Walker achieved full dismissal of a lawsuit against the Corps of Engineers that implicated $68M worth of federal contracts.



# Tyler J. Bean
*Partner*



Tyler J. Bean graduated from the University of Oklahoma's Michael F. Price College of Business in 2015 and obtained a Juris Doctorate from the University of Oklahoma in 2019, where he served as editor for the Oil and Gas, Natural Resources, and Energy Law Review Journal. Mr. Bean also received numerous academic honors as a law student, including being named to the Faculty Honor Roll and Dean's List.

After graduating law school and serving as in-house counsel for a large, multi-billion-dollar retail organization, Mr. Bean turned his focus to complex civil litigation and consumer class actions, with a particular emphasis on data breach and privacy matters. He has years of experience as a data breach and privacy lawyer, having played a significant role as class counsel in successfully litigating numerous data breach and privacy class actions from inception through discovery and court approved settlements, recovering millions of dollars for hundreds of thousands of consumers, patients, students, and employees across the country who have been victims of negligent data security and privacy practices.

# William M. Sweetnam
*Partner*



William M. Sweetnam practices in the areas of class action and complex litigation and appeals. He has prosecuted hundreds of class actions in federal and state courts across the country, including matters in which he was appointed lead counsel or co-lead counsel. His primary focus is on consumer protection and privacy matters, including class actions brought under the Fair Credit Reporting Act (FCRA), the Fair and Accurate Credit Transactions Act (FACTA), the Telephone Consumer Protection Act (TCPA), the Illinois Biometric Information Privacy Act (BIPA), the Illinois Genetic Information Privacy Act (GIPA) as well as cases brought under various state consumer fraud and deceptive business practices acts and federal securities and antitrust laws.

Mr. Sweetnam has been counsel of record in class action lawsuits resulting in recoveries totaling more than $20 billion. Some notable examples include:

*Stewart, et al. v. LexisNexis Risk Data Retrieval Services, LLC*. Mr. Sweetnam was class counsel in this Fair Credit Reporting Act class action which resulted in a $21.5 million settlement on behalf of 23,000 consumers about whom LexisNexis was alleged to have reported inaccurate civil judgment and lien information in violation of the Fair Credit Reporting Act.

**Siri | Glimstad**

www.sirillp.com



*Kelly v. Old National Bank*. Mr. Sweetnam obtained class certification and was appointed lead counsel for the class in this consumer fraud bank overdraft fee class action, ultimately resulting in an all-cash settlement of $4.9 million, representing more than 90% of the class' damages.

*Levey, et al. v. Concesionaria Vuela Compañía de Aviación, S.A.P.I. de C.V*. Mr. Sweetnam was class counsel in this consumer fraud class action against Mexican airline Volaris alleging its failure to issue refunds to more than 23,000 passengers whose flights were canceled during the early phases of the Covid-19 pandemic. Although numerous other similar cases were filed against other airlines, Mr. Sweetnam obtained the only all-cash settlement, totaling $3.5 million.

Prior to joining Siri & Glimstad, Mr. Sweetnam was the managing partner of a Chicago class action litigation boutique and a partner or counsel to other nationally recognized class action firms. He received his B.A. from the University of Michigan and his JD from De Paul University College of Law.

# Kent. M. Williams
*Attorney*

Kent M. Williams has over 30 years of experience representing large classes of consumers, employees, and small businesses in antitrust, wage and hour, consumer fraud, data breach, privacy, employment discrimination, securities fraud, trespass, and product liability lawsuits.



Mr. Williams received his J.D. magna cum laude with legal writing honors from the University of Minnesota in 1991, where he was published in the University of Minnesota Law Review and competed against other law schools as a member of Minnesota's Jessup International Law Moot Court Competition Team.

After a summer internship with Jenner & Block in Chicago, Mr. Williams decided to remain in the Twin Cities, where he joined Dorsey & Whitney, one of the largest firms in the Midwest. After a few months, Mr. Williams yearned for more "hands on" experience, so he moved to Opperman Heins & Paquin (now known as Lockridge Grindal Nauen PLLP), a class action boutique where he was responsible for a variety of class and non-class matters. One of his most memorable experiences at OHP was coordinating the successful defense of the late Dr. John S. Najarian, a renowned surgeon who was accused by the Food and Drug Administration of illegally marketing and selling Minnesota antilymphocyte globulin ("MALG"), an anti-rejection drug that Dr. Najarian had developed into what became the immunosuppressive "gold standard" for transplant surgery.

