THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| *In re Progressive Leasing Breach Litigation* | **MEMORANDUM DECISION AND ORDER GRANTING [86] UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Case No. 2:23-cv-00783-DBB-CMR<br><br>District Judge David Barlow |

Before the court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion").[1]

## BACKGROUND

This case arises out of a September 11, 2023, incident in which Defendant Prog Leasing, LLC ("Prog") experienced a data breach of its systems.[2] As a result, a significant amount of personal customer information was stolen.[3] Shortly thereafter, Prog notified affected individuals that their personal data had been involved in the breach, and several lawsuits were filed against Prog in Utah and California.[4] Those cases were subsequently consolidated into the present action.[5] After the court granted in part and denied in part a motion to dismiss filed by Prog,[6] the

---

[1] Plaintiffs' Unopposed Mot. for Preliminary Approval of Class Action Settlement ("Settlement Agreement"), ECF No. 86, filed Oct. 20, 2025.
[2] Consolidated Class Action Complaint ("Compl.") ¶¶ 7–8, ECF No. 39, filed Apr. 19, 2024.
[3] *Id.*
[4] Settlement Agreement 37.
[5] Consolidation Orders, ECF Nos. 22, 34, entered Jan. 10 and Mar. 29, 2024.
[6] Order Granting in Part and Denying in Part Prog's Motion to Dismiss ("MTD Order"), ECF No. 69, entered Jan. 16, 2025.

1

parties filed a stipulated motion to stay the case while they worked toward settlement through a private mediator.[7] The court granted the motion and stayed the case pending these settlement discussions.[8] On July 7, 2025, the court received notice that the parties had reached a class-wide settlement in principle and extended the stay while the parties finalized their settlement agreement.[9] On October 20, 2025, the parties filed this Motion requesting approval of the settlement agreement.[10]

The entire proposed settlement agreement is on the record, but a brief summary of its main terms is warranted. The agreement would distribute a $3,250,000 settlement fund among a proposed class of up to 216,000 individuals.[11] The proposed class is defined for settlement purposes as all living individuals in the United States who were sent an incident notice from Prog regarding the data breach.[12] A California subclass includes all class members who were residing in California at the time the breach occurred.[13] Each class member may be reimbursed up to $5,000 for "ordinary out-of-pocket expenses that are fairly traceable" to the breach.[14] California class members are eligible for an additional $100 statutory payment.[15] Alternatively, a class member may elect to receive a $400 payment instead of submitting expenses for reimbursement.[16] All class members are also eligible to receive two years of credit monitoring and identity theft services.[17]

---

[7] Stipulated Motion to Stay 2, ECF No. 73, filed Mar. 10, 2025.
[8] Order Granting Motion to Stay, ECF No. 76, entered Mar. 11, 2025.
[9] *See* Docket, ECF No. 79, entered July 7, 2025.
[10] *See* Settlement Agreement.
[11] Settlement Agreement 29, 49.
[12] *Id.* at 9.
[13] *Id.* at 9–10.
[14] *Id.* at 10.
[15] *Id.* at 11.
[16] *Id.*
[17] *Id.* at 12.

A third-party settlement administrator, CPT Group, will administer the settlement and provide notice to class members.[18] Notice will be provided via physical mail with prepaid return postage and email when available.[19] The proposed notice includes material information about the settlement terms, how to submit claims, how to opt out, and how to object.[20] A settlement website will also allow for online claims and provide additional information.[21] Class representatives may seek an additional $3,000 service award, and the class counsel intends to apply for attorney's fees totaling one-third of the settlement fund.[22]

## STANDARD

Under Rule 23 of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."[23] "Preliminary approval of a proposed settlement is the first of two steps required before a class action may be settled."[24] If preliminary approval is granted, the court moves to the second step where "it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement."[25] Rule 23(e) requires a court to grant preliminary approval if the parties show that "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."[26]

---

[18] *Id.*
[19] *Id.* at 13–14.
[20] *Id.* at 14.
[21] *Id.*
[22] *Id.* at 18.
[23] Fed. R. Civ. P. 23(e).
[24] *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012).
[25] *Id.*
[26] Fed. R. Civ. P 23(e)(1)(B).

