**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| ***In re Progressive Leasing Breach Litigation*** | **PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Case No.: 2:23-CV-00783-DBB-CMR<br><br>Judge David Barlow<br><br>Magistrate Judge Cecilia M. Romero |

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... IV

I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 2

III. SUMMARY OF SETTLEMENT TERMS ..... 4

A. Definition of the Class. ..... 4

B. Settlement Terms and Benefits to the Settlement Class. ..... 5

1. Cash Payments ..... 5

a. Documented Losses ..... 5

b. California Statutory Payment ..... 6

c. Alternative Cash Payment ..... 6

2. Identity Theft Protection and Credit Monitoring. ..... 6

3. Attorney's Fees, Expenses, and Service Awards ..... 6

4. The Notice Program Satisfies Due Process ..... 7

5. Requests for Exclusion and Objections. ..... 9

IV. ARGUMENT ..... 10

A. Legal Standard ..... 10

B. The Proposed Settlement Is Fair, Reasonable, and Adequate Pursuant To Rule 23(E) ..... 11

1. Plaintiffs and Settlement Class Counsel Have Adequately Represented the Settlement Class. ..... 12

2. The Settlement Was Negotiated at Arms' Length and Aided by a Well-Respected and Experienced Mediator ..... 13

3. The Relief Provided for the Settlement Class is Adequate ..... 14

a. The Costs and Risk of Trial and Appeal. ..... 14

b. Proposed Settlement Class Members are Treated Equitably......... 16

c. The Method of Notice and Claims Distribution. .......................... 16

d. The Terms of Proposed Award of Attorneys' Fees........................ 17

4. The Reaction of the Settlement Class Members to the Settlement........... 17

V. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ........................................................................... 18

VI. THE SETTLEMENT CLASS MEETS THE REQUIREMENT OF RULE 23(A). ......... 19

A. The Settlement Class is Sufficiently Numerous. ................................................ 19

B. The Commonality Requirement is Met............................................................... 19

C. The Typicality Requirement is Met. .................................................................... 21

D. The Adequacy Requirement is Met...................................................................... 21

E. The Settlement Class Meets the Requirement of Rule 23(b)(3). .......................... 23

VII. CONCLUSION ........................................................................................................ 24

CERTIFICATE OF SERVICE ......................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 18, 23

*Beasley v. Ttec Servs. Corp.*,
Case No. 22-cv-00097, 2024 U.S. Dist. LEXIS 29759 (D. Colo. Feb. 21, 2024) .......... 2, 16

*Carter v. Vivendi Ticketing US LLC*,
No. SACV2201981CJCDFMX, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) .......... 2

*Cook v. Rockwell Int'l Corp.*,
151 F.R.D. 378 (D. Colo. 1993) .......... 21

*DG v. Devaughn*,
594 F.3d 1188 (10th Cir. 2010) .......... 20

*Doe v. Stephen*,
No. 3:20-cv-00005, 2022 WL 20689731 (S.D. Iowa. Dec. 9, 2022) .......... 13

*Fulton-Green v. Accolade, Inc.*,
No. 18-274, 2019 U.S. Dist. LEXIS 164375 (E.D. Pa. Sept. 24, 2019) .......... 15

*Gaston v. FabFitFun, Inc.*,
No. 2:20-cv-09534, 2021 U.S. Dist. LEXIS 250695 (C.D. Cal. Dec. 9, 2021) .......... 15

*Gen. Tel. Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982) .......... 21

*Hapka v. Carecentrix, Inc.*,
No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68185 (D. Kan. Feb. 15, 2018) .......... 19

*Hunter v. CC Gaming, LLC,*
No. 19-cv-01979, 2020 U.S. Dist. LEXIS 264583 (D. Colo. May 12, 2020) .......... 19

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) .......... 2

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 3:20-MN-02972, 2024 U.S. Dist. LEXIS 86740 (D.S.C. May 14, 2024) .......... 15

*In re C.R. England, Inc. Data Breach Litig.*,
2024 U.S. Dist. LEXIS 48296 (D. Utah Mar. 18, 2024) .......... 2, 16

*In re Conseco Life Ins. Co. Cost of Ins. Litigation*,
No. ML 04-1610, 2005 WL 5678842 (C.D. Cal. Apr. 26, 2005) .......... 24

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
293 F.R.D. 21 (D. Me. 2013) .......... 15

*In re Mexican Gov't Bonds Antitrust Litig.*,
No. 18-cv-02830, 2021 WL 5709215 (S.D.N.Y. Oct. 28, 2021) .......... 9

*In re Progressive Leasing Breach Litigation*,
Case No. 2:23-cv-00783. .......... 3

*In re Target Corp. Customer Data Sec. Breach Litig.*,
No. 14-md-2522, 2017 WL 2178306 (D. Minn. May 17, 2017),
aff'd, 892 F.3d 968 (8th Cir. 2018) .......... 2

*In re Wawa, Inc. Data Sec. Litig.*,
No. CV 19-6019, 2024 WL 1557366 (E.D. Pa. Apr. 9, 2024) .......... 2

*Jones v. Nuclear Pharmacy, Inc.*,
741 F.2d 322, 324 (10th Cir. 1984) .......... 12

*Lane v. Page*,
272 F.R.D. 558 (D.N.M. 2011) .......... 19, 21

*Lucas v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006) .......... 10, 14

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) .......... 9

*Rodriguez v. Pro. Fin. Co.*,
No. 22-cv-01679, 2024 U.S. Dist. LEXIS 187449 (D. Colo. Oct. 15, 2024) .......... 20, 24

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*,
921 F.2d 1371 (8th Cir. 1990) .......... 10

*Massiah v. MetroPlus Health Plan, Inc.*,
No. 11-cv-05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) .......... 15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) .......... 9

*Oppenlander v. Standard Oil Co.*,
64 F.R.D. 597 (D. Colo.1974) .......... 15

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
390 U.S. 414 (1968) .......... 14

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180 (10th Cir. 2002) .......... 12, 21