## Siri | Glimstad

www.sirillp.com



In 1994, Mr. Williams and four other attorneys formed a new class action firm, Heins Mills & Olson, P.L.C. His practice expanded to include class actions against major manufacturers of infant formula, industrial diamonds, hearing aids, polybutylene pipe, synthetic stucco, and other products. He advocated fiercely for consumers in antitrust cases, winning one of the first-ever contested indirect purchaser class certifications in the country, as well as an appellate court victory in North Carolina that established a private right of action for indirect purchasers in that state. Mr. Williams also represented landowners in class actions alleging trespass against railroads and telecommunications companies for burying fiber optic cable on private property without permission.

A firm believer that "variety is the spice of life," in the mid-2000s, Mr. Williams decided to open a solo practice that allowed him to branch out into other areas of the law, while continuing to represent plaintiffs in class actions and other complex commercial matters. Over the next twenty years, Mr. Williams successfully handled a diversity of probate, family law, land-use, administrative law, criminal law, and employment law matters. During that same time period, he served as trial and/or lead counsel in a number of behemoth class actions brought against Big Pharma, Microsoft, and other large corporations. Mr. Williams is recognized as one of the first lawyers in the country to wage mass arbitration "guerilla warfare" (in the words of one legal commentator) by bringing hundreds of individual wage-and-hour arbitrations against a large, well-known restaurant chain.

More recently, Mr. Williams has expanded his practice to include consumer privacy litigation. He manages the Firm's genetic and biogenetic information privacy litigation group, and he serves as class counsel in a number of privacy cases, including one brought against a well-known online healthcare company. At the same time, Mr. Williams continues to advocate for consumers victimized by price-fixing, monopolization, securities fraud, financial fraud, and other unlawful schemes.


## Oren Faircloth
*Attorney*

Oren Faircloth graduated from McGill University in 2009 with a Bachelor of Arts degree in Political Science. Before attending law school, he served in the armed forces from 2010 to 2011. Mr. Faircloth graduated from Quinnipiac University School of Law, *magna cum laude*, in 2016.



Prior to joining Siri & Glimstad, Mr. Faircloth worked for a boutique law firm where he spearheaded ERISA class action lawsuits against Fortune 500 companies, including: Huntington Ingalls, Rockwell Automation,

Raytheon, UPS, U.S. Bancorp, Delta Air Lines, and Sprint. Mr. Faircloth was involved in the prosecution of numerous successful class actions in which over $100 million dollars have been

## Siri | Glimstad



recovered for tens of thousands of employees around the country. In 2022, Mr. Faircloth was recognized by Super Lawyers magazine as a Rising Star in the field of class action.

Mr. Faircloth focuses his practice on class actions and representing individuals in complex litigations. He presently represents individuals who have been denied reimbursement for work-related expenses from their employers, denied sufficient lactation accommodations in the workplace, and denied actuarially equivalent pension benefits. Mr. Faircloth has also represented several individuals on a pro bono basis, negotiating favorable settlements for violations of their constitutional rights.

# Wendy Cox
*Attorney*



Prior to joining Siri & Glimstad, Ms. Cox served for 21 years in the United States Army as an Army Nurse Corps officer and as an Army Judge Advocate. As a nurse corps officer, Ms. Cox worked in several clinical settings to include a pediatric unit, a specialty surgical unit, and an orthopedic surgical unit. During her last year as an Army Nurse Corps officer, she taught Army medics in basic life-saving skills before being selected by the Army to attend law school. After graduating law school in 2005, Ms. Cox prosecuted soldiers, advised on operational law issues, taught Constitutional Law at West Point, and advised senior leaders on a variety of legal issues. Following her retirement from the United States Army in 2018, she went on to continue serving soldiers as an attorney for the Office of Soldiers' Counsel.

Wendy Cox graduated *cum laude* from the State University at Buffalo Law School in New York and *summa cum laude* from Norwich University with a Bachelor of Science in Nursing. She went on to get her Master of Laws (L.L.M.) degree in Military Law in 2008.

# Catherine Cline
*Attorney*



Catherine Cline has extensive experience in a wide range of civil law, including constitutional, administrative, employment, and election law. Prior to joining Siri & Glimstad, Ms. Cline served as a judicial law clerk for judges in the U.S. District Court for the Middle District of Pennsylvania, the Commonwealth Court of Pennsylvania, and the Supreme Court of Pennsylvania.

Ms. Cline attended law school on a full tuition scholarship, during which time she served as the Editor-in-Chief of the law review and as intern for a U.S. District Court Judge in the Middle District of Florida. Before attending law school, Ms. Cline received her Bachelor of Arts in Economics with a Minor in Business and the Liberal Arts



from Penn State University and worked in the Tax Credit Division of the Pennsylvania Department of Community and Economic Development.