## DISCUSSION

### I.     Fair, Reasonable, and Adequate Proposal

A court must grant preliminary approval to a class action settlement agreement if the parties show that the proposal would likely be approved under Rule 23(e)(2).[27] Rule 23(e)(2) states that, after a hearing, the court may approve a proposed class action settlement "on finding that it is fair, reasonable, and adequate."[28] In determining whether a proposed settlement meets this standard, courts are instructed to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . .; and (D) the proposal treats class members equitably relative to each other.[29]

In the Tenth Circuit, courts must also consider four additional factors set forth in *Jones v. Nuclear Pharmacy, Inc.*[30] The *Jones* factors are:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.[31]

While the "fair, reasonable, and adequate" standard must be satisfied before a settlement agreement is approved, at the first step the parties need only show that the agreement is likely to be approved under this standard.[32] Therefore, "[p]reliminary approval of a class action settlement, in contrast to final approval, is at most a

---

[27] *Id.*
[28] Fed. R. Civ. P 23(e)(2).
[29] *Id.*
[30] *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).
[31] *Id.*
[32] *See* Fed. R. Civ. P 23(e)(1)(B).

determination that there is probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness."[33] This is a "less stringent" standard than that which applies for final approval.[34] Generally, a court should grant preliminary approval if the proposal "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."[35]

### A. Rule 23(e) Factors

In this case, the proposed agreement is likely to be approved under the Rule 23(e)(2) factors. First, the class representatives and counsel seem to adequately represent the class. The representatives' injuries and claims arise out of the same breach and are of the same nature as those of the other class members.[36] The class counsel has also demonstrated considerable experience litigating these types of claims.[37] Second, the proposal was negotiated at arm's length through a neutral mediator with no evidence of collusion.[38] Third, there is no indication that the relief provided is inadequate considering that class members may be reimbursed for actual losses, request fixed damages, and receive continued identity theft protection moving forward.[39] And fourth, every class member has equal rights under the agreement to pursue and receive

---

[33] *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F.Supp.2d 601, 607 (W.D.N.Y. 2011)) (cleaned up).
[34] *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012).
[35] *Id.* (quoting *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 CIV. 2800LMM, 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009)).
[36] *See generally* Compl.
[37] Settlement Agreement 138–39.
[38] *Id.* at 17.
[39] *Id.* at 9–12.

settlement remedies, though members of the California subclass may get an additional nominal sum.[40]

### B. *Jones* Factors

The proposed agreement is also likely to satisfy the *Jones* factors. As already discussed, the settlement was negotiated by experienced counsel with the help of a neutral mediator.[41] It also seems to adequately distribute fair remedies among all members of the class, and the parties involved agree that it is reasonable.[42] Additionally, the outcome of the litigation is far from certain. Prog admits to no liability for the data breach,[43] yet Plaintiffs' remaining claims have already survived a motion to dismiss.[44] The legal outcome is uncertain, but it is almost guaranteed that pursuing these claims on their merits would result in extended litigation and costs over multiple years. It is therefore also likely that the value of this agreement to class members outweighs the uncertain possibility of future relief.[45]

At this stage, the court need not fully apply every factor to make a final determination of fairness and adequacy.[46] It is only necessary to decide if the court would likely find the agreement fair following a hearing and additional analysis.[47] After applying the relevant factors to the agreement, and in the absence of any obvious deficiencies, collusion, or preferential

---

[40] *Id.*
[41] *Id.* at 22.
[42] *Id.* at 25.
[43] *Id.* at 39.
[44] *See* MTD Order.
[45] *See Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).
[46] Fed. R. Civ. P 23(e)(1)(B); *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018).
[47] Fed. R. Civ. P 23(e)(1)(B).

treatment, the proposed settlement seems likely to satisfy the "fair, reasonable, and adequate" standard at the second step.[48]

## II. Class Certification

The court must also find that it would likely be able to "certify the class for purposes of judgment on the proposal" before giving notice and a hearing.[49] A class action may only be certified if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[50]

Here, the parties propose a class certification for settlement purposes only of all individuals who were sent notice of the breach.[51] They propose that the class be certified under Rule 23(b)(3), which allows a class action when "questions of law or fact common to class members predominate over any questions affecting only individual members," and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[52]