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 20

*Wesley v. Snap Fin., LLC*,
341 F.R.D. 72 (D. Utah 2022) .......... 9

*Wilkerson v. Martin Marietta Corp.*,
171 F.R.D. 273 (D. Colo. 1997) .......... 11, 14

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020) .......... 2

*Spegele v. USAA Life Ins. Co.*,
No. 5:17-CV-967-OLG, 2021 WL 4935978 (W.D. Tex. Aug. 26, 2021) .......... 11

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 3
Fed. R. Civ. P. 12(b)(6) .......... 3
Fed. R. Civ. P. 23 .......... 9, 18, 24
Fed. R. Civ. P. 23(a) .......... 18, 19, 21
Fed. R. Civ. P. 23(a)(1) .......... 19
Fed. R. Civ. P. 23(a)(2) .......... 19, 21
Fed. R. Civ. P. 23(a)(3) .......... 21
Fed. R. Civ. P. 23(a)(4) .......... 21, 23
Fed. R. Civ. P. 23(b)(3) .......... 18, 21, 23, 24
Fed. R. Civ. P. 23(e)(2) .......... 11, 16, 17
Fed. R. Civ. P. 23(e)(2)(A) .......... 12, 13
Fed. R. Civ. P. 23(e)(2)(c) .......... 14
Fed. R. Civ. P. 23(e)(2)(C)(iii) .......... 17
Fed. R. Civ. P. 23(e)(2)(D) .......... 16

**Statutes**

California Consumer Privacy Act, Cal. Civ. Code § 1798.150 *et seq*. .......... 3

**Other Authorities**

Newberg on Class Actions, § 7.24 (3d ed. 1992)............................................................................ 21
Newberg and Rubenstein on Class Actions § 13:15 (6th ed. 2024)............................................. 10
Manual For Complex Litigation (Third) § 30.41, at 236 (1995). ................................................ 10

Plaintiffs Raymond Dreger, Chad Boyd, Ralph Maddox, Dawn Davis, Richard Guzman, Tyler Whitmore, Melanie Williams, Laura Robinson, Allison Ryan, Marty Alexander, and Stephen Hawes (collectively, the "Plaintiffs"), individually, and on behalf of the Settlement Class,[1] hereby respectfully submit this Unopposed Motion for Final Approval of Class Settlement and Memorandum of Law in Support.

## I. INTRODUCTION

On November 5, 2025, this Court preliminary approved a class action settlement between Plaintiffs and Progressive Leasing LLC ("Prog" or "Defendant"). *See* ECF No. 87. The Settlement provides a very favorable result for the Settlement Class, including substantial monetary benefits and identity theft protection. The Settlement included a comprehensive Notice Program and user-friendly Claim Process, which have been, and are being, implemented by the Settlement Administrator, CPT Group, Inc. *See* Declaration of Daniel Srourian in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement ("Counsel Decl."), ¶ 13 (attached hereto as **Exhibit 2**); Decl. of Kaylie O'Connor (on Behalf of CPT Group, Inc.) Regarding Settlement Administration ("Admin. Decl.") (attached hereto as **Exhibit 3**).

The reaction from Settlement Class Members has been highly positive and strongly supports Final Approval. The Objection Period ended on January 7, 2026 and Opt-Out Period ends on February 3, 2026. *Id.* ¶ 27. To date, no objections have been received and only two Settlement Class Members requested to be excluded from the Settlement. *Id.* ¶¶ 28–29. Further, the deadline to submit a Claim was January 22, 2026, and a total of 10,925 Claims were submitted, which

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement (also referred to as "Agreement") attached as Exhibit 1 to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (with its respective exhibits 1–6) (ECF No. 86). All citations to the Settlement Agreement will be abbreviated as "SA, § ___." A proposed Final Approval Order is attached hereto as **Exhibit 1**.

represents an excellent claims rate of 6.54%. *Id*. ¶¶ 23, 26. This claims rate exceeds the claims rate of many data breach settlements, including data breach settlements approved by this Court and other courts within the Tenth Circuit.[2]

Considering the valuable benefits conveyed to Settlement Class Members, and the significant risks faced through continued litigation, the Settlement is fair, reasonable, and adequate, and merits a Final Approval Order and Judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a Utah company that provides nationwide lease-to-own services. On or about September 11, 2023, Prog learned that it was the victim of a cyber-attack in which cybercriminals gained access to Prog's network that contained certain Private Information of Plaintiffs and Settlement Class Members. Subsequently, on October 23, 2023, Prog began to send notice letters to individuals impacted by the Data Incident, including Plaintiffs and Settlement Class Members. In response, Plaintiffs filed multiple class action lawsuits in the United States District Court for the District of Utah and the Central District of California. These class action lawsuits were later

---

[2] *See e.g. In re C.R. England, Inc. Data Breach Litig.*, No. 2:22-cv-374-DAK-JCB, 2024 U.S. Dist. LEXIS 48296 (D. Utah Mar. 18, 2024) (finally approving data breach settlement with claims rate of roughly 3.6%); *Beasley v. Ttec Servs. Corp.*, Case No. 22-cv-00097-PAB-STV, 2024 U.S. Dist. LEXIS 29759 (D. Colo. Feb. 21, 2024) (finally approving data breach class action settlement with claims rate of 3.9%); *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (claims rate of 1.56%); *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2024 WL 1557366, at *17 (E.D. Pa. Apr. 9, 2024) (claims rate of approximately 2.56%); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) ("Here, the 0.83% claims rate ... is on par with other consumer cases, and does not otherwise weigh against approval); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding 1.8% claims rate reflects positive reaction by class*); In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), aff'd, 892 F.3d 968 (8th Cir. 2018) (approving settlement with roughly 0.23% claims rate).

consolidated before this Court (ECF Nos. 24, 34) under *In re Progressive Leasing Breach Litigation*, Case No. 2:23-cv-00783.[3]

On April 19, 2024, Plaintiffs filed their Consolidated Class Action Complaint ("Complaint") (ECF No. 39) alleging multiple causes of action, including negligence, breach of implied contract, declaratory judgment, and violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150 *et seq*. Plaintiffs and the putative class also sought monetary and equitable relief. *Id*. In response, on June 24, 2024, Prog filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Ultimately, on January 16, 2025, the Court issued a Memorandum Decision and Order granting in part and denying in part Defendant's Motion to Dismiss and dismissing Plaintiffs' causes of action for breach of implied contract (Count II) and declaratory judgment (Count III). (ECF No. 69). The Court further held that Plaintiffs do not have standing to seek injunctive relief. (*Id.*) Prog denies the allegations in the Consolidated Class Action Complaint and denies that Plaintiffs are entitled to any of the relief sought therein.