## Dana Smith
*Attorney*

Dana Smith is a seasoned litigator. Prior to joining Siri & Glimstad, Ms. Smith focused most of her legal career on personal injury litigation, including representing individuals harmed due to corporate negligence. Ms. Smith is also experienced in various domestic areas of practice, including divorce, high-conflict custody disputes, and child welfare law.



Ms. Smith graduated *cum laude* from the North Carolina Central University School of Law. Additionally, she received her Bachelor of Arts in Romance Languages from the University of North Carolina at Chapel Hill.

## Sonal Jain
*Attorney*

Sonal Jain has experience in complex commercial litigations as well as class actions. Ms. Jain graduated from the New York University School of Law with an LLM in International Business Regulation, Litigation and Arbitration in 2020 where she gained experience with international dispute resolution. She received her first degree in law (B.A. LL.B.) from ILS Law College, Pune, a prime legal education institution in India. Prior to joining Siri & Glimstad, Ms. Jain held various internships with top-tier law firms in India where she specialized in complex dispute resolution ranging from consumer and corporate litigation to domestic arbitrations.



## Jack Spitz
*Attorney*

Jack R. Spitz is a graduate of Rutgers School of Law where he was a member of the Rutgers Law Record Journal and interned with the Essex County Public Defender's Office. Following law school, he served as Law Clerk for two judges at the Middlesex County Superior Court in New Brunswick, New Jersey. Subsequently, Mr. Spitz defended a wide variety of personal injury and property damage matters, as well as represented Plaintiffs in employment litigation matters. Prior to law school, Mr. Spitz graduated from Clemson University in South Carolina.





## Gabrielle Williams
*Attorney*

Ms. Williams obtained her J.D. from the University of Maryland Francis King Carey School of Law. During her time in law school, she represented clients in state court through the Justice for Victims of Crime Clinical Law Program. She also served as an Associate Editor on the Journal of Healthcare Law and Policy, Executive Board Member of the Black Law Students Association, and Class Representative for the Student Bar Association. Prior to joining Siri and Glimstad, Ms. Williams served as a Judicial Law Clerk on the Appellate Court of Maryland.



## Neil Williams
*Attorney*

With a robust background in data breach litigation, Mr. Williams is a seasoned legal professional dedicated to protecting the interests of clients in the digital age. Leveraging his extensive experience in cybersecurity law and privacy regulations, he has successfully represented numerous individuals in complex data breach cases. Mr. Williams meticulously navigates the intricate legal landscape surrounding data breaches, providing strategic counsel and vigorous advocacy to achieve favorable outcomes for his clients.



Mr. Williams received his J.D. from Charleston School of Law, where he was awarded CALI Awards on two occasions for the top grade in his class. He also worked alongside several South Carolina Pro Bono Services to ensure that competent legal representation was reaching the most at need populations in the area.  Mr. Williams received his undergraduate degree from the University of South Carolina.

## Sonjay Singh
*Attorney*

Sonjay Singh is a seasoned litigator with broad experience in data privacy matters.

Prior to joining Siri & Glimstad, Mr. Singh worked with prominent plaintiffs' firms in the District of Columbia and Pennsylvania, where he brought claims for individuals affected by data privacy violations, predatory lending, defective products, false advertising, institutional abuse, and other corporate misconduct. Mr. Singh has also practiced as a trial lawyer,



**Siri | Glimstad**



pursuing personal injury, medical malpractice, defective premises, and other tort cases on behalf of his clients.

Mr. Singh graduated from Temple University's Beasley School of Law with both his J.D. and a certificate in Trial Advocacy and Litigation. During his time in law school, he was active on campus, and served as Vice President of the Student Bar Association. Mr. Singh also competed on Temple's highly-ranked Trial Team, winning the Inter-American Invitational at the University of Puerto Rico among other honors. For his dedication to plaintiffs' representation, Mr. Singh was named the Eisenberg Scholar, a scholarship given yearly to the outstanding student in civil litigation, and received the Trial Program Award for excellence in trial advocacy. Upon graduating, Mr. Singh was inducted into the Rubin Public Interest Society for his commitment to public service.

Mr. Singh is active in the legal community, and served as the 2022-23 Communications Chair for the MSBA Young Lawyers Division. Before starting his legal career, Mr. Singh co-founded a DEI hiring and recruiting startup, and was elected to serve as Democratic Committeeperson for the Townships of Marple and Newtown, PA.

## Jordan Underhill
*Attorney*

Prior to joining Siri & Glimstad, Jordan Underhill worked as an Assistant Attorney General for the Texas Office of Attorney General. While at the Texas OAG, he prosecuted multi-million-dollar civil fraud cases against pharmaceutical companies, hospital systems, and other entities accused of misappropriating taxpayer funds.