The first question is whether numerosity is satisfied. The proposed class would consist of 216,000 people, which certainly makes individual joinder and suits impracticable.[53] The next two factors ask whether the class has common questions of law and fact and whether the representatives' claims are typical of the class's claims.[54] As already discussed, the claims in this

---

[48] *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012).
[49] Fed. R. Civ. P. 23(e)(1).
[50] Fed. R. Civ. P. 23(a).
[51] Settlement Agreement 1.
[52] Fed. R. Civ. P. 23(b)(3).
[53] *See Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class.").
[54] Fed. R. Civ. P. 23(a).

suit all arise from a single data breach incident.[55] Relevant questions of law and fact, like the scope of Prog's duty, any negligence, and the scope of the breach, would be identical across parties. The class representatives' claims likewise arise from this breach and so represent the class's claims as a whole.[56] Counsel for the class representatives is experienced in this field,[57] and there is no indication that the class representatives are unwilling or unable to adequately advance their claims.[58]

Finally, the common genesis of every class member's claims makes it likely that the common questions of law and fact predominate over any individual issues. The large number of class members and relatively small individual injuries also make a class action the superior method of adjudicating these claims. Applying the Rule 23(a) and 23(b)(3) factors, the court finds it likely that it will be able to certify the class for settlement purposes.[59]

### III.  Approval and Appointment

In addition to preliminary class and settlement approval, the parties ask the court to approve the proposed settlement notice, claim, and opt-out or objection procedures.[60] They also request the appointment of a settlement administrator and class counsel.[61] Rule 23(e)(1)(B) instructs the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."[62] This notice must be, as in any proceeding, "reasonably calculated,

---

[55] Compl. ¶¶ 7–8.
[56] Id. ¶¶ 78–79.
[57] Settlement Agreement 138–39.
[58] See Pliego v. Los Arcos Mexican Restaurants, Inc., 313 F.R.D. 117, 126 (D. Colo. 2016) ("The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole.").
[59] Fed. R. Civ. P. 23(e)(1)(B)(ii).
[60] Settlement Agreement 56.
[61] Id.
[62]  Fed. R. Civ. P. 23(e)(1)(B).

under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[63] A court that certifies a class must also "appoint class counsel."[64] In appointing such counsel, the court must consider the counsel's work with claims in the action, the counsel's experience with similar cases and knowledge of the law, and the resources the counsel will commit to the representation.[65]

At this stage, the court approves of the proposed settlement and its procedures for providing notice, processing claims, and facilitating opt-outs and objections. The proposed notices and instructions provide sufficient information for class members to understand and exercise their rights.[66] The notice procedures for mailing to physical addresses and email addresses also seem reasonably calculated to apprise class members of this action.[67] The settlement administrator will use the known addresses and emails of all class members to provide personal written notice, and the agreement includes procedures for tracing and verifying undeliverable addresses.[68] The court also approves the parties' request to appoint CPT as settlement administrator and Daniel Srourian and Tyler Bean as class counsel.[69] In light of these attorneys' experience with similar claims, experience with the relevant law, substantial firm resources, and knowledge of this case, the court finds their appointment as class counsel appropriate under Rule 23(e).[70]

---

[63] *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950).
[64] Fed. R. Civ. P. 23(g)(1).
[65] *Id.*
[66] *See* Settlement Agreement 95–108.
[67] *Id.* at 59.
[68] *Id.* at 33.
[69] *Id.* at 56.
[70] *Id*. at 141, 148; *see also* Compl.

Accordingly, the court finds that it will likely be able to approve the proposed settlement under Rule 23(e)(2) and grants its preliminary approval. The court also preliminarily certifies the class and subclass described in the settlement proposal. The court further appoints CPT Group, Inc. as the settlement administrator and appoints Daniel Srourian and Tyler Bean as class counsel. The action will remain stayed until the court has made a final approval determination following the final approval hearing.

## ORDER

Plaintiffs' [86] Unopposed Motion for Preliminary Approval of Class Action Settlement is GRANTED.

Signed November 5, 2025.

BY THE COURT

_____
David Barlow
United States District Judge