While Defendant's motion to dismiss was pending, the Parties also engaged in substantial discovery, including serving multiple interrogatories, requests for production, and requests for admission on each other following the bifurcation of class discovery from merits discovery. *See* ECF No. 55. After the Court's Order granting in part and denying in part Defendant's Motion to Dismiss, the Parties agreed to engage in voluntary settlement negotiations and submitted a

[3] Cases consolidated under *In re Progressive Leasing Breach Litigation*, Case No. 2:23-cv-00784 includes *Raymond Dreger v. Progressive Leasing LLC*, Case No. 2:23-cv-00783; *Jodi Bell v. Progressive Leasing*, Case No. 2:23-cv-00787l; *Tyler Whitmore v. Progressive Leasing, LLC*, Case No. 2:23-cv-00792; *Ralph Maddox v. Prog. Leasing LLC*, Case No. 2:23-cv-00797; *Nazia Pierce v. Progressive Leasing*, Case No. 2:23-cv-00799; *Chad Boyd v. Prog Leasing LLC*, Case No. 2:23-cv-00800; *Richard Guzman v. Prog Leasing, LLC*, Case. No. 2:23-cv-00813; *Stephen Hawes v. Progressive Leasing, et. al.*, Case No. 2:23-cv-00821; *Marty Alexander v. Progressive Leasing, LLC*, Case No. 2:23-cv-00823, *Williams et. al. v. Prog Leasing, LLC*, Case No. 2:23-cv-00837; and *Dawn Davis v. Prog Leasing LLC*, Case No. 2:24-cv-00134.

Stipulated Motion to Stay Case Proceedings advising the Court of their agreement to participate in a private mediation on or before June 30, 2025. *See* ECF No. 73. In preparation for mediation, the Parties engaged in substantial informal discovery and, following a full-day, in-person mediation conducted by the respected mediator Michael N. Ungar, Esq., reached an agreement in principle. Counsel Decl. ¶ 6. The Parties continued to work diligently over the next few months to finalize the Settlement Agreement and, on October 20, 2025, Plaintiffs filed their Motion for Preliminary Approval of the Settlement (ECF No. 86), which was ultimately approved by the Court on November 5, 2025 (ECF No. 87). Subsequently, on December 23, 2025, Plaintiffs filed their Motion and Application for Attorneys' Fees, Expenses, and Service Awards (the "Fee Motion") (ECF No. 90). Plaintiffs now seek final approval of the Settlement.

Plaintiffs and proposed Class Counsel believe, in consideration of all circumstances and after serious arm's-length settlement negotiations with the Defendant, which included a full-day, in-person mediation, that the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members.

## III. SUMMARY OF SETTLEMENT TERMS

### A. Definition of the Class.

The Parties contemplate certification (for settlement purposes only) of a nationwide class. The proposed Settlement Class is defined as follows:

> All living individuals residing in the United States who were sent a Notice of Data Incident from Prog indicating their Private Information may have been involved in the Data Incident.

The proposed California Subclass is defined as follows:

> All living individuals in the United States who were sent a Notice of Data Incident and are verified to have resided in the State of California on September 11, 2023.

SA, ¶ 75. The Settlement Class specifically excludes: (1) Prog, and any entity in which Prog has a controlling interest, and Prog's parents, successors, subsidiaries, affiliates; and assigns; (2) any judge, justice, or judicial officer presiding over this Action, and the members of their immediate families and judicial staff; (3) any persons who have released claims relating to the Action; and (4) all Settlement Class Members who submit a valid Request for Exclusion prior to the close of the Opt-Out Period. *Id*.

**B. Settlement Terms and Benefits to the Settlement Class.**

**1. Cash Payments**

a. Documented Losses

Under the Settlement, Settlement Class Members will be reimbursed for ordinary out-of-pocket expenses that are fairly traceable to the Data Incident up to $5,000 per Class Member. SA, ¶¶ 37, 90. To receive payment, Settlement Class Members are required to submit a claim for reimbursement upon presentment of reasonable Documented Losses arising from the Data Incident. *Id*. ¶ 90. Documented Losses include unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident including, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other misuse of Class Member's Private Information; (ii) costs incurred on or after September 11, 2023, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Documented Losses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id.*

b. California Statutory Payment

In addition to, or in the alternative to, making a claim for Documented Losses, Settlement Class Members who resided in California at the time of the Data Incident may elect to receive a statutory cash payment of up to $100 on a claims-made basis ("California Statutory Payment"). *Id*. ¶ 92. Claimants of the California Statutory Payments must provide documentation of their residence in California on September 11, 2023. *Id.*

c. Alternative Cash Payment

In the alternative to making Claims for Documented Losses and/or Claims for a California Statutory Payment, Settlement Class Members may elect to receive a Cash Payment of up to $400 on a claims-made basis. *Id*. ¶ 93. The amount of the payment will be calculated (once the Claim Form Deadline has passed) by dividing the funds remaining in the Settlement Fund after payment of approved Claims for Documented Losses, approved claims for Credit Monitoring services, approved Claims for a California Statutory Payment, Settlement Administration Costs, Service Award payments approved by the Court, and Fee Award and Costs awarded by the Court by the number of Settlement Class Members with a Valid Claim, and thus could be less than $400. *Id*.