Mr. Underhill also worked for many years at a nonprofit organization where he provided free legal representation to low-income individuals. His work there covered a wide range of civil litigation, including housing/property law, family law, employment law, and criminal record sealing.

Mr. Underhill obtained his J.D. from the University of Colorado–Boulder, where he served as a student note editor for the Colorado Technology Law Journal and volunteered for the Colorado Innocence Project.

At Siri & Glimstad, he focuses on class actions involving data privacy issues.



# Notable Class Actions Handled
# By Siri & Glimstad LLP

**Buchanan v. Sirius XM Radio, Inc.**
Case No. 3:17-cv-00728 (N.D. Tex.)
Appointed co-lead class counsel in a case alleging violations of the TCPA, which resulted
in a settlement of $25,000,000, plus free satellite radio service, to a class of 14.4 million
members.

**Thomas v. Dun & Bradstreet Credibility Corp**.
Case No. 15-cv-3194 (S.D. Cal.)
Appointed co-lead class counsel in a case alleging violations of the TCPA which resulted
in a settlement of $10,500,000.

**Gatto v. Sentry Services, Inc., et al.**
Case No. 13 CIV 05721 (S.D. N.Y.)
Appointed co-lead class counsel in a case involving ERISA claims relating to an ESOP
which resulted in a settlement of $11,138,938.

**Kindle v. Dejana**
Case No. 14-cv-06784 (E.D. N.Y.)
Appointed co-lead trial counsel for plaintiffs in an ERISA matter filed as a class action
involving breaches of fiduciary duty related to  the management  and termination of an
ESOP, which settled after the beginning of trial for $1,080,000 for the class.

**MacNaughton v. Young Living Essential Oils, LC,**
67 F.4th 89 (2d Cir. 2023)
Successfully reversed motion to dismiss, creating a significant precedent regarding the
definition of "puffery" in N.Y. false advertising cases.

**MacNaughton v. Young Living Essential Oils, LC,**
Case No. 24LA0329 (Cir. Ct. Ill.)
Received final approval of settlement in false advertising class action valued at
$10,000,000.

**Carter, et al. v. Vivendi Ticketing US LLC d/b/a See Tickets**
Case No. 8:22-cv-01981 (C.D. Cal.)
Final approval granted, appointing firm as sole class counsel, in a data breach class
action settlement involving 437,310 class members and a $3,000,000 non-reversionary
settlement fund.

Siri | Glimstad

12



**Medina v. Albertsons Companies, Inc.**
Case No. 1:23-cv-00480 (D. Del.)
Obtained final approval of a class settlement involving 33,000 class members and a $750,000 non-reversionary settlement fund.

**In re Sovos Compliance Data Security Incident Litigation**
Case No. 1:23-cv-12100-AK (D. Mass.)
Obtained final approval of a class settlement that includes a non-reversionary settlement fund of $3,534,128.50 involving 490,000 individuals, and separate from the settlement fund, requires the defendant to pay for data security improvements.

**Owens v. US Radiology Specialists, Inc.,**
Case No. 22 CVS 17797 (N.C. Super. Ct.)
Received final approval for settlement in data breach involving 1,309,429 customer's private health information, creating non-reversionary settlement fund of $5,050,000 to compensate class members.

**In re: Planet Home Lending, LLC Data Breach**
Case No. 3:24-cv-127 (D. Conn.)
Final approval granted for data breach settlement affecting 285,000 individuals, which will create a non-reversionary settlement fund valued at $ 2,425,000.

**In re: Vivendi Ticketing US LLC, d/b/a See Tickets Data Security Incident**
Case No. 2:23-cv-07498 (C.D. Cal.)
Final approval of settlement in second data breach affecting 323,498 individuals, where the settlement agreement calls for the creation of a non-reversionary settlement fund in the amount of $3,250,000.

**Fortra File Transfer Software Data Security Breach Litigation**
Case No. 24-MD-03090-RAR (S.D. Fl.).
Appointed to leadership team in nationwide multi-district litigation concerning data breach affecting more than 4,000,000 individuals' personal and health information.

**In re UNITE HERE Data Security Incident Litigation**
Case No. 1:24-cv-01565-JSR (S.D.N.Y.)
Obtained final approval of data breach settlement affecting roughly 790,000 individuals, creating a non-reversionary settlement fund of $6,000,000 to compensate class members.

Siri | Glimstad

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on October 20, 2025, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*<u>/s/ Daniel Srourian</u>*

Daniel Srourian