**2. Identity Theft Protection and Credit Monitoring.**

All Settlement Class Members who submit a Valid Claim are eligible to receive two years of three-bureau Credit Monitoring services. *Id.* ¶ 91. Credit Monitoring services will be provided by IDX and will include 24-month, 3-bureau credit monitoring with credit monitoring & alerts, CyberScan dark web monitoring, $1,000,000.00 reimbursement insurance, fully managed identity restoration, member advisory services, lost wallet assistance, and immediate support to class members who elect Credit Monitoring services. *Id.*

**3. Attorney's Fees, Expenses, and Service Awards**

The Class Representatives seek a Service Award of up to $3,000 each, subject to Court

approval. (ECF No. 90). Class Counsel also applies to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. *Id.* Any Fee Award and Costs and Service Awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund.

#### 4. The Notice Program Satisfies Due Process

On November 5, 2025, the Court preliminarily appointed CPT Group, Inc. ("CPT") to be the Settlement Administrator. (ECF No. 87). On November 6, 2025, CPT received the Class List from Defendant, which contained the names and contact information for approximately 216,934 individuals. Admin Decl. ¶ 4. CPT scrubbed the Class List for anomalies and duplicates and, as a result, a final Class List consisted of a total of 215,924 Class Members. *Id*. ¶ 5. On December 5, 2025 CPT commenced the Notice Program. *Id*., ¶ 15. CPT disseminated notice via email to all Settlement Class Members whose email addresses were available within Defendant's records, and via first class mail to all Settlement Class Members for whom email addresses were not known but physical mailing addresses were available within Defendant's records. *Id.* ¶¶ 15, 17. Specifically, CPT mailed Postcard Notice to 212,077 Settlement Class Members and Email Notice to 3,845 Settlement Class Members. *Id*. Prior to mailing the Postcard Notices, CPT checked all mailing addresses against the National Change of Address (NCOA) database to ensure that Postcard Notices were sent to the most current addresses available. *Id*. ¶ 17. Following the mailing of the Postcard Notices, the United States Postal Service ("USPS") returned a total of 1,187 Postcard Notices. *Id*. ¶ 18. For the Postcard Notices returned without a forwarding address, CPT conducted skip tracing using Accurint, one of the most comprehensive address-location tools available. *Id*. As a result, a total of 812 Postcard Notices have been re-mailed to date and 3 Postcard Notices were forwarded automatically by the USPS because a forwarding address was on file. *Id*. ¶ 19. To date, only 389 Postcard Notices have been deemed undeliverable where no forwarding address

was available, and no updated address could be identified through skip tracing. Thus, of the 215,924 Settlement Class Members in the Class List, notice reached approximately 215,425, which reflects an excellent reach rate of approximately 99.8%. *Id*. ¶ 20.

Next, CPT established and continues to maintain a dedicated Settlement Website. *Id*. ¶¶ 10-14. CPT secured the domain name for a Settlement Website, www.PLSettlement.com, which went live on December 4, 2025 and included information about the Settlement, related case documents, and the Settlement Agreement, and allowed Settlement Class Members to file Claim Forms electronically. *Id.* ¶ 10. To date, the Settlement Website has received approximately 61,000 website page views. *Id*. ¶ 14. Additionally, on December 4, 2025, CPT established a case-specific toll-free telephone number, 1-888-453-0434, for Settlement Class Members to receive additional information and ask questions about the Settlement. *Id.* ¶ 7. The toll-free telephone number was included in the Postcard Notices and Email Notices and is listed in several locations on the Settlement Website. *Id*. Finally, CPT also established a case-specific email address (PLSettlement@cptgroup.com) and inbox, which allows Settlement Class Members to communicate with CPT if they have any questions concerning the case or Settlement. *Id*. ¶ 9.

The timing of the Claims Process was structured to ensure that all Settlement Class Members had adequate time to review the terms of the settlement, compile documents supporting their claim, and to decide whether to submit a Claim Form, opt-out of, or object to the Settlement. The Claims Process has been straightforward, with Settlement Class Members able to submit Claim Forms either through the Settlement Website or by hard copy mailed to the Settlement Administrator. *Id.* ¶ 23. The Settlement Administrator is still in the process of reviewing and validating Claim Forms. *Id*. The 10,925 Claims Forms received represent a claims rate of 6.54%

from the Settlement Class – a rate that exceeds other consumer settlements, including those involving data breaches.

As discussed above, the Notice Program successfully reached 99.8% of the Settlement Class, satisfying the due process standard. *Id.* ¶ 20. *See, e.g.*, *In re Mexican Gov't Bonds Antitrust Litig*., No. 18-cv-02830, 2021 WL 5709215, at *2 (S.D.N.Y. Oct. 28, 2021) (holding similar notice plan satisfied "due process"). The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g.*, *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 219 (1950). The mailed and e-mailed notice are written in clear and concise language and reasonably conveyed the necessary information to the average class member. *See Wesley v. Snap Fin., LLC,* 341 F.R.D. 72, 74–76 (D. Utah 2022). Settlement Class Members have been afforded a full and fair opportunity to consider the proposed settlement, exclude themselves from the settlement, and respond and/or appear in Court. Further, the notice fully advised Settlement Class Members of the binding effect of the judgment on them. [ECF No. 86, Exhibit 3]. The content disseminated through the Notice Program was more than adequate. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) ("In our case the mailed notice provided a reasonable summary of the stakes of the litigation, and class members could easily acquire more detailed information, including data on potential individual awards, through the telephone number that was provided. Due process requires no more.").

In sum, this individual email or first-class mail to Settlement Class Members who could be identified with reasonable effort was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

**5. Requests for Exclusion and Objections.**

The Notice Program informed Settlement Class Members of their right and the procedure to request exclusion (opt-out) from the Settlement or object to the Settlement. Settlement Class

Members can opt-out of the Settlement by submitting a Request for Exclusion during the Opt-Out Period, which ends 60 days after the Notice Program commenced. SA, ¶¶ 57, 70. The deadline to submit a Request for Exclusion is February 3, 2026. Further, the Objection Period lasted until January 7, 2026, which was 30 days before the Final Approval Hearing. *Id.*, ¶ 56. To date, only 2 Settlement Class Members have requested to be excluded from the Settlement, and no Settlement Class Members objected to the Settlement. Admin Decl., ¶¶ 28-29.

## IV. ARGUMENT

### A. Legal Standard

Under Federal Rule of Civil Procedure 23(e)(2), a court must review a class action settlement "to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. Manual For Complex Litigation (Third) § 30.41, at 236 (1995). The first step of preliminary approval has already been met. On November 5, 2025, the Court found that the settlement was fair, reasonable, and adequate, warranting preliminary approval. [ECF No. 87].

Courts consistently favor settlements of disputed claims. *See, e.g.*, *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements ... [and][c]ourts should hospitably receive them."). There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval. *See* 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:15 (6th ed. 2024); *Little Rock Sch. Dist*, 921 F.2d at 1391 (same). Indeed, when experienced counsel supports a settlement, as they do here, their opinions are entitled to considerable weight. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006). In contrast, "courts are not to decide the merits of the case or resolve unsettled legal questions. . .

because the essence of settlement is compromise, and settlements are generally favored." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997).

Here, nothing "has occurred that would alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate." *Spegele v. USAA Life Ins. Co.*, No. 5:17-CV-967-OLG, 2021 WL 4935978, at *3 (W.D. Tex. Aug. 26, 2021). In fact, the response of the Settlement Class Members to the settlement (only two requests for exclusion and no objections out of a Settlement Class of approximately 215,924 Settlement Class Members) further underscores that the settlement is, in fact, fair, reasonable, and adequate and should receive final approval.

**B. The Proposed Settlement Is Fair, Reasonable, and Adequate Pursuant To Rule 23(E)**

The standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) is whether it is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). To make that determination, courts consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, the Tenth Circuit has identified four factors (the "*Jones* Factors") for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e), including: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

### 1. Plaintiffs and Settlement Class Counsel Have Adequately Represented the Settlement Class.

In determining whether to approve a class action settlement, a court should first consider whether class representatives and class counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A); *See also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) ("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"). Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for alleged injuries arising out of the Data Incident, which led to the alleged compromise of Plaintiffs' and Settlement Class Members' data in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for monetary relief from the Settlement Fund as well as two years of three-bureau credit monitoring and insurance services. SA, ¶¶ 90–91. As such, Plaintiffs have an interest in obtaining the largest possible recovery from Defendant.

Plaintiffs have further demonstrated their adequacy by: (i) providing essential information to Class Counsel throughout the litigation; (ii) collecting documents and other evidence that

supported the claims alleged in the complaints and Consolidated Complaint; (iii) participating in invasive and time consuming discovery, including responding to multiple interrogatories and requests for production; (iv) reviewing pleadings and coordinating with Class Counsel as to the status of, and strategy for, the case and settlement; (v) conferring with Class Counsel and Plaintiffs' Counsel about the settlement negotiations and providing meaningful input about what potential benefits were most important to them; and (vi) considering and approving the settlement terms on behalf of the Settlement Class. *See* Declaration of Class Counsel in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Counsel Decl."), ¶ 12.

Likewise, Settlement Class Counsel have also "adequately represented the class." Fed. R. Civ. P. 23(e)(2) (A). When "[t]here is no indication that any conflicts of interest or other deficiencies have arisen in counsel's representation of the class" and "counsel clearly devoted substantial time and energy to the case," courts routinely find that class counsel have adequately represented the class. *Doe v. Stephen*, No. 3:20-cv-00005, 2022 WL 20689731, at *3 (S.D. Iowa Dec. 9, 2022). Here, Settlement Class Counsel have extensive class action and complex litigation experience and used this expertise to pursue Plaintiffs' claims and ultimately negotiate a favorable recovery for the Settlement Class. At all times, Settlement Class Counsel was fully informed about the facts, risks, and challenges of this action and had sufficient basis on which to negotiate a very significant settlement.

**2. The Settlement Was Negotiated at Arms' Length and Aided by a Well-Respected and Experienced Mediator**

The Settlement was negotiated at arm's length and without collusion. Counsel Decl. ¶ 6. Indeed, the Parties did not begin discussing the possibility of a settlement until ***after*** the Court's decision on Defendant's Motion to Dismiss and ***after*** the Parties had engaged in significant discovery. *Id*. Thus, the Parties were well-informed about the strengths and weaknesses of this case

to make an informed decision regarding settlement. *Id.* ¶ 4. Further, the Parties did not reach an agreement in principle until after participating in a full-day, in-person mediation session with Michael N. Ungar, Esq. on June 30, 2025. *Id.* ¶ 6. Even after the in-person mediation, the Parties continued to engage in months of adversarial arm's-length negotiations to ultimately consummate the Settlement Agreement. *Id*. *See Lucas*, 234 F.R.D. at 693 ("Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable."). As such, there is nothing to suggest that the Settlement Agreement was the result of fraud or collusion. It is the opinion of Settlement Class Counsel, based on their experience and investigation, that the Settlement Agreement presents a favorable result for the Settlement Class.

**3. The Relief Provided for the Settlement Class is Adequate**

a. <u>The Costs and Risk of Trial and Appeal.</u>

Federal Rule of Civil Procedure 23(e)(2)(c) requires examination of the relief provided by the settlement. While Plaintiffs are confident in the merit of their claims, they must take into account the risk, expense, and delay of protracted litigation, trial, and a potentially lengthy appeal that would severely delay any recovery for Settlement Class Members if this Litigation did not settle. Indeed, Plaintiffs understand that, absent a settlement, this case will continue on for years with the need for additional discovery, briefing and arguing a motion for class certification and summary judgment, engaging and retaining experts, participating in additional mediation sessions, and months of continued settlement negotiations. Counsel Decl. ¶ 8. This risk of delay weighs in favor of granting final approval of the Settlement Agreement. *See, e.g.*, *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration" of the litigation); *Wilkerson*, 171 F.R.D. at 290 ("[T]he court should consider the vagaries of litigation and compare the significance of

immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo.1974).

Further, class certification is a significant hurdle that Plaintiffs would need to meet—and one that has been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Me. 2013); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 U.S. Dist. LEXIS 164375, at *21 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare."); *Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534, 2021 U.S. Dist. LEXIS 250695, at *7 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20- MN-02972-JFA, 2024 U.S. Dist. LEXIS 86740 (D.S.C. May 14, 2024) (denying motion for class certification in data breach case). Notably, when, as here, a settlement "assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road, a settlement is reasonable under this factor." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012) (citations omitted).

Under these circumstances, the benefits of a guaranteed recovery today, as opposed to an uncertain result years in the future, are readily apparent. Indeed, the monetary value of the Settlement Fund is $3,250,000.00, a significant figure which, as set forth in the Settlement Agreement, is available to Settlement Class Members to make claims for Cash Awards (or Documented Loss Payments) and two years of three bureau Credit Monitoring and Insurance Services. SA, ¶¶ 83, 90–93. This Settlement achieves a value measurement of approximately

**$15.05** per Settlement Class Member[4], which exceeds the results achieved in comparable data breach class action settlements finally approved by this Court, and others within the Tenth Circuit. *See e.g.*, *In re C.R. England, Inc. Data Breach Litig.*, 2024 U.S. Dist. LEXIS 48296 (D. Utah Mar. 18, 2024) (finally approving data breach class action settlement with a per-person recovery of approximately $6.39 on behalf of 219,208 class members); *Beasley v. Ttec Servs. Corp.*, Case No. 22-cv-00097-PAB-STV, 2024 U.S. Dist. LEXIS 29759 (D. Colo. Feb. 21, 2024) (finally approving data breach class action settlement with a per-person recovery of approximately $12.63 on behalf of 197,835 class members). The foregoing therefore demonstrates that the Settlement Agreement is fair, reasonable, and adequate.

b. Proposed Settlement Class Members are Treated Equitably.

Rule 23(e)(2)(D) instructs the court to consider whether the settlement agreement "treats class members equitably relative to each other." Here, the proposed settlement treats Settlement Class Members equitably because they all had certain Private Information compromised in the Data Incident, and all have the option to make a claim for any of the applicable benefits. SA, ¶¶ 90–93.

c. The Method of Notice and Claims Distribution.

As discussed above, the Notice Program was robust and comprehensive. Counsel Decl. ¶ 13. Indeed, Settlement Class Members were sent Postcard Notice and Email Notice, which ultimately reached 99.8% of the Settlement Class. Admin Decl. ¶ 20. Further, the Notice Program also included multiple resources for Settlement Class Members to receive information on the

[4] This measurement is not a projection of the amount that each Settlement Class Member who submits a Valid Claim will receive. Rather, this calculation is a way for the Court to evaluate the reasonableness of the Settlement Agreement reached here by offering a comparison of the value achieved per Settlement Class Member to other settlements of cases involving similar settlement class sizes and causes of action.

Settlement, including a comprehensive Settlement Website, case-specific telephone number, and a case-specific email address. *Id*. ¶¶ 7-20. Finally, the "method of processing class-member claims" is also simple and straightforward. Settlement Class Members must simply complete the Claim Form, attest to its accuracy, and submit the Claim Form by the Claims Deadline, which was January 22, 2026. SA, ¶¶ 27, 29. Moreover, Settlement Class Members also have the ability to easily complete and submit the Claim Form through the Settlement Website. *Id*. ¶ 80.

d. The Terms of Proposed Award of Attorneys' Fees.

Further, the terms of the requested attorneys' fees award weigh in favor of approval of the proposed Settlement. Here, the requested attorneys' fees did not impact the substantive terms of the Settlement. Indeed, the award of attorneys' fees and expenses were negotiated after the total amount of the Settlement Fund was established and will be paid from the non-reversionary Settlement Fund. Counsel Decl. ¶ 7. As such, Rule 23(e)(2)(C)(iii) favors approval of the proposed Settlement.

**4. The Reaction of the Settlement Class Members to the Settlement**

Finally, objections to the Settlement and reaction of the Settlement Class are important factors to consider. Here, out of a Settlement Class of over 215,000 individuals, only two (2) Settlement Class Members have requested exclusion from the Settlement, and zero (0) Settlement Class Members objected to the Settlement. Admin Decl. ¶¶ 28-29. Further, 10,925 Settlement Class Members have submitted a Claim Form, which represents a claims rate of approximately 6.54%, which, as discussed above, exceeds the claims rates approved in many data breach settlements in this Court and others across the country. This positive reaction by the Settlement Class strongly weighs in favor of approving the Settlement.

## V. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

Finally certifying the Settlement Class is appropriate under Federal Rule of Civil Procedure 23. To achieve certification, it must be demonstrated that the requirements of Rule 23(a) are met, which are as follows: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). After satisfying all requirements under Rule 23(a), the settlement class must then satisfy Rule 23(b)(3), which requires the court to determine whether (1) questions of law or fact common to class members predominate over questions affecting only individual members, and (2) a class action is superior to the other methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Previously, the Court concluded that it "finds it likely that it will be able to certify the class for settlement purposes." (ECF No. 87, p. 8). Since then, there has been no intervening change in law or fact to disturb the Court's initial finding. Counsel Decl. ¶ 2.

As discussed *infra*, the settlement class certification requirements are met and Defendant consents to provisional certification of the Settlement Class for settlement purposes only. *See* Newberg § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."). Indeed, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted).

## VI. THE SETTLEMENT CLASS MEETS THE REQUIREMENT OF RULE 23(A).

### A. The Settlement Class is Sufficiently Numerous.

Rule 23(a)(1) requires that the proponent of a class action demonstrate that "the class is so numerous that joinder of all members is impracticable." Here, Plaintiffs seek certification of, and Prog has stipulated for settlement purposes only to certification of, the following Settlement Class:

> All living individuals residing in the United States who were sent a Notice of Data Incident from Prog indicating their Private Information may have been involved in the Data Incident.

The proposed California Subclass is defined as follows:

> All living individuals in the United States who were sent a Notice of Data Incident and are verified to have resided in the State of California on September 11, 2023.

SA, ¶ 75. After de-duplication and routine data hygiene, CPT identified 215,924 unique Settlement Class Member records. Admin Decl., ¶ 5. A class comprised of over 215,000 members is clearly numerous and renders joinder impracticable. In fact, courts within the Tenth Circuit have found that far smaller class sizes satisfy the numerosity requirement *See Hunter v. CC Gaming, LLC,* No. 19-cv-01979-DDD-KLM, 2020 U.S. Dist. LEXIS 264583 (D. Colo. May 12, 2020) (numerosity requirement met with 533 class members); *Hapka v. Carecentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68185 (D. Kan. Feb. 15, 2018) (finding numerosity was "not in question" where class consisted of approximately 2,000 class members). Thus, numerosity is met.

### B. The Commonality Requirement is Met.

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." This requirement does not mandate commonality on every issue. *Lane v. Page*, 272 F.R.D. 558, 575 (D.N.M. 2011). A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members

do not defeat certification. *DG v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Applying these principles, the commonality requirement of subsection (a)(2) is met here. The Consolidated Complaint alleges a number of questions of law and fact common to all potential Settlement Class Members, including whether Defendant owed a duty to Plaintiffs and Class Members to adequately protect their Private Information and to provide timely and accurate notice of the Data Incident to Plaintiffs and the Class; whether Defendant breached these duties; whether Defendant violated California law; whether Defendant knew or should have known that its computer and network systems were allegedly vulnerable to attack; whether Defendant's alleged conduct, including its alleged failure to act, was the proximate cause of the breach of its computer and network systems resulting in the exfiltration of the Private Information; whether Defendant wrongfully failed to inform Plaintiffs and Class Members that it allegedly did not maintain security procedures sufficient to reasonably safeguard their Private Information; whether Defendant has taken adequate preventive measures to ensure the Plaintiffs and Class Members will not experience further harm; whether Plaintiffs and Class Members suffered injury as a proximate result of Defendant's alleged conduct or failure to act; and whether Plaintiffs and the Class are entitled to recover damages and other relief from Defendant. *See* ECF No. 39; *see also Rodriguez v. Pro. Fin. Co.*, No. 22-cv-01679-RMR-STV, 2024 U.S. Dist. LEXIS 187449 (D. Colo. Oct. 15, 2024) (finding similar questions of law and fact to satisfy commonality in data breach class action

settlement). Accordingly, Rule 23(a) (2)'s requirement for the existence of common questions of fact or law has been met.

**C. The Typicality Requirement is Met.**

Rule 23(a)(3) requires that the claims of the representative plaintiffs be typical of the claims of the class. "The typicality requirement ensures that absent class members are adequately represented by evaluating whether the class representative's interests are sufficiently aligned with the class's interest." *Lane*, 272 F.R.D. at 575 (external citations omitted) In short, to meet the typicality requirement, Plaintiffs simply must demonstrate that the Settlement Class Members have the same or similar grievances. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

Here, the claims of Plaintiffs and each of the Settlement Class Members are predicated on the alleged conduct of Prog with respect to the Data Breach. These claims are common to all Settlement Class Members. Accordingly, the common issues are "sufficiently aligned" to the named representatives' claims. As such, Plaintiffs can reasonably be expected to advance the interests of all absent Settlement Class Members by settling the liability issues.

**D. The Adequacy Requirement is Met.**

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that the representative parties "will fairly and adequately protect the interests of the class." The Tenth Circuit has identified two questions relevant to the adequacy requirement: "(i) whether the named plaintiffs and their counsel have any conflicts with other class members; and (ii) will the named plaintiffs and their counsel vigorously prosecute the action on behalf of the class." *Rutter*, 314 F.3d at 1187–88. The existence of the elements of adequate representation "[is] usually [presumed] in the absence of contrary evidence." *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 386 (D. Colo. 1993) (quoting 2 Robert Newberg, Newberg on Class Actions, § 7.24 at 7-80 to –81 (3d ed. 1992)).

Plaintiffs have taken an active and necessary role in aiding Settlement Class Counsel in litigating this case and representing the interest of absent Settlement Class Members. Plaintiffs demonstrated their adequacy by: (i) providing essential information to Class Counsel throughout the litigation; (ii) collecting documents and other evidence that supported the claims alleged in the complaints and Consolidated Complaint; (iii) participating in invasive and time consuming discovery, including responding to multiple interrogatories and requests for production; (iv) reviewing pleadings and coordinating with Class Counsel as to the status of, and strategy for, the case and settlement; (v) conferring with Class Counsel and Plaintiffs' Counsel about the settlement negotiations and provided meaningful input about what potential benefits were most important to them; and (vi) considering and approving the settlement terms on behalf of the Settlement Class. Counsel Decl. ¶ 12. There is nothing to suggest that, for purposes of this Settlement, Plaintiffs have interests antagonistic to those of absent Settlement Class Members in pursuit of the legal claims in the Litigation. *Id.* To that end, Plaintiffs have obtained an advantageous settlement that provides substantial monetary compensation and other relief to all Settlement Class Members.

Settlement Class Counsel are accomplished litigators, particularly in the field of data breach litigation. *Id.* at ¶ 10. The firms comprising Settlement Class Counsel have served as lead counsel or co-lead counsel in scores of class action cases across the United States, including data breach class actions. *Id.* Indeed, these firms have demonstrated knowledge of applicable law and the ability and willingness to commit sufficient resources to prosecute large scale class action litigation. Indeed, Settlement Class Counsel, along with Plaintiffs' Counsel, demonstrated their adequacy by: (i) fully investigating the facts and legal claims, including interviewing and vetting multiple potential plaintiffs; (ii) preparing the complaints, including a comprehensive Consolidated Complaint; (iii) briefing a response in opposition to Prog's Rule 12(b) motion to

dismiss; (iv) briefing and presenting Plaintiffs' position regarding the bifurcation of discovery; (v) requesting, obtaining, and reviewing numerous documents from Prog regarding the Data Incident; (vi) drafting a detailed mediation brief; (vii) participating in an in-person mediation and months long settlement negotiations to reach and finalize the Settlement Agreement; (viii) developing the Notice Program and distribution plans for the Settlement; (ix) soliciting bids from several settlement administrators to ensure the class was getting the best notice at a cost-effective price; (x) obtaining preliminary approval; (xi) aiding Settlement Class Members with questions about the claims process and submitting claims; and (xii) working with the Settlement Administrator to implement the Notice Program. *Id.* at ¶ 11.

In short, Settlement Class Counsel has demonstrated the ability to fairly and adequately represent the interests of the Settlement Class. There is no indication that they have a conflict of interest or might possibly do anything other than adequately represent the interests of the Settlement Class. Accordingly, the requirements of Rule 23(a)(4) have been met.

**E. The Settlement Class Meets the Requirement of Rule 23(b)(3).**

Under Rule 23(b)(3) a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." First, "Rule 23(b)(3)'s predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation based on questions that preexist any settlement." *Amchem*, 521 U.S. at 623 (citation omitted). Here, Plaintiffs believe common questions of law and fact predominate because the predominating issues are whether Prog had a duty to exercise reasonable care in safeguarding Plaintiffs' and Class Members' Private Information, and whether Prog breached that duty. Thus, because these common questions of law and fact depend on the conduct of Prog, they predominate "as they are unaffected

by the particularized conduct of individual class members. *Rodriguez*, 2024 U.S. Dist. LEXIS 187449, at *15.

With respect to superiority, the settlement renders class action treatment cost-effective and efficient relative to other potential avenues of recovery for Settlement Class Members and avoids the risk of inconsistent and varying adjudications with respect to individual members of the Settlement Class. This case presents the prime example of a dispute which can be resolved to effectuate the fundamental goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights. *In re Conseco Life Ins. Co. Cost of Ins. Litigation*, No. ML 04-1610 AHM, 2005 WL 5678842, at *3 (C.D. Cal. Apr. 26, 2005). By reason of the settlement, over 200,000 Class Members across the United States can obtain substantial monetary benefits and other relief in this class action, whereas litigation of multiple actions in any other judicial avenue for relief – either in this Court or elsewhere – would waste judicial resources. The Parties believe that the most efficient way of resolving these claims is through a single class action settlement. As such, Rule 23(b)(3) is also satisfied.

## VII. CONCLUSION

Plaintiffs and Settlement Class Counsel negotiated a fair, adequate, and reasonable settlement with Defendant and its counsel that guarantees Settlement Class Members significant benefits in the form of monetary compensation and credit monitoring. Based on the above reasons, Plaintiffs respectfully request that the Court enter an order granting final approval of the settlement (a) certifying the Settlement Class; (b) finally appointing Plaintiffs as the Class Representatives; (c) finally appointing Daniel Srourian of Srourian Law Firm, P.C. and Tyler J. Bean of Siri & Glimstad LLP as Settlement Class Counsel; and (d) granting Plaintiffs' requested attorneys' fee

award of one-third of the Settlement Fund (*i.e.*, $1,083,333.33), reimbursement of expenses in the amount of $19,270.31, and Service Awards of $3,000.00 for each of the Plaintiffs, (for a total of $33,000.00).

Date: January 23, 2026

Respectfully submitted,

*/s/ Tyler J. Bean*
Tyler J. Bean
tbean@sirillp.com
Mason A. Barney*
mbarney@sirillp.com
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: 212.532.1091

Daniel Srourian, Esq.
**SROURIAN LAW FIRM, P.C.**
3435 Wilshire Blvd., Suite 1710
Los Angeles, California 90010
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

*Class Counsel*

Patrick A. Barthle
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
pbarthle@forthepeople.com

Ryan D. Maxey
Florida Bar No.: 0059283
**MAXEY LAW FIRM, P.A.**
107 N. 11th St. #402
Tampa, Florida 33602
Telephone: (813) 448-1125
Email: ryan@maxeyfirm.com

*Counsel for Plaintiff Boyd*

Jason R. Hull [11202]
jhull@mohtrial.com
**MARSHALL OLSON & HULL, PC**
Newhouse Building
Ten Exchange Place, Suite 350
Salt Lake City, Utah 84111
Telephone: 801.456.7655

Gary M. Klinger*
gklinger@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878

*Attorneys for Plaintiff Ralph Maddox*

Jared D. Scott (#15066)
**ANDERSON & KARRENBERG**
50 West Broadway, #600
Salt Lake City, UT 84101-2035
Telephone: (801) 534-1700
jscott@aklawfirm.com

Richard Lyon
rick@dovel.com
**DOVEL & LUNER, LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066

*Attorneys for Plaintiff Dawn Davis*

Jared D. Scott (#15066)
**ANDERSON & KARRENBERG**
50 West Broadway, #600
Salt Lake City, UT 84101-2035
Telephone: (801) 534-1700
jscott@aklawfirm.com

Kenneth J. Grunfeld (Pro Hac Vice)
**KOPELOWITZ OSTROW, P.A.**
65 Overhill Road
Bala Cynwyd, PA 19004

Telephone: (954) 525-4100
grunfeld@kolawyers.com

*Attorneys for Plaintiff Tyler Whitmore*

Jason R. Hull [11202]
jhull@mohtrial.com
**MARSHALL OLSON & HULL, PC**
Newhouse Building
Ten Exchange Place, Suite 350
Salt Lake City, Utah 84111
Telephone: 801.456.7655

*Attorneys for Plaintiffs Williams, Robinson, and Ryan*

Charles H. Thronson
**PARSONS BEHLE & LATIMER**
201 S. Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 532-1234

William B. Federman
wbf@federmanlaw.com
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560

*Counsel for Plaintiff Marty Alexander*

Ashton J. Hyde
**YOUNKER HYDE MACFARLANE, PPLC**
250 E. 200 South, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 335-6467
ashton@yhmlaw.com

Terence R. Coates
Dylan J. Gould
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 665-0204

tcoates@msdlegal.com
dgould@msdlegal.com

*Counsel for Plaintiff Stephen Hawes*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record for each party in the above-captioned actions via ECF/CM on this January 23, 2026.

*/s/ Tyler J. Bean*
Tyler J. Bean